ORTIZ & ORTIZ, L.L.P.
35-10 Broadway, Ste. 202
Astoria, New York  111060
Tel. (718) 522-1117
Fax (718) 596-1302
email@ortizandortiz.com
*Proposed Counsel to the Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re

CERTA DOSE, INC.                                            Case No.   21-11045-LGB

                        Debtor.                             Chapter 11
-----------------------------------------------------------X

**AMENDED DECLARATION[1] PURSUANT TO LOCAL RULE 1007-2 AND
IN SUPPORT OF FIRST DAY MOTIONS**

Dr. Caleb Hernandez, president of the above-captioned debtor in possession (the "Debtor"), hereby declares as follows:

A.      History of the Debtor

1.      While working as an emergency room physician, I prevented a nurse from inadvertently administering a fatal dose of medicine to a child that had been brought to the emergency room.  I learned that pediatric overdoses are a common occurrence in this country and I set out to find a solution to this problem.  I developed and patented a method for delivering medicine to children and others in a way that significantly reduces, and virtually eliminates, the risk of life-threatening medical overdoses.  I also invented and patented an alternative to the EpiPen that is a fraction of the cost of that product.  EpiPen is the brand name of an

---

[1] I previously filed an Affidavit.  I hereby amend that Affidavit by Declaration pursuant to 28 U.S.C. § 1746.

auto-injectable device that delivers the drug epinephrine. Epinephrine is a life-saving medication used when someone experiences a severe allergic reaction known as anaphylaxis. Epinephrine has become essential to the country's effort to defeat COVID-19 because it must be on hand when COVID vaccines are administered: it is the drug used to counter any allergic reaction a patient may have to the vaccine. This product is a modern solution to the administration of this drug and costs a tenth of the retail price of the EpiPen. The Debtor has sold and marketed this product to municipalities and I anticipate a significant increase in the sales of this product.

2.  I founded the Debtor in 2013 and have been the majority shareholder of the Debtor since the company was formed. The Debtor is a Delaware corporation that began its operations in Colorado and relocated to New York in 2019. At this time, it develops, sells, and licenses its pharmaceutical products and technology. The Debtor's products are highly beneficial to the medical community and are much-needed. The Debtor was designated as an innovation company by Johnson & Johnson ("J & J") and has received a grant and mentor ship from J & J. I anticipate sales to exceed $20 million in the next 24 months.

B.  The Failed Attempt to Take-Over the Debtor

3.  The Debtor has been saddled with litigation that has adversely impacted its business operations and it is in need of the court's protection so that it can reorganize its affairs, continue to grow its life-saving business, and satisfy the allowed claims of its creditors. The Debtor was the victim of self-dealing and breach of fiduciary duties by its former Chief Operating Officer John Blood ("Blood") and former members of its Board of Directors, Steven Rubin ("Rubin") and Steven Hoffenberg ("Hoffenberg"), in their failed attempt to achieve a

hostile takeover of the company with the aid and assistance of a group of investors (the "COPIC Investors") led by COPIC Insurance Company ("COPIC"). During this period, the Debtor was further disadvantaged by the fact that the law firm that served as its corporate counsel, Cooley LLP, also represented COPIC and had a relationship with Blood. Blood recommended that the Debtor hire Cooley LLP as its counsel.

4. Beginning in 2014, COPIC and the COPIC Investors made investments in the Debtor pursuant to which those companies and other parties entered into a Series Seed Preferred Stock Purchase Agreement, an Investor Rights Agreement, a Co-Sale Agreement, and a Voting Agreement. COPIC purchased preferred stock (designated Series Seed Preferred Stock) in the Debtor in 2014, 2016, and 2017. The Debtor also raised funds, through convertible notes, from a group of family and friends that were wholly-unrelated to COPIC (the "Good Faith Investors"). COPIC's president Rubin became a member of the Debtor's Board of Directors in 2018.

