ORTIZ & ORTIZ, L.L.P.
35-10 Broadway, Ste. 202
Astoria, New York  111060
Tel. (718) 522-1117
Fax (718) 596-1302
email@ortizandortiz.com
*Proposed Counsel to the Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re

CERTA DOSE, INC.                                    Case No. 21-11045-lgb


                                    Debtor.          Chapter 11
--------------------------------------------------------X

### SUPPLEMENTAL DECLARATION OF CALEB S. HERNANDEZ

Caleb S. Hernandez, president of the above-captioned debtor in possession (the Debtor"), hereby swears as follows:

1.      I assert a second lien and security interest on all of the Debtor's assets.  The U.S. Small Business Administration asserts a first lien and security interest in the Debtor's assets.

2.      Annexed hereto as Exhibit A is a true copy of the Settlement Agreement I entered into with the Debtor that, among other things, grants me a security interest and lien on the Debtor's assets and resolves my claims against the Debtor.

3.      Annexed hereto as Exhibit B is a list of the intellectual property that is the subject of my security interest.

4.      Annexed hereto as Exhibit C is a true copy of the UCC Financing Statement and supporting documents filed with the Colorado Secretary of State on November 12, 2020.

5.      Annexed hereto as Exhibit D is a true copy of the UCC Financing Statement and supporting documents filed with the Delaware Department of State on November 20,2020.

6.    Annexed hereto as Exhibit E is a true copy of the UCC Financing Statement filed with the New York State Division of Corporations on November 12, 2020.

I hereby declare under the penalty of perjury that the foregoing is accurate and true to the best of my knowledge and belief.

Dated: June 16, 2021
New York, New York

*S/Caleb S. Hernandez*
Caleb S. Hernandez, President
Certa Dose Inc.

**EXHIBIT A**

## SETTLEMENT AGREEMENT

CERTA DOSE, INC. ("Certa Dose" and "Company"), given the recitals stated *infra*, enters this SETTLEMENT AGREEMENT (the "Agreement"), which is made and entered into upon good and valuable consideration this 15th day of October, 2020, by and between CALEB HERNANDEZ (the "Inventor") and Certa Dose, each of these parties hereinafter being referenced as a "Party" or collectively as the "Parties."

WHEREFORE, certain officers, board members and agents of the Company, especially JOHN BLOOD made, without the Company's properly informed authorization, certain promises and/or threats to the Inventor and/or treated the Inventor improperly, including the behaviors referenced in the filings on the litigation that the Company is presently bringing against these bad actors and their associates in New York;

WHEREFORE, Inventor, therefore, has claims against Company for the value of his intellectual property, at law, for just compensation and/or equity, and that the Company's interest in the intellectual property is better safeguarded by protecting it from claims by any potential successors in interest of Inventor that would otherwise not be subject to the terms contained herein;

WHEREFORE, the Inventor has been valuable to the Company and has heretofore put forth an incalculable benefit to the Company by providing intellectual property for its use and profit;

WHEREFORE, the Company would have been in a worse position with regard to its intellectual property, cash position, and general business health had the Inventor not also been able to settle matters that would otherwise be debts and/or claims against the Company, doing so on its behalf with his own funds and property, including, but not limited to, providing legal expenses and intellectual property the he owns to the Company without receiving compensation and without any consideration;

WHEREAS, recognizing the risk and uncertainty of pursuing resolution of these issues through claims, litigation, or other means (*instead of settling these concerns and issues via contract, as the Parties are now doing through this settlement*), and the associated expenses thereof, and in order to avoid any further expense or litigation, the Parties desire to settle and resolve any dispute that they may have in the limited matter of the assignments specifically referenced in this Agreement—*particularly those that were made without consideration or without any identified form of compensation*—which the Inventor made to the Company of the patents and intellectual property he had rights in, doing so in accordance with the terms set forth in this Agreement;

WHEREAS, the Company seeks to develop a clear way of protecting the interests of its good faith shareholders in the intellectual property developed by Inventor;

WHEREAS, the Parties understand, acknowledge, and agree that this Agreement constitutes the compromise of claims that could be bought against Certa Dose by the Inventor up to this point for the lack of compensation for his intellectual property identified above or

1

specifically identified below, as well as the wrongdoing which was perpetrated through the aforementioned bad actors, and that it is the desire and intention of each of the Parties to affect a final and complete resolution of any and all claims and potential causes of action that Inventor may have with regard to the uncompensated intellectual property identified herein, especially those based on the likely and/or evident actions taken by Cooley LLP, COPIC, John Blood, Steve Rubin, Steve Hoffenberg and their affiliates (*this Agreement, however, does not waive any claims that the Inventor may have against Cooley LLP, COPIC, John Blood, Steve Rubin, Steve Hoffenberg and their affiliates or that Certa Dose may have against Cooley, COPIC, John Blood, Steve Rubin, Steve Hoffenberg and their affiliates, who are currently Defendants in litigation the Company has brought*);