5. Blood and COPIC-affiliated Directors on the Board suggested that I operate out of New York City and permit Blood to manage the operations in Colorado. I had established a strong relationship with J & J in New York and I continued my efforts to grow the company from New York. However, over my objections, Blood ran through millions of dollars of the Debtor's cash, at a rate of $400,000 to $600,000 a month, before sales of the Debtor's products could support this level of spending. After he spent most of the cash raised by the Debtor, Blood recommended that the Debtor engage in another round of fund raising. When I learned that COPIC intended to restrict access to this round of funding to the COPIC Investors and preclude any of the Good Faith Investors from participating, I questioned the reasoning behind Blood's and COPIC's actions. They assured me of their good intentions and I knew they

3

were bound by their fiduciary duties to the shareholders. It later became apparent to me that COPIC intended to devalue the company and saddle it with debt so it could take over the Debtor. When I called for an investigation of the nature of the proposed Series A fund raising, and a turnover of the internal documents and communications related to the proposed funding, Hoffenberg and Rubin refused to cooperate. Hoffenberg resigned from the Board and Rubin was removed from the Board. When I took over management of the Debtor in 2019, the Debtor had lost millions of dollars and had less than $350,000 in its operating account.

6. On the advice of legal counsel, I was forced to take immediate corporate action to protect the Debtor and the Good Faith Investors. I learned that Blood and COPIC were looking to sell the Debtor's intellectual property, its most valuable asset, and were planning to implement a Series A round of financing which would effectively result in a sale of the company for $1.5 million dollars. I also learned that COPIC was one of the buyers. COPIC knew that the Debtor had significant value since it had obtained an appraisal of the company that gave it a value of $77 million to $160 million. I sought legal advice from Cooley LLP to protect the Debtor, but the firm refused to advise me on how to protect the Debtor because they had a conflict of interest. I hired corporate counsel to help me thwart the outrageous self-dealing proposed by COPIC and its affiliates. I took a series of corporate actions that included amending the Debtor's certificate of incorporation and amending the terms of the convertible notes to prevent any further malfeasance by COPIC and the COPIC Investors.

7. Litigation ensued in state court in Colorado, Delaware, and New York among COPIC, COPIC's affiliates, the Debtor, and I. The Debtor commenced an action against COPIC, Blood, Cooley LLP, and the related parties in Colorado that has been stayed by the

bankruptcy filing.  COPIC commenced an action against the Debtor and I in Colorado and Delaware and has taken conflicting positions in the two actions.  Before the Court of Chancery of the State of Delaware, in an action entitled *COPIC Insur. Co. v. Hernandez and Certa Dose, Inc., Case No. 2021-0148*, COPIC asserts, among other things, that I wrongfully eliminated COPIC's equity interest in the Debtor.  However, in an action commenced in the District Court, City and County of Denver, Colorado, entitled *COPIC et al v. Certa Dose, Inc., Case No. 2019 CV 34850,* COPIC and the COPIC Investors sued the Debtor on the convertible notes; they alleged that the notes had not been converted to equity in lieu of the payment provided for in the notes.  The Denver Colorado court granted the Plaintiffs' motion for summary judgement and the Debtor filed its voluntary petition before the judgments became effective under Colorado law.  I have been advised by counsel that the judgments obtained in the Denver Colorado court are void because the court lacked personal jurisdiction over the Debtor.

C.      Liens and Claims Asserted Against the Debtor

8.      On or about June 5, 2020, the Debtor obtained an Economic Injury Disaster Loan (the "Loan") from the U.S. Small Business Administration (the "SBA") in the amount of $150,000.00.  It is a 30-year loan with a low interest rate.  Monthly loan installment payments are not required to commence until June 2022.  The Debtor was required to grant the SBA a lien on all of its assets as a condition to obtaining a the Loan, including a lien on its deposit accounts.  The SBA holds a first lien on all of the Debtor's assets.