WHEREAS, the Inventor has developed other intellectual property that he has not yet assigned to the Company in any way, intellectual property which the Company did not have the funds to pay for the development of (*and for which it has also not compensated the Inventor*), but which he is nonetheless providing a benefit to the Company through, wherein, that other intellectual property and/or any rights therein are not the subject of this Agreement and is specifically excluded;

WHEREAS, Certa Dose seeks to release Inventor of any claim it may have against him for the actions he has taken to develop intellectual property and/or to protect its interests in the intellectual property recounted above and herein, which can be done so through the creation of a trust, as referenced herein;

WHEREAS, Certa Dose seeks to release Inventor of any claim it may have against him for any reason related to intellectual property;

WHEREAS, Inventor has developed the backbone of the Company's intellectual property, has had to steer the Company's business into a self-sustaining and profitable business model that had been impeded by the aforementioned bad actors, has been the genesis of the intellectual property "backbone," and has done so while also expending his own funds on the patenting of intellectual property (*which is separate and distinct from his development and ownership rights in the intellectual property*), before and/or independently of the series rounds, including, but not limited to:

*Before the Series*:

CRTA 001/00;
CRTA 001/01;
CRTA 001/02;
CRTA 001/03; and
CRTA 001/04.  (Total patent costs $89,000.)

CRTA 002; (Broselow Patent $41,000.)

2

*After the Series, while not receiving pay from Certa Dose in any way*:

CRTA 003;
CRTA 004;
CRTA 005;
CRTA 006;
CRTA 007;
CRTA 008;
CRTA 009;
CRTA 010; and
CRTA 011.

*After the Series, while receiving a very basic salary of $60,000/year that did not account for intellectual property in any way*:

CRTA 012;
CRTA 013;
CRTA 014;
CRTA 015; and
CRTA 016.

*After the Series, while receiving a reduced CEO salary of $120,000/year that did not account for intellectual property in any way*:

CRTA 017;
CRTA 018;
CRTA 019;
CRTA 020; and
CRTA 021.

NOW THEREFORE, in consideration of the foregoing recitals, the mutual covenants, promises, releases and agreements contained herein, the exchanges of value set forth herein through the mechanism of settlement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties to this Agreement agree as follows:

## AGREEMENT AND RELEASE

**Release & Recompense**

1.1 Except in connection with the enforcement of this Agreement, upon the mutual execution of this Agreement (the "Effective Date"), the Parties and their respective agents, assigns, attorneys, inventors, members, managers, parents, predecessors, principals, representatives, and successors hereby forever and fully mutually release, acquit and discharge (the "Mutual Releases") the other Party and their agents, assigns, attorneys, inventors, members, managers, parents, predecessors, principals, representatives, and successors—except for *Cooley LLP, COPIC, John Blood, Steve Rubin, Steve Hoffenberg and their affiliates*—from any and all claims, demands, actions, causes

3

of action, suits, liens, debts, obligations, promises, agreements, costs, damages, liabilities, and judgments of any kind, nature, or amount, whether in law or equity, whether known or unknown, anticipated or unanticipated, contingent or not contingent, liquidated or unliquidated, arising out of the disputes, circumstances, communications, agreements, disagreements, or any other conceivable act or omission related to the afore-referenced events;

1.2   In connection with the aforementioned Mutual Releases, each Party represents and warrants that it has made such investigation of the facts pertaining to this Agreement and all matters pertaining thereto as he or it deems necessary.

1.3   Once there is an influx of capital of over $1,500,0000 following this date, or if there is a settlement with COPIC and all the other COPIC-affiliated litigants, some of whom were responsible for some economic harm to Inventor and also fraudulently represented to Inventor that he would be compensated at a minimum of $250,000 per year as an office of the Company, Inventor shall be compensated at a minimum of $250,000 per year salary as an officer of the Company (*something that is expressly understood to not be compensation for any intellectual property referenced in this Agreement*).  If the Company cannot afford to so pay the Inventor, the Inventor shall have a lien against all Company assets in an amount equal to the difference between the referenced salary and the amount actually paid.