9.      I am the only other secured creditor of the Debtor.  I hold a lien, as trustee,

against all of the Debtor's assets, including its valuable intellectual property (the "IP Assets") for the benefit of the company's shareholders[2]. The transfer of the IP Assets to the Debtor occurred over a period of time and was besieged by delays and misrepresentations by Blood and his collaborators culminating in a November 2020 settlement agreement which comprehensively resolved all claims amongst the Debtor and I which is secured by duly filed UCC-1 financing statements in New York, Delaware, Colorado and the United States Patent and Trademark Office (the "IP Lien"). As of this date, the IP Lien is subject to the prior lien of the SBA.

10. Other than the claims asserted by COPIC and the COPIC Investors, the Debtor has a manageable amount of debt that consists of legal fees, some credit card debt, a Payroll Protection Loan, and an unsecured loan. I believe the Debtor has less than $500,000.00 of unsecured debt that includes the $210,000 Payroll Protection Loan. I expect the Payroll Protection Loan to be forgiven. The claims asserted by COPIC and the COPIC Investors do not exceed Five Million Dollars. Although the Debtor vehemently disputes these claims, the value of the Debtor's assets greatly exceeds the value of all claims asserted against it.

D.   Post Petition Events

11. The Debtor opened a debtor-in-possession ("DIP") account and created a clear demarcation between its pre-petition and post-petition expenses. Fortunately for the Debtor, virtually all of its operating expenses had been paid when the petition was filed, so the Debtor's controller was able to ensure that pre-petition expenses were not paid after the bankruptcy filing. Although the Debtor has opened the DIP account, its use has been cumbersome and it has interfered with the Debtor's ability to collect receivables. The Debtor seeks the authority, when

---

[2] A listing of the patents subject to the lien is annexed hereto as Exhibit A.

necessary, to utilize its existing accounts so that it can continue to conduct its business without interruption.

12. The Debtor seeks permission to utilize its existing business forms without alteration. I assist the Debtor in developing new sources of sales that include municipal, governmental, and institutional clients. I believe that noting DIP in our business forms will harm potential sales and will be confusing to potential customers. The harm caused by this notation on our business forms will greatly outweigh any benefit to the estate.

13. The Debtor requests the Court's permission to utilize the cash it has on hand that is subject to the SBA's lien and the IP Lien. The Debtor can not operate its business unless it can pay its operating expenses, including its payroll, rent, third-party manufacturers, and technology costs. The Debtor would be irreparably harmed if it was not authorized to pay these expenses. Moreover, given the Debtor's asset value and request to provide replacement liens for the funds utilized by the Debtor, all liens will be adequately protected. The Debtor has approximately $500,000.00 in accounts receivable it should collect in the near term that further demonstrates it has the ability to protect the SBA's lien and meet its operating expenses as they become due.

E.     Additional Information Required by Local Rule 1007

14. No prior bankruptcy case was filed by the Debtor and no committee was appointed before the Petition Date. Although the Debtor has not completed its Schedules of Assets and Liabilities, I have annexed as Exhibit B a list I compiled, to the best of my ability, of the Debtor's unsecured and priority creditors. I reserve the right to amend this list.

15. None of the Debtor's stock is publicly-held or in the possession or custody

of a custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor. The Debtor does not own any real property. The Debtor maintains office space in New York and Colorado. The Debtor's principal place of business and office address is 101 Avenue of the Americas, 3rd Flr., New York, New York 10013. The Debtor does not own any assets located outside of the United States.

16. I serve as the Debtor's president. I am supported by a sales manager, in-house counsel, and a controller. I have annexed hereto as Exhibit C a summary of the expenses the Debtor expects to incur in the 30 day period following the petition date. It includes approximately $9,250.00 a week in payroll. I earn approximately $41,000 a year from the Debtor; the weekly payroll includes my compensation. There are no other payments to officers, stockholders, directors, of consultants anticipated in the next thirty days.

I hereby declare that the foregoing is accurate and true to the best of my knowledge and belief.