1.4  The Company shall indemnify and hold Inventor harmless for all actions that have to this point been approved, or which will be approved by the current Board of Directors.  In this, the Company expressly holds that it will hold Inventor harmless and indemnify him for all actions he has taken before the Effective Date and that, if the control of the Company should even change in the future, the Company shall not have the power to remove Inventor from his position in the Company without paying him 50 years' salary upon his involuntary termination (*as determined by the rate set forth in this Agreement*), wherein he can only be involuntarily terminated for bad faith, which is something that can only be determined by a jury of his peers in an action brought by the Company against Inventor in the Courts of the State of New York.  The Inventor is hereby given a present lien on the intellectual property of the Company, all current assets, and all future assets (*including after-acquired property*), until this amount is paid, which is a lien that can only be discharged by the ultimate payment, in 50 years, of this salary amount. To prevent any likelihood of retaliation against Inventor by future management (*especially the bad actors referenced in this Agreement*), the referenced determination of bad faith can only be made by a jury of his peers in an action brought by the Company against Inventor in the Courts of the State of New York, even if he is no longer in the Company at that point in the future. This payment of salary shall not have any effect on any equity that the Inventor owns in the Company, especially as that is a separate obligation owed to the Inventor by the Company. If Inventor is involuntarily terminated, the lien referenced in this paragraph shall become immediately collectable against all of the intellectual property and assets of the Company, yet Inventor herein promises to hold that lien as Trustee for himself and the other good faith shareholders of the Company, as beneficiaries, for management in rough proportion to the shares that each owns on the date of this Agreement (*excluding, of course, the referenced bad actors, Daniel Hoffman, and any of their associates or affiliates*).

1.5 For the settlement of the claims for intellectual property provided to the Company, Inventor shall be compensated with a present $65,000,000 lien on all present Company assets, particularly

its intellectual property, and future assets (*including after-acquired property*), which he will hold as Trustee for himself and the other good faith shareholders of the Company, as beneficiaries, for management in rough proportion to the shares that each owns on the date of this Agreement (*excluding, of course, the referenced bad actors, Daniel Hoffman, and any of their associates or affiliates*). This lien amount is deemed to be fair, as it allows the Company to continue to function, as it protects its good faith noteholders, and is related to the valuation of the Company's intellectual property business as previously performed by Scalar. This lien shall exist for 50 years and shall only be discharged so long as the Inventor remains the majority shareholder of the Company for that period of 50 years. Should the Company take any action from this point forward to reduce the equity that Inventor has in the Company, *without Inventor's express, specific and written consent*, this lien shall be accelerated and immediately collectable. Inventor shall also have the right, especially at all times that he owns any stock in the Company, to convert any common stock into any preferred stock and vis-à-vis. In this, the Company shall take all steps necessary to facilitate this conversion and effectuate it upon a request by the Inventor. The Company also acknowledges, recognizes and grants a non-revocable license of seventy (70) years to Inventor to use the intellectual property referenced in this agreement for any purpose, which license shall survive any termination of this agreement.

**Confidentiality**

2.1 The Parties hereby agree that the amount of settlement and the terms of this Agreement shall be kept confidential and shall not be disclosed to any third parties unless compelled by a court of competent jurisdiction or as required by law; provided, however, that each Party may provide information concerning the terms of this Agreement to his, her or its attorneys, accountants or financial advisors in order to obtain professional advice.

**Warranties**

3.1 The Parties represent and warrant that they have not assigned, sold, transferred, or otherwise disposed of any claim, in whole or in part, that each may have against the other that would otherwise be subject to the terms and conditions of this Agreement.

**No Admission of Liability**

4.1 The Parties understand and agree that this settlement involves the compromise of disputed claims, and that this settlement is not to be construed as an admission of liability or wrongdoing by any Party, by whom any and all liability and wrongdoing are expressly denied.

**General Provisions**

5.1 The Parties agree to cooperate, undertake and perform any and all additional lawful acts, including the execution of any additional documents as are reasonably necessary or desirable to implement and effectuate the purposes of this Agreement.

5.2 Each of the Parties states and acknowledges that she, he or it has read and thoroughly understands the entirety of the provisions of this Agreement; has discussed this Agreement with

counsel or has had the opportunity to do so; has the authority to execute it and is executing it of his or its own free will and volition, without any duress or undue influence, and without any promise or inducement except for the consideration set out herein; executes this Agreement without reliance upon any statements or representations, oral or otherwise, by any other Party or any other Party's representatives; and acknowledges that this Agreement and its reduction to final written form is the result of good faith negotiations.

5.3 The terms of this Agreement shall be binding upon the individual Parties, and their heirs, devisees, agents, personal representatives, successors-in-interest, guardians, conservators, administrators, fiduciaries, and assigns, and, to the extent applicable, their predecessors and attorneys.