Dated: June 14, 2021
       New York, New York

*S/Caleb Hernandez*
Caleb Hernandez, President

**EXHIBIT A**

| Title/Mark | Application No. | Assignor |
|---|---|---|
| SYSTEM FOR DELIVERING MEDICATION | 61/593,674 | Caleb Hernandez |
| SYSTEM FOR DELIVERING MEDICATION | 61/717,474 | Caleb Hernandez |
| **SYSTEM FOR DELIVERING MEDICATION** | **14/392,087** | **Caleb Hernandez** |
| APPARATUSES, METHODS, AND SYSTEMS FOR DELIVERING MEDICATION USING MEDICATION KITS | 62/332,412 | Caleb Hernandez |
| **APPARATUSES, METHODS, AND SYSTEMS FOR DELIVERING MEDICATION USING MEDICATION KITS** | **15/588,497** | **Caleb Hernandez** |
| RADIOLOGICAL DOSING SYSTEM AND METHOD | 62/334,990 | Caleb Hernandez |
| **RADIOLOGICAL DOSING SYSTEM AND METHOD** | **15/592,990** | Caleb Hernandez |
| **APPARATUSES, METHODS, AND SYSTEMS FOR DELIVERING MEASURED DOSES OF MEDICATION** | **15/282,732** | **Caleb Hernandez** |
| **DRUG DELIVERY SYRINGE** | **29/588,627** | **Caleb Hernandez** |
| **CARTON** | **29/613,542** | **Caleb Hernandez** |
| SYSTEMS AND METHOD FOR RAPID DELIVERY OF MEASURED DOSES OF MEDICATION | 62/619,665 | Caleb Hernandez |
| **RAPID MEDICATION DELIVERY SYSTEM AND METHOD RESISTANT TO OVERDOSING** | **16/254,459** | **Caleb Hernandez** |
| **SYRINGE HOLDER FOR MEDICATION DOSING** | **16/415,537** | **Caleb Hernandez** |
| SYSTEM AND METHOD FOR SEQUENTIAL DELIVERY OF MEASURED DOSES OF MEDICATION | 62/665,417 | Caleb Hernandez |
| **SYSTEM AND METHOD FOR SEQUENTIAL DELIVERY OF MEASURED DOSES OF MEDICATION** | **16/400,876** | **Caleb Hernandez** |
| SYRINGE HAVING DOSING INDICATIONS FOR PROPHYLAXIS AND TREATMENT | 62/739,784 | **Caleb Hernandez** |

| Title/Mark | Application No. | Assignor |
|---|---|---|
| **OVERDOSE RESISTANT DRUG DELIVERY SYRINGE** | 29/683,186 | **Caleb Hernandez** |
| **MULTIPLE INDICATION DOSING SYSTEM** | 62/804,068 | **Caleb Hernandez** |
| **MEDICINE DISPENSING SYSTEM HAVING STAIR-STEP DOSING INDICATORS** | 62/830,287 | Caleb Hernandez |
| **CONTAINER AND SYSTEM FOR ACCURATE RECONSTITUTION** | 62/846,199 | **Caleb Hernandez** |

**EXHIBIT B**

## LIST OF UNSECURED AND PRIORITY CREDITORS

| Creditor | Address | Amount | Description |
|---|---|---|---|
| COPIC Insurance Company | 7351 E Lowry Blvd #400, Denver, CO 80230 | $1,782,842.21 | Disputed. Former Shareholder. |
| Thomas S. Cowan | 1001 Michigan Avenue, Wilmette, IL 60091 | $677,422.18 | Disputed. Former Shareholder. |
| Anthony R. Mayer | 210 University, Blvd., Ste 650, Denver, CO 80206 | $575,730.90 | Disputed. Former Shareholder. |
| LFD III GRAT U/A 8.26.15 | 1130 S. Franklin Street, Denver, CO 80210 | $575,580.22 | Disputed. Former Shareholder. |
| Davis Hurley | 7441 E 8th Ave, Denver, Denver, CO 80230 | $533,630.92 | Disputed. Former Shareholder. |
| Theodore Clarke | 25149 US Highway 40, Golden, CO 80401 | $292,148.72 | Disputed. Former Shareholder. |