5.4 The terms of this Agreement or any of its provisions represent the entire agreement of the Parties and this Agreement shall not be altered, abridged, changed, modified or waived, except upon execution of a subsequent document signed by the then affected Parties.

5.5 A copy of this Agreement may be executed by each Party, and when each Party has executed a copy thereof, such copies taken together shall become part of the original and incorporated herein by reference. Facsimile or e-mail signatures shall be given the effect of original signatures.

5.6 This Agreement shall, in all respects, be interpreted, enforced and governed by and under the laws of New York. Similarly, venue and jurisdiction for any breach of this Agreement shall exclusively be within the Courts of the State of New York in the County of Queens.

5.7 If any provision or clause of this Agreement is held by a court of competent jurisdiction to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not be affected or impaired thereby.

**Trust**

In recognition of the incalculable benefit of the intellectual property to the Company and its inability to pay the true value of the intellectual property, and in similar recognition of Investor's interest in protecting the value of the intellectual property to the good faith shareholders, as identified in the ACTION OF THE BOARD OF DIRECTORS OF CERTA DOSE, INC. BY VOTE OF THE MAJORITY OF THE DIRECTORS PRESENT AT A MEETING AT WHICH A QUORUM IS PRESENT, executed on November 15, 2019, it is hereby agreed that if any change in the Company were to arise that would *cut off* or *threaten* the ability of the good faith shareholders, including Inventor, to receive the benefits of the intellectual property previously assigned to the Company, that all interest in the intellectual property shall revert to the Inventor to be held in trust for the benefit of those who are currently considered good faith shareholders, as referenced above.

**-SIGNATURE PAGES TO FOLLOW-**

IN WITNESS WHEREOF, and intending to be legally bound, the undersigned hereunto set their hand on the date(s) indicated below.

PARTIES:

DATE: _11/1/2020_____    _(signature)_____

CERTA DOSE, INC.
By: Caleb Hernandez, CEO


DATE: _11/1/2020_____    _(signature)_____

*Signed Name of Inventor*


Caleb Hernandez
_____

*Printed Name of Inventor*

**EXHIBIT B**

| Title/Mark | Application No. | Assignor |
|---|---|---|
| SYSTEM FOR DELIVERING MEDICATION | 61/593,674 | Caleb Hernandez |
| SYSTEM FOR DELIVERING MEDICATION | 61/717,474 | Caleb Hernandez |
| **SYSTEM FOR DELIVERING MEDICATION** | **14/392,087** | **Caleb Hernandez** |
| APPARATUSES, METHODS, AND SYSTEMS FOR DELIVERING MEDICATION USING MEDICATION KITS | 62/332,412 | **Caleb Hernandez** |
| **APPARATUSES, METHODS, AND SYSTEMS FOR DELIVERING MEDICATION USING MEDICATION KITS** | **15/588,497** | **Caleb Hernandez** |
| RADIOLOGICAL DOSING SYSTEM AND METHOD | 62/334,990 | Caleb Hernandez |
| **RADIOLOGICAL DOSING SYSTEM AND METHOD** | **15/592,990** | Caleb Hernandez |
| **APPARATUSES, METHODS, AND SYSTEMS FOR DELIVERING MEASURED DOSES OF MEDICATION** | **15/282,732** | **Caleb Hernandez** |
| **DRUG DELIVERY SYRINGE** | **29/588,627** | **Caleb Hernandez** |
| **CARTON** | **29/613,542** | **Caleb Hernandez** |
| SYSTEMS AND METHOD FOR RAPID DELIVERY OF MEASURED DOSES OF MEDICATION | 62/619,665 | **Caleb Hernandez** |
| **RAPID MEDICATION DELIVERY SYSTEM AND METHOD RESISTANT TO OVERDOSING** | **16/254,459** | **Caleb Hernandez** |
| **SYRINGE HOLDER FOR MEDICATION DOSING** | **16/415,537** | **Caleb Hernandez** |
| SYSTEM AND METHOD FOR SEQUENTIAL DELIVERY OF MEASURED DOSES OF MEDICATION | 62/665,417 | **Caleb Hernandez** |
| **SYSTEM AND METHOD FOR SEQUENTIAL DELIVERY OF MEASURED DOSES OF MEDICATION** | **16/400,876** | **Caleb Hernandez** |
| SYRINGE HAVING DOSING INDICATIONS FOR PROPHYLAXIS AND TREATMENT | 62/739,784 | **Caleb Hernandez** |

| Title/Mark | Application No. | Assignor |
|---|---|---|
| **OVERDOSE RESISTANT DRUG DELIVERY SYRINGE** | **29/683,186** | **Caleb Hernandez** |
| **MULTIPLE INDICATION DOSING SYSTEM** | **62/804,068** | **Caleb Hernandez** |
| **MEDICINE DISPENSING SYSTEM HAVING STAIR-STEP DOSING INDICATORS** | **62/830,287** | Caleb Hernandez |
| **CONTAINER AND SYSTEM FOR ACCURATE RECONSTITUTION** | **62/846,199** | **Caleb Hernandez** |