1

| | | | |
|---|---|---|---|
| Matthew Fleishman | 260 Monroe St, Denver, Denver, CO 80206 | $264,497.58 | Disputed. Former Shareholder. |
| Niles Cole | 703 S Hudson St, Denver, Denver, CO 80246 | $227,934.54 | Disputed. Former Shareholder. |
| Pacific Western Bank- PPP | Loan 9701 Wilshire Blvd., #700, Beverly Hills, CA 90212 | $210,000.00 | Payroll Protection Loan |
| Phoebe Fisher | 490 Apple Grove Rd., Coatesville, PA 19320 | $206,039.62 | Disputed. Former Shareholder. |
| Geraldine Lewis Jenkins | 139 Harrison St, Denver, Denver, CO 80206 | $155,059.46 | Disputed. Former Shareholder. |
| Cooley LLP | 101 California Street, 5th floor, San Francisco, CA 94111 | $144,000.00 | Legal Fees |
| Alan Young Synn | 1302 S. Uinta Ct., Denver, Denver, CO 80231 | $93,035.68 | Disputed. Former Shareholder. |

2

| | | | |
|---|---|---|---|
| Stephen R. Hoffenberg | 48 Brookhaven Drive, Littleton, CO 80123 | $71,690.74 | Disputed. Former Shareholder. |
| Chase cardmember service | PO BOX 6294, Carol Stream, IL 60197 | $37,708.00 | Credit card |
| Brian Harrington | 769 Sandhill Cir., Steamboat Springs, CO 80487 | $31,004.98 | Disputed. Former Shareholder. |
| Fortis Low Partners | 1900 Wazee Street, Suite 300, Denver, CO 80202 | $30,000.00 | Legal Fees |
| McKesson | 9954 Mayland Drive, Richmond, VA 23228 | $16,000.00 | Service Provider |
| Neugeboren O'Dowd PC | 1227 Spruce Street, Suite 200, Boulder, CO 80302 | $13,474.00 | Service Provider |
| Clarus R+D | 1233 Dublin Rd, Columbus, OH 43215 | $5,600.00 | Service Provider |

3

| | | | |
|---|---|---|---|
| Stiplastics Healthcaring | 62 chemin des Plantées 38160 Saint Marcellin, France | $4,730.00 | Service Provider |
| Liu Shen & Associates | 10th Floor, Building 1 10 Caihefang Road, Haidian District, China | $2,073.00 | Legal Fees |
| Internal Revenue Service | PO Box 7346 Centralized Insolvency Agency, Philadelpia, PA 19101 | $1,500 | Taxes |
| Pacific Western Bank | PO BOX 6818, Carol Stream, IL 60197 | $1,477.00 | Credit Card |
| Massachusetts Department of Revenue | Attn: Bankruptcy Unit PO BOX 9564, Boston, MA 02114 | $674.16 | Taxes |
| NYS Dept of Tax And Finance | Bankruptcy Section PO Box 5300, Albany, NY 12205 | Unknown | Taxes |

| Department of Revenue | Taxation Division P.O. Box 17087, Denver, CO 80217 | Unknown | Taxes |
|---|---|---|---|

**EXHIBIT C**

## Estimated Thirty (30) Cash Receipts and Disbursements

*(Provide a schedule, for the thirty (30) day period following the filing of the chapter 11 petition, of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing)*

| Income | | Expenses | |
|---|---|---|---|
| *Source* | *Amount* | *Type* | *Amount* |
| Sales | $80,000.00 | Insurance | $3,000.00 |
| | | Rent | $1,273.00 |
| | | Storage | $1.055.00 |
| | | Payroll | $37,000.00 |
| | | Logistics | $8,580.00 |
| | | Regulatory Software | $30,000.00 |
| | | Manufacturing | $15,509.00 |
| | | IT Services | $3,500.00 |
| | | Materials | $15,000.00 |
| | | Marketing | $2,500.00 |
| | | Total | $117,417.00 |

10