**EXHIBIT C**

# UCC Financing Statement

**Colorado Secretary of State**
Date and Time: 11/12/2020 03:24:07 PM
Master ID: 20202126705
Validation Number: 20202126705
Amount: $8.00

## Debtor: (Organization)

Name: Certa Dose, Inc.
Address1: 2590 Welton Street
Address2: #200
City: Denver                      State: CO                      ZIP/Postal Code: 80205
Province:                         Country: United States

## Secured Party: (Individual)

Last name: Hernandez            First name: Caleb        Middle name: S.                    Suffix:
Address1: P.O. Box 838
Address2:
City: Denver                      State: CO                      ZIP/Postal Code: 80201
Province:                         Country: United States

## Collateral

**Description:**

All intellectual property, licenses, personal property, and chattels of the Lienee; all rents owed to Lienee; all land and real property that the Lienee owns or has any interest in; all after-acquired real and personal property of the Lienee; all bank accounts of the Lienee; all wages of the Lienee; all proceeds, settlements and/or judgments from lawsuits; accounts receivable of Lienee; all fixtures of the Lienee; all accounts of the Lienee; all machinery of the Lienee; all fixtures of the Lienee, including fixtures in real property; all contents of the property of the Lienee; all business interests of the Lienee; all equipment of the Lienee; and all interests or value whatsoever in any property or interest that the Lienee holds or hereafter acquires, so as to secure payment of the following obligations of Lienee to Secured Party (the "Obligations").

**Security Instrument & Recognition of Lien**

File name: Scan Nov 3, 2020.pdf                Uploaded: 11/12/2020 03:21:30 PM

### SECURITY INSTRUMENT & FURTHER RECOGNITION OF LIEN

On this 3rd day of ___Novemeber___, 2020 (*the day that Lienee signs* SECURITY INSTRUMENT & RECOGNITION OF LIEN), CERTA DOSE, INC. ("Lienee"), for valuable consideration that was recognized, previously exchanged and secured in the pre-existing SETTLEMENT AGREEMENT of the Parties to this SECURITY INSTRUMENT & RECOGNITION OF LIEN, which SETTLEMENT AGREEMENT was executed on November 1, 2020, receipt of which is acknowledged, grants to CALEB HERNANDEZ ("Secured Party") this additional proof of a security interest in the following property of Lienee (*the* "Collateral"):

All intellectual property, licenses, personal property, and chattels of the Lienee; all rents owed to Lienee; all land and real property that the Lienee owns or has any interest in; all after-acquired real and personal property of the Lienee; all bank accounts of the Lienee; all wages of the Lienee; all proceeds, settlements and/or judgments from lawsuits; all accounts receivable of Lienee; all fixtures of the Lienee; all accounts of the Lienee; all machinery of the Lienee; all fixtures of the Lienee, including fixtures in real property; all contents of the property of the Lienee; all business interests of the Lienee;; all equipment of the Lienee; and all interests or value whatsoever in any property or interest that the Lienee holds or hereafter acquires, so as to secure payment of the following obligations of Lienee to Secured Party (*the* "Obligations"):

The following indebtedness and/or obligations:

$65,000,000, as recognized in the afore-referenced SETTLEMENT AGREEMENT of November 1, 2020;

$12,500,000, as a separate amount recognized in the afore-referenced SETTLEMENT AGREEMENT of November 1, 2020; and

All other obligations and liabilities of Lienee to the Secured Party that are identified and secured in the Parties' pre-existing SETTLEMENT AGREEMENT, including the aforementioned secured amounts totaling $77,000,000.

**Address of the Lienee:** ___2590 Welton st. #200, Denver CO 80205___

**Mailing Address of the Secured Party:** ___Po Box 838, Denver CO 80201.___

1.    **WARRANTIES AND COVENANTS OF LIENEE.**  Lienee warrants and covenants that:

(a)    Lienee will abide by the terms of the pre-existing and afore-refenced SETTLEMENT AGREEMENT OF NOVEMBER 1, 2020.

(b)    Lienee will do all such things as Secured Party at any time or from time to time may reasonably request to establish and maintain a perfected security interest in the Collateral.

1 of 4

(c)     Lienee will pay the cost of filing this instrument in all public offices where recording is deemed by Secured Party to be necessary or desirable. A photographic or other reproduction of this instrument is sufficient as a financing statement.

(d)     Lienee will not transfer or encumber the Collateral without the prior written consent of Secured Party.

2.      **NON-WAIVER:** No failure or delay by Secured Party in exercising Secured Party's rights under this instrument shall be considered a waiver of such rights.

3.      **SEVERABILITY:** In the event that any provision herein is determined to be void or unenforceable for any reason, such determination shall not affect the validity or enforceability of any other provision, all of which shall remain in full force and effect.

4.      **As also noted in the Parties' SETTLEMENT AGREEMENT, this lien shall be held in trust by the Secured Party, *i.e.*, Lienor, for the benefit of the good faith shareholders, as noted and defined in the SETTLEMENT AGREEMENT of November 1, 2020.**

5.      The Lienee acknowledges that the terms of the secured interest and/or lien are fair and reasonable to the Lienee, and that they have been fully disclosed and transmitted in writing to the Lienee in a manner that has been understood by the Lienee. The Lienee also represents that the Lienee indeed wishes to adopt these terms and that it has advised the Lienee that it is advisable to have independent legal counsel advise the Lienee before entering any agreement or any secured interest and/or lien agreement. Nonetheless, the Lienee has had all reasonable opportunity to do so — *and to consider the terms and circumstances surrounding this instrument* — and herein expressly provides that the Lienee indeed wishes to enter these terms and to effectuate a secured interest and/or lien by signing this instrument. Lienee also acknowledges that he and/or she has received a Notice of Right to Cancel within three business days without cost, as per Federal law.

6.      This instrument may be executed in parts, the Lienee and the Secure Party signing separately before a notary public.

7.      LIENEE ACKNOWLEDGES RECEIPT OF A FULLY EXECUTED COPY OF THIS INSTRUMENT AND PRIOR RECEIPT OF A NOTICE OF RIGHT TO CANCEL (RESCIND) MADE A PART THEREOF.

### - SIGNATURE PAGES TO FOLLOW-

### SIGNATURE OF LIENEE

STATE OF _____ New York _____ )
)  ss.
COUNTY OF _____ New York _____ )

DATED this _3rd_ day of _November_, 2020.

_(signature)_
_Signature of Lienee's Officer or Representative_

_Caleb Hernandez_
_(Printed Name of Representative -Caleb Hernandez)_

_President, CEO_
_(Title of Lienee's Officer or Representative)_

Subscribed and affirmed, or sworn to before me this _3rd_ day of _November_, 2020. Witness my hand and official seal.

_Matthew Elias_
[Seal]   Notary Public
My commission expires: _11-13-2022_

MATTHEW ELIAS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01EL6383347
Qualified in New York County
My Commission Expires 11-13-2022

3 of 4

### SIGNATURE OF SECURED PARTY

STATE OF _____New York_____ )
                                )  ss.
COUNTY OF _____New York_____ )

DATED this __3rd__ day of __November__, 2020.

_____
Caleb S. Hernandez

Subscribed and affirmed, or sworn to before me this __3rd__ day of __November__, 2020. Witness my hand and official seal.

_____
[Seal]   Notary Public
My commission expires: ___11-13-2022___

MATTHEW ELIAS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01EL6383347
Qualified in New York County
My Commission Expires 11-13-2022

4 of 4

**EXHIBIT D**

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| (720) 312-9553 |

| B. E-MAIL CONTACT AT FILER (optional) |
| --- |
| JOSUE.HERNANDEZ@LAWYER.COM |

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

JOSHUA HERNANDEZ

1750 WEWATTA STREET

UNIT 421

DENVER, CO 80202

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 05:45 PM 11/12/2020**
**U.C.C. Initial Filing No: 2020 7917661**

**Service Request No:  20208374370**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

|  | 1a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- | --- |
| OR | CERTA DOSE, INC. | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 2590 WELTON STREET, UNIT 200 | DENVER | CO | 80205 | US |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

|  | 2a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- | --- |
| OR | | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| | | | | |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

|  | 3a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- | --- |
| OR | CLEB S. HERNANDEZ | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| P.O. BOX 838 | DENVER | CO | 80201 | US |

4. **COLLATERAL:** This financing statement covers the following collateral:

All intellectual property, licenses, personal property, and chattels of the Lienee; all rents owed to Lienee; all land and real property that the Lienee owns or has any interest in; all after-acquired real  and personal property of the Lienee; all bank accounts of the Lienee; all wages of the Lienee; all  proceeds, settlements and/or judgments from lawsuits; all accounts receivable of Lienee; all fixtures of  the Lienee; all accounts of the Lienee; all machinery of the Lienee; all fixtures of the Lienee, including  fixtures in real property; all contents of the property of the Lienee; all business interests of the Lienee;;  all equipment of the Lienee; and all interests or value whatsoever in any property or interest that the  Lienee holds or hereafter acquires, so as to secure payment of the following obligations of Lienee to  Secured Party (the "Obligations"):  The following indebtedness and/or obligations:  $65,000,000, as recognized in the afore-referenced SETTLEMENT AGREEMENT of November 1,  2020;  $12,500,000, as a separate amount recognized in the afore-referenced SETTLEMENT  AGREEMENT of November 1, 2020; and  All other obligations and liabilities of Lienee to the Secured Party that are identified and  secured in the Parties' pre-existing SETTLEMENT AGREEMENT, including the aforementioned secured  amounts totaling $77,000,000. Collateral Description - please see attached

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:  ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility    6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators

## SECURITY INSTRUMENT & FURTHER RECOGNITION OF LIEN

On this 3ʳᵈ day of _November_, 2020 (*the day that Lienee signs* SECURITY INSTRUMENT & RECOGNITION OF LIEN), CERTA DOSE, INC. ("Lienee"), for valuable consideration that was recognized, previously exchanged and secured in the pre-existing SETTLEMENT AGREEMENT of the Parties to this SECURITY INSTRUMENT & RECOGNITION OF LIEN, which SETTLEMENT AGREEMENT was executed on November 1, 2020, receipt of which is acknowledged, grants to CALEB HERNANDEZ ("Secured Party") this additional proof of a security interest in the following property of Lienee (*the* "Collateral"):

All intellectual property, licenses, personal property, and chattels of the Lienee; all rents owed to Lienee; all land and real property that the Lienee owns or has any interest in; all after-acquired real and personal property of the Lienee; all bank accounts of the Lienee; all wages of the Lienee; all proceeds, settlements and/or judgments from lawsuits; all accounts receivable of Lienee; all fixtures of the Lienee; all accounts of the Lienee; all machinery of the Lienee; all fixtures of the Lienee, including fixtures in real property; all contents of the property of the Lienee; all business interests of the Lienee;; all equipment of the Lienee; and all interests or value whatsoever in any property or interest that the Lienee holds or hereafter acquires, so as to secure payment of the following obligations of Lienee to Secured Party (*the* "Obligations"):

The following indebtedness and/or obligations:

$65,000,000, as recognized in the afore-referenced SETTLEMENT AGREEMENT of November 1, 2020;

$12,500,000, as a separate amount recognized in the afore-referenced SETTLEMENT AGREEMENT of November 1, 2020; and

All other obligations and liabilities of Lienee to the Secured Party that are identified and secured in the Parties' pre-existing SETTLEMENT AGREEMENT, including the aforementioned secured amounts totaling $77,000,000.

**Address of the Lienee:** _2590 Welton St. #200, Denver CO 80205_

**Mailing Address of the Secured Party:** _PO Box 838, Denver CO 80201._

1.    **WARRANTIES AND COVENANTS OF LIENEE.** Lienee warrants and covenants that:

(a)    Lienee will abide by the terms of the pre-existing and afore-refenced SETTLEMENT AGREEMENT OF NOVEMBER 1, 2020.

(b)    Lienee will do all such things as Secured Party at any time or from time to time may reasonably request to establish and maintain a perfected security interest in the Collateral.

1 of 4

(c)      Lienee will pay the cost of filing this instrument in all public offices where recording is deemed by Secured Party to be necessary or desirable.  A photographic or other reproduction of this instrument is sufficient as a financing statement.

(d)      Lienee will not transfer or encumber the Collateral without the prior written consent of Secured Party.

2.      **NON-WAIVER:** No failure or delay by Secured Party in exercising Secured Party's rights under this instrument shall be considered a waiver of such rights.

3.      **SEVERABILITY:** In the event that any provision herein is determined to be void or unenforceable for any reason, such determination shall not affect the validity or enforceability of any other provision, all of which shall remain in full force and effect.

4.      **As also noted in the Parties' SETTLEMENT AGREEMENT, this lien shall be held in trust by the Secured Party, *i.e.*, Lienor, for the benefit of the good faith shareholders, as noted and defined in the SETTLEMENT AGREEMENT of November 1, 2020.**

5.      The Lienee acknowledges that the terms of the secured interest and/or lien are fair and reasonable to the Lienee, and that they have been fully disclosed and transmitted in writing to the Lienee in a manner that has been understood by the Lienee.  The Lienee also represents that the Lienee indeed wishes to adopt these terms and that it has advised the Lienee that it is advisable to have independent legal counsel advise the Lienee before entering any agreement or any secured interest and/or lien agreement.  Nonetheless, the Lienee has had all reasonable opportunity to do so — *and to consider the terms and circumstances surrounding this instrument* — and herein expressly provides that the Lienee indeed wishes to enter these terms and to effectuate a secured interest and/or lien by signing this instrument. Lienee also acknowledges that he and/or she has received a Notice of Right to Cancel within three business days without cost, as per Federal law.

6.      This instrument may be executed in parts, the Lienee and the Secure Party signing separately before a notary public.

7.      LIENEE ACKNOWLEDGES RECEIPT OF A FULLY EXECUTED COPY OF THIS INSTRUMENT AND PRIOR RECEIPT OF A NOTICE OF RIGHT TO CANCEL (RESCIND) MADE A PART THEREOF.

**- SIGNATURE PAGES TO FOLLOW-**

### SIGNATURE OF LIENEE

STATE OF _____ New York _____  )
) ss.
COUNTY OF _____ New York _____  )

DATED this __3rd__ day of __November__, 2020.

_____
*Signature of Lienee's Officer or Representative*

_____
*(Printed Name of Representative -Caleb Hernandez)*

_____
*(Title of Lienee's Officer or Representative)*

Subscribed and affirmed, or sworn to before me this __3rd__ day of __November__, 2020. Witness my hand and official seal.

_____
[Seal]   Notary Public
My commission expires: _____11-13-2022_____

MATTHEW ELIAS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01EL6383347
Qualified in New York County
My Commission Expires 11-13-2022

## SIGNATURE OF SECURED PARTY

STATE OF _____New York_____    )
                                                                    ) ss.
COUNTY OF _____New York_____    )

DATED this __3rd__ day of ___November__, 2020.


_____
Caleb S. Hernandez

Subscribed and affirmed, or sworn to before me this __3rd__ day of ___November___, 2020. Witness my hand and official seal.


_____
[Seal]    Notary Public
My commission expires: ___11-13-2022___

MATTHEW ELIAS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01EL6383347
Qualified in New York County
My Commission Expires 11-13-2022

4 of 4

**EXHIBIT E**

**446121**      **2020 Nov 12 PM05:53**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Hernandez, Josue

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | |
|---|---|
| 1a. ORGANIZATION'S NAME **Certa Dose, Inc.** | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS **2590 Welton Street, Unit 200** | CITY **Denver** | STATE **CO** | POSTAL CODE **80205** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **Corporation** | 1f. JURISDICTION OF ORGANIZATION **Delaware** | | NONE |
|---|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | |
|---|---|
| 2a. ORGANIZATION'S NAME | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | |
|---|---|
| 3a. ORGANIZATION'S NAME | |

| 3b. INDIVIDUAL'S LAST NAME **Hernandez** | FIRST NAME **Caleb** | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS **P.O. Box 838** | CITY **Denver** | STATE **CO** | POSTAL CODE **80201** | COUNTRY **USA** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:

All intellectual property, licenses, personal property, and chattels of the Lienee; all rents owed to Lienee; all land and real property that the Lienee owns or has any interest in; all after-acquired real and personal property of the Lienee; all bank accounts of the Lienee; all wages of the Lienee; all proceeds, settlements and/or judgments from lawsuits; all accounts receivable of Lienee; all fixtures of the Lienee; all accounts of the Lienee; all machinery of the Lienee; all fixtures of the Lienee, including fixtures in real property; all contents of the property of the Lienee; all business interests of the Lienee;; all equipment of the Lienee; and all interests or value whatsoever in any property or interest that the Lienee holds or hereafter acquires, so as to secure payment of the following obligations of Lienee to Secured Party (the "Obligations"):

The following indebtedness and/or obligations:

$65,000,000, as recognized in the afore-referenced SETTLEMENT AGREEMENT of November 1, 2020;

$12,500,000, as a separate amount recognized in the afore-referenced SETTLEMENT AGREEMENT of November 1, 2020; and

All other obligations and liabilities of Lienee to the Secured Party that are identified and secured in the Parties' pre-existing SETTLEMENT AGREEMENT, including the aforementioned secured amounts totaling $77,000,000.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

**Filing Number-202011128484737**