ORTIZ & ORTIZ, L.L.P.                         Hrg. Date:    July 27, 2021
Norma E. Ortiz                                     Time:      10:00 a.m.
35-10 Broadway, Ste. 202
Astoria, New York  11103
Tel. (718) 522-1117
Fax (718) 596-1302
email@ortizandortiz.com
*Counsel to the Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re

CERTA DOSE INC.,                                    Case No. 21-11045-lgb


                              Debtor.              Chapter 11
--------------------------------------------------------X

**DEBTOR'S REPLY TO RESPONSE TO MOTION FOR ENTRY OF AN ORDER
PURSUANT TO 11 U.S.C. §§ 105(a) AND 362 OF THE BANKRUPTCY CODE
ENFORCING AND RESTATING THE AUTOMATIC STAY AND IPSO FACTO
PROVISIONS AND SEEKING COSTS**

Certa Dose, Inc., as debtor-in-possession in the above-captioned Chapter 11 case

("Debtor"), hereby replies to the Response (the "Response") filed by the COPIC Insurance

Company ("COPIC") in Opposition to the Debtor's Motion ("Motion") for the entry of an order

enforcing and restating the automatic stay and *ipso facto* provisions pursuant to sections 105(a)

and 362 of title 11 of the United States Code.  In support of this reply, the Debtor respectfully

represents as follows:

**RELEVANT BACKGROUND**

1.      The background facts are set forth in the Motion and are respectfully incorporated

herein.  Only the facts pertinent to this reply are set forth below.

2.      As set forth in Answering Brief of Defendant Caleb Hernandez ("Hernandez") in

1

Opposition to Plaintiff's Motion for Partial Summary Judgment, annexed hereto as Exhibit A,

COPIC and the Debtor disagree over the governing corporate documents of the Debtor and the

interpretation of their terms. In 2016, the Debtor filed an Amended and Restated Certificate of

Incorporation (the "2016 Certificate") which included a provision that gave COPIC preferential

treatment over other shareholders (the "Preferential Provisions"). The 2016 Certificate contained

language that required COPIC's written consent and an affirmative vote to, among other things,

amend the Debtor's Certificate of Incorporation. The relevant language provided

> RESOLVED, that the Amended and Restated Certificate of Incorporation of this corporation be amended and restated in its entirety to read as follows:
> …
>
> FOURTH: The total number of shares of all classes of stock which the Corporation shall have authority to issue is (1) 1,900,000 shares of Common Stock…and (ii) 621,079 shares of Preferred Stock….The Preferred Stock shall be divided into the following separate series. The first series shall be designated "Series Seed Preferred Stock" and shall consist of 291,667 shares of the authorized Preferred Stock of the Corporation. The second series shall be designated "Series Seed 2 Preferred Stock" and shall consist of 329,412 shares of the authorized Preferred Stock of the Corporation.
>
> The following is a statement of the designations and the powers, privileges and rights, and the qualifications, limitations or restrictions thereof in respect to each class of capital stock of the Corporation….
>
> 3.2   Classes of Directors; Election of Directors. The Board shall consist of four (4) directors which shall be divided into two classes. One (1) of the directors shall be a "Class 1 Director." The Class 1 Director shall have two (2) votes on each matter to be decided by the Board (or any committee thereof). Three (3) of the directors shall be "Class II Directors". Each Class II Director shall have one (1) vote on each matter to be decided by the Board (or any committee thereof). The holders of record of the shares of Common Stock and Preferred Stock, voting together as a single class on an as if converted to Common Stock basis, shall be entitled to elect all directors of the Corporation.
>
> 3.3   Preferred Stock Protective Provisions. At any time when shares of Preferred Stock are outstanding, the Corporation shall not, either directly or indirectly…do any of the following without…the written consent or affirmative vote of the

2

Required Holders...and any such act or transaction entered into without such consent or vote shall be null and void ab initio and of no force or effect.

3.3.1. amend, alter or repeal any provision of the Certificate of Incorporation or Bylaws of the Corporation in any manner…that adversely affects the powers, preferences or rights of the Preferred Stock. …

3.3.11: increase or decrease the authorized number of directors constituting the Board or otherwise change the director classifications set forth in this Restated Certificate….

COPIC was a Required Holder under this provision. As a Required Holder, COPIC possessed the authority to, among other things, block the amendment of the 2016 Certificate and restrict any change in the number of Directors on the Board without its consent.

3.      On October 4, 2017, the 2016 Certificate was amended and a new certificate was enacted and filed (the "2017 Certificate") with COPIC's consent. See Para. 49 of COPIC's Delaware Complaint annexed to the Response as Exhibit A. The 2017 Certificate removed the Preferential Provisions and replaced the Fourth Article of the 2016 Certificate. Its relevant provisions provide as follows:

ARTICLE FOURTH of the Corporation's Amended and Restated Certificate of Incorporation shall be amended and restated **in its entirety** to read as follows:

"FOURTH: The total number of shares of all classes of stock which the Corporation shall have authority to issue is (i) 2,200,000 shares of Common Stock…and (ii) 621,079 shares of Preferred Stock….The Preferred Stock shall be divided into the following separate series. The first series shall be designated "Series Seed Preferred Stock" and shall consist of 291,667 shares of the authorized Preferred Stock of the Corporation. The second series shall be designated "Series Seed 2 Preferred Stock" and shall consist of 329,412 shares of the authorized Preferred Stock of the Corporation."

3

The 2017 Certificate no longer contained the Preferential Provisions contained in the 2016

Certificate and no longer required COPIC's written consent and affirmative vote to amend the

Debtor's certificate of incorporation or change the number of directors on the Board.  COPIC

approved the enactment of the 2017 Certificate.

4.      In the summer of 2019, Hernandez obtained information that led him to

believe that, among other things, COPIC was attempting a hostile takeover of the company and

was planning to attempt to obtain a low valuation of the Debtor to force Hernandez to cause the

Debtor to issue more preferred stock to COPIC.  Hernandez obtained confirmation from its

former COO, John Blood, that he had attempted to solicit interest in a sale of the Debtor's assets

at a devalued price without first obtaining Board approval.  After Hernandez caused a formal

investigation of these allegations, on October 22, 2019, Hoffenberg resigned as a member of the

Board.  In 2020, Hernandez became the sole member of the Debtor's Board of Directors

pursuant to the Debtor's governing corporate documents and applicable law.  The Debtor asserts

that, at all times, its actions were taken in compliance with applicable law and in compliance

with the Debtor's governing corporate documents.

5.      Count IV of COPIC's Delaware Complaint provides in relevant part as follows:

**COUNT IV - DIRECTLY, AND DERIVATIVELY ON BEHALF OF CERTA
DOSE
(DETERMINATION OF BOARD OF DIRECTORS PURSUANT TO
8 Del. C. § 225(a))**

66.  As alleged herein, Hernandez has undertaken an improper
scheme to attempt to take control of Certa Dose.

67.  Plaintiff is therefore entitled, pursuant to 8 Del. C. § 225(a), to a
summary proceeding determining that removal of Certa Dose's other
directors is invalid, that the members of the Certa Dose Board of
Directors duly elected before Hernandez's misconduct are the persons
rightfully entitled to serve thereon, and that any changes to the

4

composition of the Company's Board of Directors must be accomplished
in conformity with the 2016 Certificate.

68.  Plaintiff has no adequate remedy at law.

The complaint seeks derivative and direct relief for the same course of conduct from the Debtor

and Hernandez.

6.    In the summary judgment motion at issue in this case, COPIC requests that the

Delaware court enter an order that grants the following relief:

> IT IS HEREBY FURTHER ORDERED THAT the Board of Directors of Certa
> Dose, Inc. must contain four members, one of which must be a COPIC Director
> and two of which must be Mutual Directors (both as defined in the Amended and
> Restated Voting Agreement, entered into between Certa Dose, COPIC and other
> investors on May 26, 2016). Any actions taken by an improperly constituted
> Board, including, but not limited to, pursuing lawsuits in Colorado
> against COPIC and others, are invalid.

A copy of the proposed order is annexed to COPIC's response as Exhibit C.

7.    As set forth in the proposed order, COPIC requests in its Motion for Summary

Judgement that the Delaware court find "that the proper composition of the Board is four

directors, that Hernandez cannot act as the sole director of Certa Dose, and that all actions

undertaken purportedly on behalf of Certa Dose since at least March 21, 2020 are invalid."  See

Page 2 of motion.  COPIC asserts further that "such improper and invalid activity includes the

filing of a lawsuit on February 9, 2021, purportedly by Certa Dose, Inc., against COPIC and

other Certa Dose investors in state court in Colorado (the "Colorado Action")."  See Page 10 of

Motion. Those actions presumably include the commencement of the proceeding before this

Court.

8.    The Debtor asserts that all of its corporate governance actions were taken

properly and lawfully pursuant to its governing corporate documents, as they were amended

since 2017, and pursuant to governing Delaware law.  The Debtor alleges that all of its actions

were taken to protect the Debtor against the attempt by COPIC and others to execute an unlawful

takeover of the Debtor to seize its valuable assets and were taken in the best interests of all

creditors and shareholders.

9.      The Debtor spent months attempting to settle its disputes with COPIC prior to the

Petition Date in 2020.  During that period, COPIC requested that Hernandez refrain from

appointing additional board members.  See Para. 21 of Hernandez Declaration annexed to

Exhibit A.

## REPLY

### COPIC'S REQUEST BEFORE THE DELAWARE COURT SEEKS RELIEF BEYOND THE MERE EXERCISE OF CORPORATE GOVERNANCE RIGHTS AND VIOLATES THE AUTOMATIC STAY

10.      COPIC asks the Court to find that its request before the Delaware court merely

implicates corporate governance issues that lie outside the scope of the automatic stay and are

directly asserted against Hernandez, not the Debtor.  COPIC asserts that the Section 225 claim it

is prosecuting, without this Court's approval, is not a derivative claim that would be precluded

by the automatic stay.  COPIC further asserts that the right to compel a shareholders' meeting is

not precluded by a bankruptcy filing under In re Johns-Manville Corp., 801 F.2d 60, 64 (2d Cir.

1986) ("Manville") and other cases, but acknowledges that it is not seeking to call a

shareholders' meeting.  COPIC argues further that granting the relief requested in the Delaware

action would not, in fact, result in placing COPIC in control of the Debtor.  Instead, it would

simply require the Debtor to operate pursuant to the 2016 Certificate which was, in fact,

amended with COPIC's consent in 2017 and multiple times thereafter.  COPIC asserts that the

only impediment to calling a shareholders' meeting, which COPIC does not seek, would require

a showing that such a request would be a "clear abuse" under <u>Mansville</u> and that the abuse must seriously threaten the Debtor's reorganization, not just delay it. COPIC requests further that the Court find that under <u>Matter of American Media Distributors, LLC</u>, 216 B.R. 486 (1998) and <u>In re Marvel Entertainment Group</u>, 209 B.R. 832 (Bankr. De. 1997), the right to call a shareholders' meeting should not be disturbed despite the filing of a bankruptcy case.

11.     First, COPIC's is not seeking to call a shareholders' meeting under Delaware law and none of the bankruptcy cases cited by COPIC involve a Section 225 action. The cases all involve a request to call a shareholder's meeting on behalf of all shareholders: not one case involves a disgruntled shareholder who also asserts it is one of the largest creditors of the Debtor. COPIC seeks an order directing the reconstitution of the Debtor's Board of Directors to ensure that COPIC is placed on the Board and can exert its power to appoint other directors and discontinue an action brought against it. Although the Court has not yet had the opportunity to determine the veracity of the claims asserted by the Debtor against COPIC, the Court should consider the Debtor's potential claims against COPIC when determining, under the circumstances of this case, whether it should find that the Delaware state court has the authority to effectively displace the Debtor's founder, and the one person in charge of the Debtor's reorganization, without the Court's prior approval because of COPIC's Section 225 claim.

12.     Second, the Complaint does not assert solely a direct claim against Hernandez. The Complaint labels the cause of action as both a derivative and direct claim. COPIC goes to great lengths to ensure the Court that it solely seeks a direct claim against Hernandez, but it does not explain how it could seek derivative and direct relief under the same cause of action. In a case cited by COPIC, the Delaware court explained the distinction between direct and derivative claims under Section 225 as follows:

7

The law of the state of the debtor's formation—Delaware law—governs the issue of the nature of these claims. Under Delaware law, the test for whether a claim is derivative or direct is set forth in <u>Tooley v. Donaldson, Lufkin & Jenrette, Inc.</u> Specifically, two questions must be answered under <u>Tooley</u>: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" To prove a claim is direct, plaintiffs must "demonstrate that the duty breached was owed to the stockholder and that he or she can prevail **without** showing an injury to the corporation."

<u>Sehoy Energy LP v. Haven Real Est. Grp., LLC</u>, No. CV 12387-VCG, 2017 WL 1380619, at *7 (Del. Ch. Apr. 17, 2017) (Emphasis added).

13.     There is no distinction made by COPIC between the relief it seeks derivatively and the relief it presently seeks directly.  In fact, COPIC asks the Court to find that its conduct in proceeding before the Delaware court without this Court's approval is simply a claim "brought against Dr. Hernandez only to declare the proper board of directors of the Debtor."  Response at Para. 18.  This assertion is plainly contradicted by the relief sought in the Delaware action.  The action seeks, among other things, the entry of an order that voids prior acts taken by the Debtor – not Dr. Hernandez – that constitute property of the bankruptcy case, such as the commencement of the Colorado action brought by the Debtor against COPIC for, among other things, damages. The relief sought goes beyond the scope of a Section 225 action and clearly implicates property of the estate.

14.     The Delaware courts have made clear that Section 225 actions are *in rem* in nature and are very limited in their scope of application.  As one court noted

The purpose of a Section 225 action "is to provide a quick method for review of the corporate election process to prevent a Delaware corporation from being immobilized by controversies about whether a given officer or director is properly holding office."A Section 225 proceeding is summary in character, and its scope is limited to determining those issues that pertain to the validity of actions to elect or remove a director or officer.
...

8

> In determining what claims are cognizable in a [Section] 225 action, the most important question that must be answered is whether the claims, if meritorious, would help the court decide the proper composition of the corporation's board or management team." If not, then those claims "are said to be 'collateral' to the purpose of a [Section] 225 action and must be raised in a [separate] plenary action.

Genger v. TR Invs., LLC, 26 A.3d 180, 199 (Del. 2011).

15.     The Genger court also noted that

> A Section 225 proceeding is not an *in personam* action. Rather, it is "in the nature of an *in rem* proceeding," where the "defendants" are before the court, not individually, but rather, as respondents being invited to litigate their claims to the res (here, the disputed corporate office) or forever be barred from doing so. The one exception is the corporation itself, which is the entity that embodies the "res," and is only party before the Court in its "individual" capacity. The in rem character of a Section 225 action "imposes important limits on the scope of [a] court's remedial powers even as to claims bearing on whether a person lawfully holds corporate office." For example, in a Section 225 action, a plaintiff may claim that a director-respondent does not validly hold corporate office because that director obtained the office through fraud, deceit, or breach of contract. The Court of Chancery may adjudicate that claim in a Section 225 proceeding, but only for the limited purpose of determining the corporation's de jure directors and officers. In a Section 225 proceeding the court "cannot go further and actually rescind a transaction procured through such unlawful behavior or award money damages to those harmed by that behavior." That type of ultimate relief can only be obtained in a plenary action in a court that has in personam jurisdiction over any necessary or indispensable parties.

Id. at 199-200 (Footnotes omitted).

16.     Clearly, by requesting an order that determines all corporate acts taken by the

Debtor since March 2020 are void *ab initio*, including the commencement of the action against

COPIC for damages in Colorado, COPIC is requesting relief from the Delaware court that

exceeds the parameters of Section 225 and impacts property of the bankruptcy estate.  Moreover,

as set forth in the Motion, the Debtor maintains that granting the relied requested by COPIC

would result in a windfall to COPIC at the expense of other creditors and shareholders.  Any

attempt to invalidate the Debtor's corporate actions and business decisions since March 2020

clearly falls beyond the scope of Section 225 and would adversely affect the Debtor's

bankruptcy estate.  Moreover, any invalidation of the corporate actions and important strides this

Debtor has taken to grow its business since 2020 clearly impacts the Debtor's reorganization and

property of the bankruptcy estate.

17.    Based upon the plain language of COPIC's complaint, COPIC seeks to assert

claims against the Debtor that it has identified as derivative claims in its individual capacity

pursuant to Section 225.  Therefore, COPIC is not simply seeking "a quick method for review of

the corporate election process to prevent a Delaware corporation from being immobilized by

controversies about whether a given officer or director is properly holding office."  Box v. Box,

697 A.2d 395, 398 (Del. 1997).  This Debtor is not suffering from any such "immobilization"

regarding its corporate governance.  If COPIC believes the Debtor lacked the requisite corporate

authority to file its petition, it may seek relief before this Court and raise this issue.

18.    Finally, as stated above, the Debtor believes that the majority of cases cited by

COPIC involve the request for a shareholders' meeting, and not a Section 225 request, because

Section 225 cases are *in rem* proceedings that directly involve the corporation.  In the case cited

by COPIC, Arbitrium (Cayman Islands) Handels AG v. Johnston, 1995 WL 606310 (Del. Ch.

1995), the court states, in no uncertain terms, that a Section 225 claim is an *in rem* proceeding

and addresses a corporation and its property.  The Arbitrium court stated:

> [T]he character of a § 225 action is *in rem. See Grossman v. Liberty Leasing Co.,
> Inc.,* Del. Ch., 295 A.2d 749 (1972). However, even in a § 225 proceeding the
> corporation itself is before the Court for all purposes, so that the Court would be
> empowered to enjoin the corporation, as well as its officers and directors in their
> official capacity, from taking actions that could frustrate the statutory
> remedy. *See* Court of Chancery Rule 65.

Id. at *4.

10

Therefore, based upon the <u>Arbitrium</u> court's interpretation of Section 225, submitting

COPIC's request to the Delaware court would empower the Delaware court to enjoin the

Debtor from taking actions that could impact the administration of the bankruptcy case.

For all of these reasons, the Court should find that COPIC's intentional prosecution of

the Delaware action

**<u>CONCLUSION</u>**

WHEREFORE, for the reasons set forth herein the Debtor respectfully requests

that this Court enter an order granting the relief requested in the Motion and such other

and further relief as is just and proper.

Dated: Astoria, New York
        July 25, 2021

                                         _/s/Norma E. Ortiz_
                                         Norma E. Ortiz, Esq.
                                         Ortiz & Ortiz, L.L.P.
                                         35-10 Broadway, Ste. 202
                                         Astoria, New York  11106
                                         Tel. (718) 522-1117
                                         Counsel to the Debtor

Exhibit A

**EFiled:  May 06 2021 04:30PM EDT**
**Transaction ID 66579115**
**Case No. 2021-0148-JRS**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| COPIC INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CALEB HERNANDEZ, | ) | |
| | ) | C.A. No. 2021-0148-JRS |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CERTA DOSE, INC., | ) | |
| | ) | |
| Nominal Defendant. | ) | |

## ANSWERING BRIEF OF DEFENDANT CALEB HERNANDEZ
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR
## <u>PARTIAL SUMMARY JUDGMENT</u>

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
Gary W. Lipkin (Bar No. 4044)
Alexandra D. Rogin (Bar No. 6197)
222 Delaware Ave., 7th Floor
Wilmington, DE 19801
Telephone: (302) 574-7400
Facsimile (302) 574-7401
glipkin@eckertseamans.com
arogin@eckertseamans.com
*Attorneys for Defendant Caleb Hernandez*

Dated: May 6, 2021

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ........................................................1

STATEMENT OF FACTS ........................................................................1

QUESTIONS INVOLVED.......................................................................11

ARGUMENT ...................................................................................12

   I.   Standard of Review.......................................................................12

   II.  COPIC Seeks an Order Beyond the Scope of 8 *Del. C.* § 225.....................13

   III. The Actions Taken by the Certa Dose Board and Dr. Hernandez Are Permitted by the Governing Agreements and the 2017 Certificate Removed COPIC's Preferential Board Rights...............................................15

   IV. COPIC Has Consistently Recognized the Validity of the Certa Dose Board and Any Belated Challenge Should Be Deemed Invalid Due to the Doctrines of Waiver, Acquiescence, Ratification and Laches.......................................20

   V.  COPIC Should be Precluded from Attempting to Re-Litigate Matters Already Before the Colorado Courts..........................................................22

CONCLUSION ..................................................................................28

# TABLE OF CITATIONS

## Cases

*Applied Energetics, Inc. v. Farley*,
  239 A.3d 409 (Del. Ch. 2020) .................................................. 21

*AT&T Corp. v. Prime Sec. Distribs., Inc.*,
  1996 Del. Ch. LEXIS 134 (Oct. 24, 1996) .............................. 23

*Benihana of Tokyo, Inc. v. Benihana, Inc.*,
  906 A.2d 114 (Del. 2006) ...................................................... 18

*Brown v. Kellar*,
  2018 Del. Ch. LEXIS 580 (Del. Ch. Dec. 21, 2018) .......................... 12, 14

*Carvel v. Andreas Hldgs. Corp.*,
  698 A.2d 375 (Del. Ch. 1995) .................................................. 24

*Certa Dose, Inc. v. COPIC Ins. Co.*,
  2020 N.Y. Misc. LEXIS 10349 (N.Y. Oct. 20, 2020) ........................... 5, 8

*Chadwick v. Metro Corp.*,
  856 A.2d 1066 (Del. 2004) ...................................................... 23

*Cruz v. Cruz*,
  2020 Del. Ch. LEXIS 299 (Sept. 28, 2020) .............................. 26

*E.I. DuPont de Nemours & Co., Inc. v. Allstate Ins. Co.*,
  693 A.2d 1059 (Del. 1997) ...................................................... 18

*Franklino v. Gleason*,
  1999 Del. Ch. LEXIS 219 (Nov. 5, 1999) .............................. 14

*Gary v. Beazer Homes USA, Inc.*,
  2008 Del. Ch. LEXIS 72 (June 11, 2007) .................................. 12

*Genger v. TR Inv'rs, LLC*,
  26 A.3d 180 (Del. 2011) .......................................................... 14

*GMG Capital Invest., LLC v. Athenian Venture Partners I, L.P.*,
36 A.3d 776 (Del. 2012) ...................................................... 18, 19

*Greenmont Cap. Partners I, LP v. Mary's Gone Crackers, Inc.*,
2012 WL 4479999 (Del. Ch. Sept. 28, 2012) ........................... 18

*Harrah's Entm't Inc. v. JCC Hldg. Co.*,
802 A.2d 294 (Del. Ch. 2002) ................................................ 18

*Holley v. Nipro Diagnostics, Inc.*,
2014 Del. Ch. LEXIS 268 (Dec. 23, 2014) ......................... 23, 25

*In re Bay Hills Emerging Partners I, L.P.*,
2018 Del. Ch. LEXIS 247 (July 23, 2018) .............................. 27

*In re Bear Stearns Cos. S'holder Litig.*,
2008 Del. Ch. LEXIS 46 (Apr. 9, 2008)................................... 23

*Japan Lease Int'l Corp. v. Mediatrics, Inc.*,
1973 Del. Ch. LEXIS 61 (May 8, 1973).................................. 27

*Kahn Bros. & Co. Profit Sharing Plan & Tr. v. Fischbach Corp.*,
1988 Del. Ch. LEXIS 147 (Nov. 15, 1988) .............................. 14

*Kuratle Contr., Inc. v. Lenden Green Condo., Ass'n*,
2013 Del. Super. LEXIS 524 (Nov. 19, 2013) ......................... 19

*McQuaide v. McQuaide*,
2005 Del. Ch. LEXIS 75 (May 24, 2005)................................. 23

*McWane Cast Iron Pipe Corp. v. McDowell-Wllman Eng'g Co.*,
263 A.2d 281 (Del. 1970) ................................................*passim*

*Northwestern Nat'l Ins. Co. v. Esmark, Inc.*,
672 A.2d 41 (Del. 1996) ....................................................... 18

*Park G.P., Inc. v. CCSB Fin. Corp.*,
2020 Del. Ch. LEXIS 374 (Dec. 29, 2020) ......................... 24, 26

*PECO Hldgs. Corp. v. Weil*,
2013 Del. Ch. LEXIS 264 (Oct. 31, 2013) ......................... 25, 26

*Rhone-Poulenc Basic Chem. Co. v. Am. Motor Ins. Co.*,
    616 A.2d 1192 (Del. 1992) ........................................................................ 19

*Schnell v. Porta Sys. Corp.*,
    1994 Del. Ch. LEXIS 47 (Apr. 12, 1994) ................................................ 24

*Telxon Corp. v. Meyerson*,
    802 A.2d 257 (Del. 2002) ........................................................................ 12

*Transamerica Corp. v. Reliance Ins. Co. of Ill.*,
    1995 Del. Super. LEXIS 424 (Aug. 30, 1995) ........................................ 23

*Weil v. VEREIT Operating P'ship*,
    2018 Del. Ch. LEXIS 48 (Feb. 13, 2018) ................................................ 12

## Statutes

8 Del C. § 141 ........................................................................................... 21

8 *Del. C.* § 223 .............................................................................. 9, 10, 21

8 *Del. C.* § 225 ................................................................................ *passim*

## Rules

Ct. Ch. R. 56(c) ........................................................................................ 12

Defendant, Caleb Hernandez, D.O. ("Dr. Hernandez"), by and through his counsel, hereby submits this Answering Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment (the "Motion"). For the reasons set forth herein, Dr. Hernandez respectfully submits that Plaintiff's Motion should be denied.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff, COPIC Insurance Company ("COPIC" or "Plaintiff") filed a Complaint against Dr. Hernandez and Certa Dose, Inc. ("Certa Dose"), raising claims that purport to be under 8 *Del. C.* § 225, as well as breach of contract and breach of fiduciary duties. (D.I. 1). On April 22, 2021, COPIC filed a Motion for Partial Summary Judgment with respect to the § 225 claim, seeking an order that: (1) Certa Dose's Board must contain four members, one of which must be designated by COPIC, and two of which must be mutually designated; and (2) any actions taken by an allegedly improper Board are invalid. Not only do numerous factual issues preclude summary judgment, but the requested relief is overly broad and falls outside the scope of § 225(a). Plaintiff's Motion should be denied accordingly.

## STATEMENT OF FACTS

Certa Dose is a Delaware company that develops life-saving medical products, including color-coded syringes that provide a safer delivery method of potentially caustic medications. (D.I. 1 at ¶ 9). Certa Dose was founded by Dr. Hernandez, an emergency room physician. (*Id*. at ¶ 8). COPIC is a medical

professional liability insurance provider, which has invested in Certa Dose since

approximately 2014. (*Id*. at ¶ 7).

On or about April 26, 2016, Certa Dose filed an Amended and Restated

Certificate of Incorporation (the "2016 Certificate"), which includes the following

provisions relevant to this action:

> RESOLVED, that the Amended and Restated Certificate of Incorporation of this corporation be amended and restated in its entirety to read as follows:
> …
>
> FOURTH: The total number of shares of all classes of stock which the Corporation shall have authority to issue is (1) 1,900,000 shares of Common Stock…and (ii) 621,079 shares of Preferred Stock….The Preferred Stock shall be divided into the following separate series. The first series shall be designated "Series Seed Preferred Stock" and shall consist of 291,667 shares of the authorized Preferred Stock of the Corporation. The second series shall be designated "Series Seed 2 Preferred Stock" and shall consist of 329,412 shares of the authorized Preferred Stock of the Corporation.
>
> The following is a statement of the designations and the powers, privileges and rights, and the qualifications, limitations or restrictions thereof in respect to each class of capital stock of the Corporation….
>
> 3.2 <u>Classes of Directors; Election of Directors</u>. The Board shall consist of four (4) directors which shall be divided into two classes. One (1) of the directors shall be a "Class 1 Director." The Class 1 Director shall have two (2) votes on each matter to be decided by the Board (or any committee thereof). Three (3) of the directors shall be "Class II Directors". Each Class II Director shall have one (1) vote on each matter to be decided by the Board (or any committee thereof). The holders of record of the shares of Common Stock and Preferred Stock, voting together as a single class on an as if converted to Common Stock basis, shall be entitled to elect all directors of the Corporation.

3.3 <u>Preferred Stock Protective Provisions</u>.  At any time when shares of Preferred Stock are outstanding, the Corporation shall not, either directly or indirectly…do any of the following without…the written consent or affirmative vote of the Required Holders[1]...and any such act or transaction entered into without such consent or vote shall be null and void ab initio and of no force or effect.

3.3.1. amend, alter or repeal any provision of the Certificate of Incorporation or Bylaws of the Corporation in any manner…that adversely affects the powers, preferences or rights of the Preferred Stock.
…

3.3.11: increase or decrease the authorized number of directors constituting the Board or otherwise change the director classifications set forth in this Restated Certificate….

(D.I. 1, Ex. A at Article Four).

At the time, COPIC already owned the 291,667 shares of Series Seed Preferred Stock.  (D.I. 1 at ¶ 10).  On the same date that the 2016 Certificate was filed, COPIC purchased 192,157 shares of newly issued Preferred Stock.  (*Id*. at ¶ 11).  The same day, Certa Dose entered into an Amended and Restated Voting Agreement (the "2016 Voting Agreement"), which, in addition to Dr. Hernandez's appointment to the Board, permitted COPIC to designate one member of the Board, and required designation of two additional members by mutual agreement.  (D.I. 22, Ex. H).

---

[1] Required Holders are defined as holders of a majority of the then outstanding shares of Preferred Stock.  (D.I. 1, Ex. A).

On October 4, 2017, the 2016 Certificate was amended, with the express

consent of COPIC (the "2017 Certificate").    (D.I. 1 at ¶¶ 14, 17).    The 2017

Certificate entirely replaced the Fourth Article of the 2016 Certificate, as follows:

> ARTICLE FOURTH of the Corporation's Amended and Restated
> Certificate of Incorporation shall be amended and restated **in its
> entirety** to read as follows:
>
> "FOURTH: The total number of shares of all classes of stock which the
> Corporation shall have authority to issue is (i) 2,200,000 shares of
> Common Stock…and (ii) 621,079 shares of Preferred Stock….The
> Preferred Stock shall be divided into the following separate series.  The
> first series shall be designated "Series Seed Preferred Stock" and shall
> consist of 291,667 shares of the authorized Preferred Stock of the
> Corporation.  The second series shall be designated "Series Seed 2
> Preferred Stock" and shall consist of 329,412 shares of the authorized
> Preferred Stock of the Corporation."

(D.I. 1, Ex. B) (emphasis added).

Notably, subsections 3.2 and 3.3 of the 2016 Certificate, which provided

preferential rights to COPIC, including the ability to vote on director appointments

and amendments to the Certificate of Incorporation, were omitted from the 2017

Certificate.

In 2018 and 2019, COPIC invested additional funds into Certa Dose by way

of convertible promissory notes.  (D.I. 21 at pp. 3-4).

As of January 1, 2019, the Certa Dose Board consisted of Dr. Hernandez,

Steve Rubin, and Steve Hoffenberg, with one seat vacant.  (D.I. 21 at p. 8).  While

COPIC asserts that in October of 2019, Dr. Hernandez unilaterally removed Rubin

and Hoffenberg for cause, a disputed issue of fact remains as to whether they were actually removed, or resigned in connection with their malfeasance and a hostile takeover attempt by COPIC.[2]

To wit, in the summer of 2019, former CFO/COO (and COPIC ally) John Blood ("Blood") and investors affiliated with COPIC made a hostile takeover attempt of Certa Dose, which prompted Dr. Hernandez to demand an investigation. *See Certa Dose*, 2020 N.Y. Misc. LEXIS 10349, at *3.  *See also* Hernandez Decl. at ¶¶ 6-9.  Among other concerns, Dr. Hernandez learned that, behind his back, COPIC Directors, Hoffenberg and Rubin, along with Blood, hired an appraiser to determine the value of Certa Dose and the intellectual property created by Dr. Hernandez and owned by the company.  *Id*. at ¶¶ 8-9.  Upon information and belief, COPIC was hoping for a low valuation, which they would use to attempt to force Dr. Hernandez

---

[2] *See e.g., Certa Dose, Inc. v. COPIC Ins. Co*., 2020 N.Y. Misc. LEXIS 10349, at *3 (N.Y. Oct. 20, 2020), explaining that:

> In the summer of 2019 [CFO/COO John] Blood and investors affiliated with COPIC made a hostile takeover attempt of Certa Dose, causing Hernandez to demand an investigation.  An appraiser was also hired to determine the value of Certa Dose…Hoffenberg and Rubin intended to use the valuation for their benefit.  In October 2019, Hoffenberg and Rubin 'attempted to hold a meeting at COPIC headquarters in Colorado…with the apparent intent of forcing the sale on through without an investigation.

*Id*.  See also the Declaration of Caleb Hernandez, D.O., attached hereto as Exhibit 1 (the "Hernandez Declaration").

to issue more Preferred Stock to COPIC. *Id*. Ultimately, upon information and belief, once it obtained sufficient shares, COPIC would obtain control of Certa Dose and liquidate it for the benefit of the Preferred Stockholders (i.e., COPIC), at the expense of the Common Stockholders. *Id*. at ¶¶ 6-10. Indeed, while they were exploring a sale of the Company, COPIC, through Blood, attempted to cause noteholders to be issued Common Stock instead of the Preferred Stock they were entitled to per the note terms. *Id*. at ¶ 11. COPIC wanted the Preferred Stock for itself. *Id*. at ¶ 12.

After the Company asked the COPIC Directors to explain their actions and participate in an investigation, rather than do so, Hoffman submitted his resignation letter to Dr. Hernandez on October 22, 2019. *Id*. at ¶ 14; *id*. at Ex. A. As such, COPIC's narrative that Dr. Hernandez terminated the COPIC Directors to take control of the Company is plainly false.

During Blood's tenure as COO/CFO, the Company never made a profit. *Id*. at ¶ 15. At times, he made puzzling decisions that cost the Company substantial revenue, such as torpedoing an agreed-upon Distribution Agreement at a time when the Company desperately needed to distribute its products. *Id*. It is only now after COPIC's influence has been removed that the Company is finally profitable, doing substantial business with large cities and health systems across the country. *Id*.

6

Although COPIC asserts that it did not consent to the appointment of replacement directors, on November 15, 2019, Certa Dose and the holders of the company's Preferred Stock, including COPIC, entered into a new Amended and Restated Voting Agreement (the "2019 Amended Voting Agreement").[3] *See id.* at ¶ 18; *id.* at Ex. B. Pursuant to the 2019 Amended Voting Agreement, the Board was to be made up of Hernandez, one person designated by a majority of the holders of Preferred Stock, and two mutually designated individuals. *Id.* at Ex. B. The 2019 Amended Voting Agreement further clarified that Shane Jones was to be the designee for the Preferred Stockholders, and Daniel Hoffman and Audrey Rogers would be the two mutually designated directors. *Id.*, Ex. B at § 1.2. Thus, per the 2019 Amended Voting Agreement, to which COPIC was a party, as of November 15, 2019, the Board consisted of Dr. Hernandez, Jones, Hoffman, and Rogers. *Id.*

With the approval of the Board, the Certificate of Incorporation was amended once again (the "November 2019 Certificate"). The November 2019 Certificate further revised and replaced Article Four as follows:

> RESOLVED, that the Amended and Restated Certificate of Incorporation of this corporation be amended and restated in its entirety to read as follows:
> …

---

[3] Although COPIC references the 2019 Amended Voting Agreement in the Declaration of COPIC's Deputy General Counsel, Dean A. McConnell, COPIC did not provide a copy of this document as an Exhibit.

FOURTH: The total number of shares of all classes of stock which the Corporation shall have authority to issue is (1) 2,200,000 shares of Common Stock…and (ii) 1,023,227 shares of Preferred Stock….

The following is a statement of the designations and the powers, privileges and rights, and the qualifications, limitations or restrictions thereof in respect to each class of capital stock of the Corporation….

3.1 <u>Classes of Directors; Election of Directors</u>. The Board shall consist of four (4) directors which shall be divided into two classes. One (1) of the directors shall be a "Class 1 Director." The Class 1 Director shall have two (2) votes on each matter to be decided by the Board (or any committee thereof). Three (3) of the directors shall be "Class II Directors". Each Class II Director shall have one (1) vote on each matter to be decided by the Board (or any committee thereof). The holders of record of the shares of Common Stock and Preferred Stock, voting together as a single class, shall be entitled to elect all directors of the Corporation.

(D.I. 1, Ex. C at Article Four). Again, the protective provisions originally set forth in § 3.2 and § 3.3 of the 2016 Certificate, which were removed from the 2017 Certificate that was approved by COPIC, remain absent from the November 2019 Certificate.

On December 9, 2019, with approval of the Board, Certa Dose initiated a lawsuit in New York related to the hostile takeover attempt of COPIC investors, and breach of fiduciary duties by Blood, Hoffenberg, Rubin, and others (the "New York Action"). The case was dismissed without prejudice on jurisdictional grounds to be refiled in Colorado, where a contract case involving Certa Dose and COPIC was already pending (the "Colorado Contract Action"). *See Certa Dose, Inc. v. COPIC Ins. Co.*, 2020 N.Y. Misc. LEXIS 10349 (N.Y. Oct. 20, 2020).

8

On December 18, 2019, the Board entered into a resolution to amend the Certificate of Incorporation again, which, *inter alia*, increased the number of directors to five (the "December 2019 Certificate"). (D.I. 1, Ex. D). Specifically, the then-four member Board adopted the following new language:

> 2.1 Classes of Directors; Election of Directors. The Board shall consist of five (5) directors, which shall be divided into two classes. One (1) of the directors shall be a "Class I Director". The Class I Director shall have three (2) votes on each matter to be decided by the Board…and this position shall be exclusively reserved for the first founder of the Company, Caleb Hernandez, as previously identified in the Company's previous Voting Agreements, and this class of Class I Director shall not survive the to any other Director, except if specifically chosen by founder Caleb Hernandez. Four (4) of the directors shall be "Class II Directors". Each Class II Director shall have one (1) vote on each matter to be decided by the Board. The holders of record of the shares of Common Stock and Preferred Stock…voting together as a single class, shall be entitled to elect all directors of the Corporation.

(*Id*. at Article Four). Consistent with the 2017 Certificate, to which COPIC consented, the December 2019 Certificate did not contain preferential rights for COPIC to elect a director or consent to amendments to the certificate of incorporation.

On March 21, 2020, by action of a majority of shareholders in good standing, Rogers, Hoffenberg, and Jones were removed from the Board, although, they had already voted to initiate the Fiduciary Action against COPIC originally filed in New York, and later litigated in Colorado. *See* Hernandez Decl. at ¶ 20; *id*. at Ex. C. Consistent with the Bylaws, and 8 *Del. C*. § 223, Dr. Hernandez, as the sole director,

may fill those vacancies, regardless of whether he as the sole director satisfies general quorum requirements. *See* 8 *Del. C.* § 223(a)(1) ("Unless otherwise provided in the certificate of incorporation or bylaws...[v]acancies and newly created directorships...may be filled by a majority of the directors then in office, although less than a quorum, or by a sole remaining director."); (D.I. 22, Ex. I at Bylaw Section 18) (allowing vacancies to be filled by a sole director, even though less than a quorum). Dr. Hernandez is currently in the process of attempting to fill the Board vacancies. *See* Hernandez Decl. at ¶ 21.

On December 3, 2020, in connection with investigations conducted in connection with the fiduciary obligations of Rubin and Hoffenberg, and as further discovered through proceedings in the New York Action, Certa Dose adopted the Resolutions to Begin Amotion and/or Disenfranchisement Proceedings. (D.I. 1, Ex. G). The issues first raised in the New York Action, which were deemed more jurisdictionally appropriate for a Colorado court, were re-raised in the Colorado Contract Action as amended defenses, and became the subject of disenfranchisement proceedings in a separate Colorado action filed on February 9, 2021 (the "Colorado Fiduciary Action"). *See* Hernandez Decl. at ¶ 22.

Throughout the pendency of the New York and Colorado Actions, COPIC engaged in settlement communications with Certa Dose, going so far as to adopt a

binding Term Sheet and numerous drafts of a final Settlement Agreement. *Id.* at ¶ 23; *id.* at Ex. E.[4]

COPIC, after a failed hostile takeover attempt, has now initiated this lawsuit to have the Court restore its preferential voting rights, which were first removed through the 2017 Certificate (to which it expressly consented). COPIC also seeks a declaration allowing it to designate a Board member. Finally, COPIC asks this Court to declare ALL unidentified actions, from an unidentified time forward, to be invalidated. The requested relief is overly broad and fails to acknowledge the valid actions taken by the Certa Dose Board, including ratification by COPIC on a number of issues.

## QUESTIONS INVOLVED

1.      Should this Court grant Plaintiff's Motion for Partial Summary Judgment and enter an Order: (1) declaring that there are four Board members; (2) that COPIC may designate one of those Board members; (3) and declaring that all unidentified Board actions are invalid from an unidentified time forward, where the requested relief falls outside the scope of § 225, COPIC consented to an amendment that removed its preferential rights, the Board took valid action to further amend the number of Board members, and certain actions have been ratified by COPIC?

*Suggested Answer: No, Plaintiff's Motion should be denied.*

---

[4] Dr. Hernandez anticipates filing a Motion to Enforce the Settlement.

## **ARGUMENT**

COPIC's Motion for Partial Summary Judgment should be denied because the requested relief falls well beyond the scope of § 225, numerous defenses set forth herein defeat COPIC's claims, and genuine issues of material fact preclude the entry of judgment.

## I.    **Standard of Review.**

Delaware Courts are clear that there "is no 'right' to a summary judgment." *Brown*, 2018 Del. Ch. LEXIS 580, at *10 (quoting *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002)).   Summary judgment is appropriate only "when the record shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"   *Id*. (quoting *Weil v. VEREIT Operating P'ship*, 2018 Del. Ch. LEXIS 48 (Feb. 13, 2018); Ct. Ch. R. 56(c)).   It is COPIC's burden to establish that there are no issues of fact, and the Court must review the evidence in the light most favorable to Dr. Hernandez as the nonmoving party.   *Id*. (quoting *Gary v. Beazer Homes USA, Inc.*, 2008 Del. Ch. LEXIS 72 (June 11, 2007)).   It is within this Court's discretion to deny summary judgment "'if it decides that a more thorough development of the record would clarify the law or its application.'"   *Id*. (quoting *Zimmerman v. Crothall*, 2012 Del. Ch. LEXIS 64 (Mar. 5, 2012)) (denying summary judgment in a § 225 action to allow discovery into director-defendant defenses).

## II.      COPIC Seeks an Order Beyond the Scope of 8 *Del. C.* § 225.

8 *Del. C.* § 225 provides:

> Upon application of any stockholder…the Court of Chancery may hear
> and determine the validity of any election, appointment, removal or
> resignation of any director or officer of any corporation, and the right
> of any person to hold or continue to hold such office….In case it should
> be determined that no valid election has been held, the Court of
> Chancery may order an election to be held in accordance with § 211 or
> § 215 of this title….

8 *Del. C.* § 225(a).

At the outset, it should be noted that a genuine issue of material fact exists as

to whether COPIC is even a shareholder with standing to assert a § 225 action given

the disenfranchisement and associated proceedings currently pending in Colorado.

Nevertheless, COPIC now seeks a declaration entitling it to the following

relief under the guise of § 225:

> [1] the Board of Directors of Certa Dose, Inc. must contain four
> members, [2] one of which must be a COPIC Director and two of which
> must be Mutual Directors (both as defined in the Amended and Restated
> Voting Agreement, entered into between Certa Dose, COPIC and other
> investors on May 26, 2016).  [3] Any actions taken by an improperly
> constituted Board, including, but not limited to, pursuing lawsuits in
> Colorado against COPIC and others, are invalid.

(D.I. 20, Proposed Order).

What COPIC does not seek, though, is any relief specifically enumerated

under § 225, which allows for the Court to "hear and determine the validity of any

election, appointment, removal or resignation of any director or officer of any

corporation, and the right of any person to hold or continue to hold such office." 8
*Del. C.* § 225 (a).  What COPIC really asks for is a declaratory judgment on contract
interpretation, which is not necessarily encompassed by the text or purpose of § 225.

Indeed, § 225 has a limited purpose.  The "scope is limited to determining
those issues that pertain to the validity of actions to elect or remove a director…"
*Brown v. Kellar*, 2018 Del. Ch. LEXIS 580, at *12 (Del. Ch. Dec. 21, 2018) (quoting
*Genger v. TR Inv'rs, LLC*, 26 A.3d 180, 199 (Del. 2011)).  "[W]hether an issue is
properly litigable in a Section 225 action turns…upon a determination of whether it
is necessary to decide in order to determine the validity of the election or designation
by which the defendant claims to hold office."  *Id*. at *13 (citing *Kahn Bros. & Co.
Profit Sharing Plan & Tr. v. Fischbach Corp*., 1988 Del. Ch. LEXIS 147 (Nov. 15,
1988)).  Claims that fall "beyond that are collateral to the narrow scope of a Section
225 proceeding and may not be considered.  *Id*. at *13-14 (citing *Franklino v.
Gleason*, 1999 Del. Ch. LEXIS 219 (Nov. 5, 1999)).

Here, COPIC does not dispute that Dr. Hernandez is properly serving as a
director, and COPIC does not seek an Order removing him from office.  Nor does
COPIC seek an Order determining whether any particular director is properly
holding office.  Instead, COPIC seeks an Order that it may vote or designate
candidates to a four-member Board.  This is not the purpose of § 225, as the validity

of an election or designation is not at issue.  As such, COPIC's claims are collateral and fall outside the scope of these plenary proceedings.

COPIC's true aim in this litigation is merely a declaration that certain acts of Certa Dose were *ultra vires*.  Specifically, COPIC seeks to preempt the Colorado litigation by arguing that Certa Dose had no authority to initiate it.  Not only is such relief outside the scope of a § 225 action, it would more appropriately be raised as a defense in Colorado, which is well-equipped to address that defense.

**III.    The Actions Taken by the Certa Dose Board and Dr. Hernandez Are Permitted by the Governing Agreements and the 2017 Certificate Removed COPIC's Preferential Board Rights.**

Even if the relief sought by COPIC fell within the scope of § 225, which it does not, COPIC's 225 claim must be denied as all acts taken by the Certa Dose Board and Dr. Hernandez have been in accordance with the governing corporate documents.

The primary basis for COPIC's § 225 claim is its mistaken belief that it maintains preferential rights first set forth by § 3.2 and § 3.3 of Article Four of the 2016 Certificate.  This position fails to acknowledge that those rights were expressly removed from the 2017 Certificate, to which even COPIC admits it consented.  (*See* D.I. 1, ¶¶ 18, 49; D.I. 21 at p. 12) (acknowledging consent to the 2017 amendment).  Article Four of the 2016 Certificate included the language COPIC relies upon for the number of board members and its designation rights:

FOURTH: The total number of shares of all classes of stock which the Corporation shall have authority to issue is (1) 1,900,000 shares of Common Stock…and (ii) 621,079 shares of Preferred Stock….The Preferred Stock shall be divided into the following separate series. The first series shall be designated "Series Seed Preferred Stock" and shall consist of 291,667 shares of the authorized Preferred Stock of the Corporation. The second series shall be designated "Series Seed 2 Preferred Stock" and shall consist of 329,412 shares of the authorized Preferred Stock of the Corporation.

The following is a statement of the designations and the powers, privileges and rights, and the qualifications, limitations or restrictions thereof in respect to each class of capital stock of the Corporation….

3.2 <u>Classes of Directors; Election of Directors</u>. The Board shall consist of four (4) directors which shall be divided into two classes. One (1) of the directors shall be a "Class 1 Director." The Class 1 Director shall have two (2) votes on each matter to be decided by the Board (or any committee thereof). Three (3) of the directors shall be "Class II Directors". Each Class II Director shall have one (1) vote on each matter to be decided by the Board (or any committee thereof). The holders of record of the shares of Common Stock and Preferred Stock, voting together as a single class on an as if converted to Common Stock basis, shall be entitled to elect all directors of the Corporation.

3.3 <u>Preferred Stock Protective Provisions</u>. At any time when shares of Preferred Stock are outstanding, the Corporation shall not, either directly or indirectly…do any of the following without…the written consent or affirmative vote of the Required Holders...and any such act or transaction entered into without such consent or vote shall be null and void ab initio and of no force or effect.

3.3.1. amend, alter or repeal any provision of the Certificate of Incorporation or Bylaws of the Corporation in any manner…that adversely affects the powers, preferences or rights of the Preferred Stock.

…

16

> 3.3.11: increase or decrease the authorized number of directors constituting the Board or otherwise change the director classifications set forth in this Restated Certificate….

(D.I. 1, Ex. A at Article Four).

However, Article Four was expressly amended and replaced "in its entirety" by the following language in the 2017 Certificate:

> ARTICLE FOURTH of the Corporation's Amended and Restated Certificate of Incorporation shall be amended and restated **in its entirety** to read as follows:
>
> "FOURTH: The total number of shares of all classes of stock which the Corporation shall have authority to issue is (i) 2,200,000 shares of Common Stock…and (ii) 621,079 shares of Preferred Stock….The Preferred Stock shall be divided into the following separate series. The first series shall be designated "Series Seed Preferred Stock" and shall consist of 291,667 shares of the authorized Preferred Stock of the Corporation. The second series shall be designated "Series Seed 2 Preferred Stock" and shall consist of 329,412 shares of the authorized Preferred Stock of the Corporation."

(D.I. 1, Ex. B) (emphasis added).

The 2017 Certificate, thus, unambiguously removed § 3.2 and § 3.3, as evidenced by language that the Article was "amended and restated **in its entirety** to read as follows." (*Id.*) (emphasis added). Later iterations of the Certificate of Incorporation also expressly "amended and restated in its entirety," Article Four. (*Id.*, Exs. C-D). In each case, the language of the entire Article was restated in the amendment. (*Id.*, Exs. A-D). That the subsequent amendments further revised the language to expressly reintroduce aspects of § 3 into a new § 3, or a newly created

17

§ 2, albeit without granting preferential treatment to COPIC, supports that the language of Article Four was amended to read exactly as it is stated in each amendment.

The 2017 Certificate, to which COPIC consented, thus unambiguously removed COPIC's rights to designate directors; consent to amendments to the Certificate of Incorporation; and consent to amendments to changes in Board structure under § 3.2 and § 3.3 of the 2016 Certificate.

Because the language is unambiguous, it must be upheld.  "It is settled law that certificates of incorporation are contracts, subject to the general rules of contract and statutory construction.  Thus, if the charter language is clear and unambiguous, it must be given its plain meaning." *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 906 A.2d 114, 120 (Del. 2006) (citing *Northwestern Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996)).

> In interpreting an unambiguous certificate of incorporation, the court should determine the document's meaning solely in reference to its language without resorting to extrinsic evidence.  Contract language is not ambiguous in a legal sense merely because the parties dispute what it means.  To be ambiguous, a disputed contract term must be fairly or reasonably susceptible to more than one meaning.

*Greenmont Cap. Partners I, LP v. Mary's Gone Crackers, Inc.*, 2012 WL 4479999, at *4 (Del. Ch. Sept. 28, 2012) (citing *Harrah's Entm't Inc. v. JCC Hldg. Co.*, 802 A.2d 294, 309 (Del. Ch. 2002); *E.I. DuPont de Nemours & Co., Inc. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997); *GMG Cap. Invest., LLC v. Athenian Venture*

*Partners I, L.P.*, 36 A.3d 780 (Del. 2012); *Rhone-Poulenc Basic Chem. Co. v. Am. Motor Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) ("[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more difference meanings.") (citation omitted)).

The only possible interpretation of the phrase "restated in its entirety" is that the section at issue was restated in its entirety. The language is straightforward and must be upheld.

To the extent COPIC argues that the language of the 2017 Certificate was not intended by the parties, or was an oversight on its part, such arguments must be rejected, as Delaware courts do not consider extrinsic evidence when interpreting unambiguous language of a contract. Even if these arguments are not summarily rejected, they relate to factual issues that would preclude entry of summary judgment. *See Kuratle Contr., Inc. v. Lenden Green Condo., Ass'n*, 2013 Del. Super. LEXIS 524, at *46, n.51 (Nov. 19, 2013) ("if the court deems the contract to be ambiguous, the fact finder resolves conflicting extrinsic evidence to determine the parties' intent") (citations omitted); *id*. at n. 52 (citing *GMG*, 36 A.3d at 783 ("[W]here reasonable minds could differ as to the contract's meaning, a factual dispute results and the fact-finder must consider admissible extrinsic evidence. In those cases, summary judgment is improper.")).

COPIC's Motion for Partial Summary Judgement should be denied on this basis alone.

**IV.   COPIC Has Consistently Recognized the Validity of the Certa Dose Board and Any Belated Challenge Should Be Deemed Invalid Due to the Doctrines of Waiver, Acquiescence, Ratification and Laches.**

*After* the 2017 Certificate removed COPIC's preferential rights, and *after* the COPIC directors left the Board, COPIC approved of and participated in a number of corporate acts – implicitly approving the validity of the composition of the Board. For example, in 2017, 2018, and 2019, COPIC received the benefit of convertible promissory notes issued with the consent of the Board.   Whether those Notes converted into Preferential Stock remains an issue that is currently being litigated in Colorado.[5]

Furthermore, the parties entered into the 2019 Amended Voting Agreement, which affirmatively established that the Board, as of November 15, 2019, was comprised of Dr. Hernandez, Hoffman, Jones, and Rogers.  Jones was the Preferred

---

[5] COPIC references the Colorado court's April 13, 2021 entry of judgment for failure to pay monies owed under two of the convertible promissory notes.  (D.I. 21 at p. 4, n.1).  What COPIC fails to mention is that the April 13, 2021 Order is not final, the parties intend to submit post-judgment briefing, and COPIC and Certa Dose have continually discussed conversion calculations (conversion taking place with the consent of the Board) in connection with their ongoing settlement negotiations related to the various New York and Colorado Actions.  Documentation supporting those confidential settlement communications can be made available for in camera review by the court.

Director designated by the holders of the majority of the Preferred Stock, and Hoffman and Rogers were the mutually designated directors. *See* Hernandez Decl., Ex. B at § 1.2. Not only was COPIC a party to the 2019 Amended Voting Agreement, but it is undisputed that Dr. Hernandez had the authority as a sole director to fill the Board vacancies remaining after the removal and/or resignation of Rubin and Hoffenberg. *See Applied Energetics, Inc. v. Farley*, 239 A.3d 409, 426 (Del. Ch. 2020) (quoting 8 *Del. C.* § 223 (a)(1); 8 *Del C.* § 141(c)(1),(2)) ("Section 223(a)(1) of the DGCL authorizes 'a majority of the directors then in office, although less than a quorum' or 'a sole remaining director' to fill vacancies."). COPIC's reliance on any alleged lack of quorum in this respect is meritless.

Given COPIC's position as a party to the 2019 Amended Voting Agreement, which confirmed the appointment of Dr. Hernandez, Hoffman, Jones, and Rogers, COPIC evidenced an intent to be bound by the authority of those Board members. This includes the Board's adoption of both the November 2019 Certificate and December 2019 Certificate, which again, fail to afford COPIC the preferential rights first set forth in the 2016 Certificate. This also includes an increase in the number of Board members from four to five, as set forth by the December 2019 Certificate. As such, despite COPIC's insistence that the Board must be comprised of four members, and that it must be permitted to solely designate one of those members, it has consistently acted in a way that belies its supposed belief. At a minimum, issues

of fact related to laches, waiver, acquiescence, and ratification preclude COPIC's entitlement to the requested relief, and therefore, preclude an award of summary judgment in COPIC's favor.

In the same vein, there exists an issue of fact as to whether the Board, which members were agreed to by COPIC, authorized the filing of the New York Action that is now being litigated in Colorado. Given ratification of certain actions of the Board, including issuance of promissory notes and possible conversion of shares under the promissory notes, there also exists a genuine issue of material fact as to whether all "actions taken by an improperly constituted Board" are invalid—as COPIC requests this Court to determine—as a dispute exists as to whether and when the Board was in fact "improperly constituted," and exactly what actions were not ratified and/or are actually invalid. Therefore, COPIC's Motion for Partial Summary Judgment should be denied.

## V.    COPIC Should be Precluded from Attempting to Re-Litigate Matters Already Before the Colorado Courts.

While COPIC seeks an Order that would essentially enjoin Dr. Hernandez and Certa Dose from continuing to litigate lawsuits first-filed in Colorado (including one action first-filed by COPIC), this Court should exercise its discretion to allow the matters currently pending in Colorado to be managed by those fully capable courts, in those jurisdictions where those matters have been pending since prior to the initiation of this lawsuit.

"It has long been held in Delaware that, 'as a general rule, litigation should be confined to the forum in which it is first commenced, and a defendant should not be permitted to defeat the plaintiff's choice of forum in a pending suit by commencing litigation involving the same cause of action in another jurisdiction of its own choosing.'" *Holley v. Nipro Diagnostics, Inc*., 2014 Del. Ch. LEXIS 268, at *8 (Dec. 23, 2014) (citing *Transamerica Corp. v. Reliance Ins. Co. of Ill.*, 1995 Del. Super. LEXIS 424, at *3 (Aug. 30, 1995); *McWane Cast Iron Pipe Corp. v. McDowell-Wllman Eng'g Co*., 263 A.2d 281, 283 (Del. 1970)).

> Under the [*McWane*] first-filed rule, this Court freely exercises its broad discretion to grant a stay when there is [1] a prior action pending elsewhere, [2] in a court capable of doing prompt and complete justice, [3] involving the same parties and the same issues.
>
> Under *McWane*, however, the parties and issues need not be identical. Instead, the courts examine whether the ultimate legal issues to be litigated will be determined in the first-filed action, and thus, repeatedly have held that *McWane* requires only a showing of [s]ubstantial or functional identity. Similar issues are those that arise out of a common nucleus of operative facts. Likewise, parties are considered substantially the same for purposes of *McWane* where related entities are involved but not named in both actions, such that the exclusion is more a matter of form than substance.

*Id*. (quoting *In re Bear Stearns Cos. S'holder Litig.*, 2008 Del. Ch. LEXIS 46 (Apr. 9, 2008); *McWane*, 263 A.2d at 283; *McQuaide v. McQuaide*, 2005 Del. Ch. LEXIS 75 (May 24, 2005); *AT&T Corp. v. Prime Sec. Distribs., Inc*., 1996 Del. Ch. LEXIS 134 (Oct. 24, 1996); *Chadwick v. Metro Corp*., 856 A.2d 1066 (Del. 2004)

(TABLE)); *Schnell v. Porta Sys. Corp.*, 1994 Del. Ch. LEXIS 47 (Apr. 12, 1994))
(internal quotations omitted).

The Court of Chancery has granted stays under *McWane* on numerous
occasions, even in cases of a summary proceeding under § 225; although, there the
Court must also weigh the need for swift and expeditious resolution of these
summary proceedings against the *McWane* policies of comity and promoting the
efficient administration of justice. *Id.* (internal citations and quotations omitted); *see
also Carvel v. Andreas Hldgs. Corp.*, 698 A.2d 375 (Del. Ch. 1995) (granting stay
in § 225 case where dispute over stock ownership was already pending before a New
York court); *Park G.P., Inc. v. CCSB Fin. Corp.*, 2020 Del. Ch. LEXIS 374 (Dec.
29, 2020) (granting stay in § 225 case pending resolution of first-filed Missouri
action).

In the present action, COPIC seeks an Order that would presumably enjoin
the Colorado Contract Action first filed by COPIC and other stockholders on
December 20, 2019.[6]  Allegations regarding the fiduciary obligations of Rubin and
Hoffenberg, as well as the hostile takeover attempt by COPIC, were raised as
affirmative defenses in the Colorado Contract Action on January 5, 2021 after it was
determined that a New York court lacked jurisdiction over the matter. *See*

---

[6] It is not clear what COPIC intends when it refers to the "Colorado Actions" given
that one case was filed by COPIC, and a second action was filed by Certa Dose.

Hernandez Decl. at ¶ 22; *id*. at Ex. D. The Colorado Fiduciary Action was then filed by Certa Dose on February 9, 2021, which involves issues pertaining to fiduciary duties and disenfranchisement. *Id*. All of the claims were raised prior to COPIC filing the instant lawsuit on February 19, 2021, and well-before the April 22, 2021 Motion for Partial Summary Judgement, which seeks an Order that would enjoin litigation in those first-filed lawsuits.

Given the procedural posture of the pending lawsuits, there is no dispute that the *McWane* factors are satisfied, as (1) prior actions are pending elsewhere; (2) in courts capable of doing prompt and complete justice; (3) involving the same parties and same issues. *See Holley*, 2014 Del. Ch. LEXIS 268, at *8 (citing *McWane*, 263 A.2d at 283).

As explained by this Court, the parties and issues need not be identical for *McWane* to apply – it is simply a matter of whether the legal issue will be determined in the first-filed action. Here, the issue is whether the cases may proceed at all in Colorado. That is certainly an argument that COPIC is permitted to raise in the Colorado courts where the actions are already pending. In fact, COPIC has had ample opportunity to raise those defenses given that those cases have been pending for some time. COPIC has not articulated any reason why the issue involving the Colorado courts' jurisdiction should be prioritized here in Delaware, as opposed to in the Colorado courts where the actions are already pending. *See PECO Hldgs*.

*Corp. v. Weil*, 2013 Del. Ch. LEXIS 264, at *7-8 (Oct. 31, 2013) ("PECO has not

convincingly articulated a reason why the Delaware Action should be prioritized

now over the Ohio Action. If PECO is correct that some of Defendants' claims in

Ohio are precluded because the Ohio court may not perform a statutory appraisal

under Delaware law, that court is fully capable of assessing the limits of its

jurisdiction. The parties have had notice of the Ohio Action involving the short-form

merger for two years. The Court declines to entertain PECO's late attempt to move

that litigation—or a significant part of it—to Delaware.").  Therefore, this Court

should exercise its discretion and stay consideration of the issue regarding authority

to initiate and/or continue to litigate the Colorado Actions.

> Issuing such a stay would invoke
>
> > considerations of comity and the necessities of an orderly and efficient
> > administration of justice, and further the Court's goal to avoid the
> > wasteful duplication of time, effort, and expense that occurs when
> > judges, lawyers, parties, and witnesses are simultaneously engaged in
> > the adjudication of the same cause of action in two courts, as well as
> > the possibility of inconsistent and conflicting rulings and judgments
> > and an unseemly race by each party to trial and judgment in the forum
> > of its choice.

*Park*, 2020 Del. Ch. LEXIS, at *3 (internal citations and quotations omitted); *see

also Cruz v. Cruz*, 2020 Del. Ch. LEXIS 299, at *8 (Sept. 28, 2020) (finding that

Delaware Courts should exercise discretion under *McWane* to stay cases where the

first-filed rule applies).  This is especially true where the issues raised here in

Delaware by COPIC do "not present a narrow governance dispute that can be

resolved with the development of a downsized factual record and summary application of Delaware law." *In re Bay Hills Emerging Partners I, L.P.*, 2018 Del. Ch. LEXIS 247, at \*7-8 (July 23, 2018) (citing *Japan Lease Int'l Corp. v. Mediatrics, Inc.*, 1973 Del. Ch. LEXIS 61 (May 8, 1973)) (explaining that in the context of *McWane* and § 225 proceedings, the court is not "mandate[d] to decide any controversy submitted under the corporation law statutes no matter what actions may be pending between the parties in other jurisdictions….[W]e still have an obligation to look at all of the attendant circumstances and make a decision which includes a consideration of the orderly and efficient administration of justice as we see it in light of the binding case law."). Indeed, there are numerous issues of disputed fact which preclude summary judgment, in addition to the co-mingling of plenary claims, for when COPIC has not moved for summary judgment.

As such, Dr. Hernandez respectfully submits that COPIC's Motion should be denied, and that this Court should exercise its discretion to withhold summary judgment on the issue of whether Certa Dose may continue to litigate the actions currently pending in Colorado.

## <u>CONCLUSION</u>

For the reasons set forth herein, Dr. Hernandez respectfully requests that this

Court deny Plaintiff's Motion for Partial Summary Judgement.

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

*/s/   Gary Lipkin*
Gary W. Lipkin (Bar No. 4044)
Alexandra D. Rogin (Bar No. 6197)
222 Delaware Ave., 7th Floor
Wilmington, DE 19801
Telephone: (302) 574-7400
Facsimile (302) 574-7401
glipkin@eckertseamans.com
arogin@eckertseamans.com
*Attorneys for Defendant Caleb Hernandez*
Words: 7,049

Dated: May 6, 2021

EFiled:  May 06 2021 04:30PM EDT
Transaction ID 66579115
Case No. 2021-0148-JRS

# EXHIBIT 1

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| COPIC INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CALEB HERNANDEZ, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| CERTA DOSE, INC., | ) |
| | ) |
| Nominal Defendant. | ) |

C.A. No. 2021-0148-JRS

## DECLARATION OF CALEB HERNANDEZ, D.O.

I, Caleb Hernandez, D.O., pursuant to 10 *Del. C*. § 3927 and the Administrative Order No. 3 – Statewide Judiciary Restricted Operations and the Temporary Suspension of Statutes of Limitations, Filing Deadlines and Notarization Requirements in All Court, dated March 22, 2020, as extended in Administrative Order No. 18, dated April 30, 2021, declare that:

1.    I am a founder of Certa Dose, Inc. ("Certa Dose" or the "Company"), and have at all relevant times been a Board member of Certa Dose.

2.    COPIC Insurance Co. ("COPIC") began investing in Certa Dose in approximately 2014.  (D.I. 1 at ¶ 7).

3.      In 2016, Certa Dose's Certificate of Incorporation was amended through various actions of Certa Dose's former CFO, John Blood ("Blood") and the law firm of Cooley LLP (the "2016 Certificate").  (D.I. 1, Ex. A).  Certa Dose also entered into an Amended and Restated Voting Agreement (the "2016 Voting Agreement"), which named myself, Steven Hoffenberg ("Hoffenberg"), and Larry Miller as Board members, with one seat left vacant.  (D.I. 22, Ex. H).  Steve Rubin ("Rubin"), referred to Certa Dose by COPIC, later replaced Miller.

4.      The 2016 Certificate was amended with the express consent of COPIC on October 4, 2017 (the "2017 Certificate").  (D.I. 1 at ¶¶ 14, 17; D.I. 1, Ex. B).

5.      I became the CEO of Certa Dose in 2018 at the request of COPIC, and Blood became the COO/CFO of the Company.

6.      Certa Dose began 2018 with roughly $3.5M in convertible promissory notes that had been raised mostly from my friends and family, and other shareholders.  However, the noteholders were misled by Blood, Hoffenberg, and COPIC about their conversion rights with respect to issuance of Preferred Stock.

7.      In fact, Hoffenberg, Rubin, Blood, and COPIC engaged in a series of acts and fiduciary violations, which became the subject of a lawsuit filed by Certa Dose against COPIC, Blood, Rubin, Hoffenberg, and others in the Supreme Court of the State of New York, County of Queens, Index No. 720576/2019 (the "New York Action").

8.      The New York Action was dismissed on jurisdictional grounds to be

refiled in Colorado, with the Court making, in part, the following factual findings in

its decision:

> While in Colorado, Blood wasted corporate assets and kept secret
> records.  Blood's malfeasance was brought to the attention of the
> COPIC-appointed board members, but the board did not address the
> matter.

> In the summer of 2019, Blood and investors affiliated with COPIC
> made a hostile takeover attempt of Certa Dose, causing Hernandez to
> demand an investigation. An appraiser was also hired [by COPIC] to
> determine the value of Certa Dose….Hoffenberg and Rubin intended
> to use the valuation to their benefit.

> In October of 2019, Hoffenberg and Rubin "attempted to hold a
> meeting at COPIC headquarters in Colorado…with the apparent intent
> of forcing the sale on through without an investigation."  Certa Dose
> suspended Hoffenberg, Rubin, and Blood, and the company demanded
> that Hoffenberg and Rubin disclose copies of the communications
> between themselves and potential Series A investors, but they declined
> to do so.  Certa Dose removed Hoffenberg and Rubin from the board
> and chose new directors….

*Certa Dose, Inc. v. COPIC Ins. Co*., 2020 N.Y. Misc. LEXIS 10349, at *2-3 (N.Y.

Oct. 20, 2020).

9.      I learned that Hoffenberg, Rubin, and Blood, in concert with COPIC,

hired the appraiser with the hopes of a low valuation, which they would then use as

an attempt to force me to issue more stock to COPIC.

10.     In furtherance of the hostile takeover attempt referenced by the New

York court, upon information and belief, COPIC intended to gain control of Certa

Dose and liquidate it for the benefit of the Preferred Shareholders, i.e., COPIC, at the expense of the Common Stockholders.

11.    Indeed, while they were exploring a sale of the Company, COPIC, through Blood, would cause noteholders to be issued Common Stock instead of the Preferred Stock they believed they were entitled to pursuant to the note terms.

12.    COPIC and its affiliated directors wanted the Preferred Stock for themselves.

13.    On September 24th, 2019 the Certa Dose Board of directors passed a resolution to investigate the dealings of John Blood and the communications between him and the various stakeholders in relation to the proposed Series A funding round.

14.    As referenced by the New York court, the Company asked the COPIC-affiliated directors to explain their actions and participate in an investigation, but they declined to do so.  Instead, Hoffenberg submitted his resignation letter on October 22, 2019.  A true and correct copy of the October 22, 2018 Resignation letter is attached as Exhibit A.

15.    During Blood's tenure as COO/CFO, the Company never made a profit. At times he made puzzling decisions that cost the Company substantial revenue, such as torpedoing an agreed-upon Distribution Agreement at a time when the Company desperately needed to distribute its products.  It is only now after COPIC's

influence has been removed that the Company is finally profitable, doing business with large cities and health systems across the country, while being instrumental in the vaccination effort against COVID-19.

16.     John Blood acted as an agent of COPIC via daily instructional calls from Steve Hoffenberg and together they would undo initiatives that had been previously determined by the Certa Dose leadership and Dr. Hernandez, without informing Dr. Hernandez or Certa Dose leadership. They would do so bypassing Board resolutions and the proper chain of command of the Company, keeping their actions secret.

17.     In a similar way, Steve Rubin independently and without approval of the Board instructed John Blood to ascertain a liquidation price for the Company's intellectual property.

18.     On November 15, 2019, Certa Dose and the majority holders of the company's Preferred Stock entered into a new Amended and Restated Voting Agreement (the "2019 Amended Voting Agreement"). A true and correct copy of the 2019 Amended Voting Agreement is attached as Exhibit B.

19.     Pursuant to the 2019 Amended Voting Agreement, the Board became comprised of myself, Shane Jones, Daniel Hoffman, and Audrey Rogers. *See* Ex. B. at § 1.2. This Board amended the Certificate of Incorporation effective November of 2019, and again in December of 2019. (D.I. 1, Exs. C-D).

20.     On March 21, 2020, by action of a majority of shareholders in good standing, Rogers, Hoffman, and Jones were removed from the Board, although, they had already voted to initiate the lawsuit against COPIC originally filed in New York pertaining to fiduciary obligations, which is now being litigated in Colorado (the "Colorado Fiduciary Action").   A true and correct copy of the March 21, 2020 Executed Board Resolution Letter is attached as Exhibit C.

21.     I have been attempting to fill those vacancies pursuant to 8 *Del. C.* § 223, although COPIC has requested that I not do so while we engage in settlement negotiations pertaining to the New York and Colorado lawsuits.

22.     Allegations raised in the New York Action were included as affirmative defenses to the case filed by COPIC in Colorado pertaining to the notes on January 5, 2021.  A true and correct copy of Certa Dose's Answer with Affirmative Defenses is attached as Exhibit D.   On February 9, 2021, Certa Dose also filed a separate lawsuit pertaining to fiduciary obligations and disenfranchisement against COPIC and its affiliates.

23.     During the course of settlement negotiations between COPIC, its affiliates, and Certa Dose, the parties agreed to a Term Sheet, which has served as the basis for the drafts of the settlement agreement that the parties continue to negotiate and finalize.  A true and correct copy of the Term Sheet is attached as Exhibit E.

24.     The Term Sheet contains provisions requiring payment by COPIC to

Certa Dose, conversion of COPIC's promissory notes into Preferred Stock (issued

pursuant to the amended Certificates of Incorporation), and preparation of newly

amended corporate governance agreements.

**I declare under penalty of perjury under the laws of Delaware that the**

**foregoing is true and correct.**


Executed on the 6th day of May, 2021.


_____

Caleb Hernandez, D.O.

EFiled:  May 06 2021 04:30PM EDT
Transaction ID 66579115
Case No. 2021-0148-JRS

# EXHIBIT A

October 22, 2019

VIA E-MAIL AND U.S. MAIL

Caleb S. Hernandez, D.O.
1750 Wewatta Street, Suite 421
Denver, CO  80202
caleb@certadose.com

    *RE: Certa Dose, Inc.*

Dr. Hernandez:

    I am writing to you in your capacities as Secretary, Chief Executive Officer, and Chair of the Board of Directors of Certa Dose, Inc. ("Certa Dose").  Pursuant to Article III, Section 19 of the Bylaws of Certa Dose, effective immediately, I hereby resign my position as a Director of Certa Dose.

                    Sincerely,

                    Stephen Hoffenberg, M.D.

# EXHIBIT B

## AMENDED AND RESTATED CERTA DOSE, INC.
## AMENDED AND RESTATED VOTING AGREEMENT

THIS AMENDED AND RESTATED VOTING AGREEMENT (this "**Agreement**"), is amended as of this 15th day of November, 2019, by and among CERTA DOSE, INC., a Delaware corporation (the "**Company**"), each holder of the Company's Preferred Stock, $0.001 par value per share (the "**Preferred Stock**") listed on Schedule A (together with any subsequent investors, or transferees, who become parties hereto as "Investors" pursuant to Sections 6.1(a) or 6.2 below, the "**Investors**"), and those certain stockholders of the Company listed on Schedule B (together with any subsequent stockholders or option holders, or any transferees, who become parties hereto as "Key Holders" pursuant to Sections 6.1(b) or 6.2 below, the "**Key Holders**," and together collectively with the Investors, the "**Stockholders**").

## RECITALS

**WHEREAS,** certain of the Investors purchased shares of the Company's Series Seed 2 Preferred Stock (the "**Series Seed 2 Preferred Stock**" and collectively with the Company's Series Seed Preferred Stock, the "**Preferred Stock**") pursuant to the terms of that certain Series Seed 2 Preferred Stock Purchase Agreement (as the same may be amended from time to time, the "**Purchase Agreement**") of even date herewith (the "**Financing**");

**WHEREAS,** the Company's Amended and Restated Certificate of Incorporation (the "**Restated Certificate**") provides that the Board shall consist of four (4) directors, one of which shall be a Class I Director and three of which shall be Class II Directors and that the holders of record of the Company's Common Stock and Preferred Stock, voting together as a single class on an as if converted to Common Stock basis, shall be entitled to elect all directors of the Company;

**WHEREAS,** certain of the Investors, the Key Holders and the Company are parties to that certain Voting Agreement, dated as of December 22, 2014 (the "**Prior Agreement**"), and as amended thereafter from time to time;

**WHEREAS,** the Investors, the Key Holders and the Company desire to amend and restate the Prior Agreement and accept the rights and covenants hereof in lieu of their rights and covenants under the Prior Agreement; and

**WHEREAS,** in connection with the consummation of the Financing, the parties desired to enter into this Agreement in order to, among other things, provide for the future voting of their shares of the Company's capital stock as set forth below.

## AGREEMENT

NOW, THEREFORE, the parties agree as follows:

1. **Voting Provisions Regarding Board of Directors.**

    1.1    Definition of Shares. For purposes of this Agreement, the term "**Shares**" shall mean and include any securities of the Company the holders of which are entitled to vote for members of the Board, including without limitation, all shares of Common Stock and Preferred Stock, by whatever name called, now owned or subsequently acquired by a Stockholder, however acquired, whether through stock splits, stock dividends, reclassifications, recapitalizations, similar events or otherwise.

    1.2    Board Composition. Each Stockholder agrees to vote, or cause to be voted, all Shares owned by such Stockholder, or over which such Stockholder has voting control, from time to time

and at all times, in whatever manner as shall be necessary to ensure that at each annual or special meeting of stockholders at which an election of directors is held or pursuant to any written consent of the stockholders, the following persons shall be elected to the Board:

      (a)      One person designated by the holders of the majority of the outstanding shares of Preferred Stock and acceptable to the holders of a majority of the outstanding shares of Common Stock, which individual shall initially be Shane Jones (the "**Preferred Director**");

      (b)      Dr. Caleb Hernandez (the "**Founder**") for so long as the Founder remains an officer, employee or consultant of the Company or holds at least 5% of the outstanding capital stock of the Company calculated on an as if converted to Common Stock basis, except that if the Founder declines or is unable to serve, his successor shall be designated by him, and if that is not possible, only then by the holders of a majority of the outstanding shares of Common Stock (the "**Common Director**"); and

      (c)      Two individuals who are mutually acceptable to (i) the holders of a majority of the Shares held by the Key Holders; and (ii) the holders of a majority of the Shares held by the Investors, one of which shall initially be Daniel Hoffman and Audrey Rogers (the "**Mutual Directors**").

The Common Director shall be a Class I Director. The Preferred Director and the Mutual Directors shall each be a Class II Director.

Any vote taken to fill any vacancy created by the resignation, removal or death of a director elected pursuant to this Section 1.2, shall also be subject to the provisions of this Section 1.2.

To the extent that any of clauses (a) through (c) above shall not be applicable, any member of the Board who would otherwise have been designated in accordance with the terms thereof shall instead be voted upon by all the stockholders of the Company entitled to vote thereon in accordance with, and pursuant to, the Restated Certificate.

      1.3      <u>Failure to Designate a Board Member</u>. In the absence of any designation from the Persons or groups with the right to designate a director as specified above, the director previously designated by them and then serving shall be reelected if still eligible to serve as provided herein.

      1.4      <u>Removal of Board Members</u>. Each Stockholder also agrees to vote, or cause to be voted, all Shares owned by such Stockholder, or over which such Stockholder has voting control, from time to time and at all times, in whatever manner as shall be necessary to ensure that:

      (a)      no director appointed pursuant to this Agreement may be removed from office other than for cause unless such removal is directed or approved by the affirmative vote of the Person;

      (b)      any vacancies created by the resignation, removal or death of a director elected pursuant to Sections 1.2 or 1.3 shall be filled pursuant to the provisions of this Section 1; and

      (c) upon the request of any party entitled to designate a director as provided in Section 1.2 to remove such director, such director shall be removed.

All Stockholders agree to execute any written consents required to perform the obligations of this Agreement.

      1.5      <u>No Liability for Election of Recommended Directors</u>. No Stockholder, nor any Affiliate of any Stockholder, shall have any liability as a result of designating a person for election as a

director for any act or omission by such designated person in his or her capacity as a director of the Company, nor shall any Stockholder have any liability as a result of voting for any such designee in accordance with the provisions of this Agreement.

1.6    "Bad Actor" Matters. Each Person with the right to designate or participate in the designation of a director as specified above hereby represents and warrants to the Company that (to such Person's knowledge with respect to clause (c) hereinafter) none of the "bad actor" disqualifying events described in Rule 506(d)(1)(i)-(viii) promulgated under the Securities Act of 1933, as amended (the "**Securities Act**") (each, a "**Disqualification Event**"), is applicable to (a) such Person, (b) any of its Rule 506(d) Related Parties, or (c) such Person's initial designee named above except, if applicable, for a Disqualification Event as to which Rule 506(d)(2)(ii) or (iii) or (d)(3) is applicable. "**Rule 506(d) Related Party**" shall mean with respect to any Person any other Person that is a beneficial owner of such first Person's securities for purposes of Rule 506(d) of the Securities Act. Any director designee to whom any Disqualification Event is applicable, except for a Disqualification Event as to which Rule 506(d)(2)(ii) or (iii) or (d)(3) is applicable, is hereinafter referred to as a "**Disqualified Designee**". Each Person with the right to designate or participate in the designation of a director as specified above hereby covenants and agrees (A) not to designate or participate in the designation of any director designee who, to such Person's knowledge, is a Disqualified Designee and (B) that in the event such Person becomes aware that any individual previously designated by any such Person is or has become a Disqualified Designee, such Person shall as promptly as practicable take such actions as are necessary to remove such Disqualified Designee from the Board and designate a replacement designee who is not a Disqualified Designee.

1.7    Notice <u>Restrictions on Sales of Control of the Company</u>. Following December 31, 2019, no Stockholder shall be a party to any Stock Sale unless all holders of Preferred Stock are allowed to participate in such transaction and the holders of a majority of the Common Stock (voting together as a single class) elect otherwise by written notice given to the Company prior to the effective date of any such transaction or series of related transactions.

2.    <u>Remedies</u>.

2.1    <u>Covenants of the Company</u>. The Company agrees to use its best efforts, within the requirements of applicable law, to ensure that the rights granted under this Agreement are effective and that the parties enjoy the benefits of this Agreement. Such actions include, without limitation, the use of the Company's best efforts to cause the nomination and election of the directors as provided in this Agreement.

2.2    <u>Specific Enforcement</u>. Each party acknowledges and agrees that each party hereto will be irreparably damaged in the event any of the provisions of this Agreement are not performed by the parties in accordance with their specific terms or are otherwise breached. Accordingly, it is agreed that each of the Company and the Stockholders shall be entitled to an injunction to prevent breaches of this Agreement, and to specific enforcement of this Agreement and its terms and provisions in any action instituted in any court of the United States or any state having subject matter jurisdiction.

2.3    <u>Remedies Cumulative</u>. All remedies, either under this Agreement or by law or otherwise afforded to any party, shall be cumulative and not alternative.

3.    <u>Term</u>. This Agreement shall be effective as of the date hereof, or as indicated on the retroactivity date, *infra*, and shall continue in effect.

4.      **Miscellaneous**.

4.1     Additional Parties.

(a)     Notwithstanding anything to the contrary contained herein, if the Company issues additional shares of Preferred Stock after the date hereof, as a condition to the issuance of such shares the Company shall require that any purchaser of Preferred Stock become a party to this Agreement.

(b)     In the event that, after the date of this Agreement, the Company enters into an agreement with any Person to issue shares of capital stock to such Person (other than to a purchaser of Preferred Stock described above), then the Company shall cause such Person, as a condition precedent to entering into such agreement, to become a party to this Agreement.

4.2     Transfers. Each transferee or assignee of any Shares subject to this Agreement shall continue to be subject to the terms hereof, and, as a condition precedent to the Company's recognizing such transfer, each transferee or assignee shall agree in writing to be subject to each of the terms of this Agreement by executing and delivering an Adoption Agreement substantially in the form attached hereto as Exhibit A. Upon the execution and delivery of an Adoption Agreement by any transferee, such transferee shall be deemed to be a party hereto as if such transferee were the transferor and such transferee's signature appeared on the signature pages of this Agreement and shall be deemed to be an Investor and Stockholder, or Key Holder and Stockholder, as applicable.

4.3     Successors and Assigns. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

4.4     Governing Law. This Agreement shall be governed by the internal law of the State of Delaware.

4.5     Counterparts. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

4.6     Titles and Subtitles. The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

4.7     Notices. All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given upon the earlier of actual receipt or (a) personal delivery to the party to be notified, (b) when sent, if sent by electronic mail or facsimile during normal business hours of the recipient, and if not sent during normal business hours, then on the recipient's next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) business day after the business day of deposit with a nationally recognized overnight courier, freight prepaid, specifying next business day delivery, with written verification of receipt. All communications shall be sent to the respective parties at their address as set forth on Schedule A or Schedule B hereto, or to such email address, facsimile number or address as subsequently

4

modified by written notice given in accordance with this Section 4.7. If notice is given to the Company, a copy shall also be sent to Company counsel and, if notice is given to the Investors, a copy shall also be given to Investor Counsel, each at the postal and email addresses set forth below:

Company counsel:

Attention: Caleb Hernandez, D.O.
1750 Wewatta Street, Unit 421
Denver, CO 80202

caleb@certadose.com

Investor counsel:

COPIC Insurance Company
Attention:  Mark A. Fogg, General Counsel, Legal Department
7351 E. Lowry Boulevard, Ste. 400
Denver, CO 80230
Facsimile: (720) 858-6031
mfogg@copic.com

 - and -

Lewis, Bess, Williams & Weese P.C.
Attention:  Robert C. Montgomery, Esq.
1560 Broadway, Suite 1400
Denver, CO 80202
Facsimile:  (303) 861-2828
rmontgomery@lewisbess.com

4.8    Consent Required to Amend, Terminate or Waive.  This Agreement may be amended or terminated and the observance of any term hereof may be waived (either generally or in a particular instance and either retroactively or prospectively) only by a written instrument executed by (a) the Company; (b) the Key Holders holding a majority of the Shares then held by all of the Key Holders who are then providing services to the Company as officers, employees or consultants; and (c) the holders of a majority of the shares of Common Stock issued or issuable upon conversion of the shares of Preferred Stock held by the Investors. Notwithstanding the foregoing:

(a)    this Agreement may not be amended or terminated and the observance of any term of this Agreement may not be waived with respect to any Investor or Key Holder without the written consent of such Investor or Key Holder unless such amendment, termination or waiver applies to all Investors or Key Holders, as the case may be, in the same fashion (such as, if a party has breached the contract, allowing for its inability to enforce a provision, then such will be understood as a matter of general application);

(b)    the consent of the Key Holders shall not be required for any amendment or waiver if such amendment or waiver either (A) is not directly applicable to the rights of the Key Holders hereunder; or (B) does not adversely affect the rights of the Key Holders in a manner that is different than the effect on the rights of the other parties hereto (if an amendment is permitted by law, given that a party

5

has breached the contract, allowing for its inability to enforce a provision, then such will be understood as a matter of general application);

           (c)     Schedule A and Schedule B may be amended by the Company from time to time to add information regarding any subsequent investors, stockholder, option holders, or transferees who become parties hereto as "Investors" or "Key Holders" pursuant to Sections 4.1 or 4.2 without the consent of the other parties hereto;

           (d)     any provision hereof may be waived by the waiving party on such party's own behalf, without the consent of any other party (such as, if a party has breached the contract, allowing for its inability to enforce a provision, then such will be understood as a matter of general application);

           (e)     Sections 1.2(b) of this Agreement shall not be amended or waived without the written consent of the Founder.

The Company shall give prompt written notice of any amendment, termination, or waiver hereunder to any party that did not consent in writing thereto. Any amendment, termination, or waiver effected in accordance with this Section 4.8 shall be binding on each party and all of such party's successors and permitted assigns, whether or not any such party, successor or assignee entered into or approved such amendment, termination or waiver. For purposes of this Section 4.8, the requirement of a written instrument may be satisfied in the form of an action by written consent of the Stockholders circulated by the Company and executed by the Stockholder parties specified, whether or not such action by written consent makes explicit reference to the terms of this Agreement.

        4.9     Delays or Omissions. No delay or omission to exercise any right, power or remedy accruing to any party under this Agreement, upon any breach or default of any other party under this Agreement, shall impair any such right, power or remedy of such non-breaching or non-defaulting party nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default occurring before or thereafter, nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default previously or thereafter occurring. Any waiver, permit, consent or approval of any kind or character on the part of any party of any breach or default under this Agreement, or any waiver on the part of any party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to any party, shall be cumulative and not alternative.

        4.10     Severability. In case any one or more of the provisions contained in this Agreement is for any reason held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement, and such invalid, illegal, or unenforceable provision shall be reformed and construed so that it will be valid, legal, and enforceable to the maximum extent permitted by law.

        4.11     Entire Agreement. This Agreement (including the Exhibits hereto), the Restated Certificate and the other Transaction Agreements (as defined in the Purchase Agreement) constitute the full and entire understanding and agreement between the parties with respect to the subject matter hereof, and any other written or oral agreement relating to the subject matter hereof existing between the parties is expressly canceled.

        4.12     Manner of Voting. The voting of Shares pursuant to this Agreement may be effected in person, by proxy, by written consent or in any other manner permitted by applicable law. For

the avoidance of doubt, voting of the Shares pursuant to the Agreement need not make explicit reference to the terms of this Agreement.

4.13    Further Assurances. At any time or from time to time after the date hereof, the parties agree to cooperate with each other, and at the request of any other party, to execute and deliver any further instruments or documents and to take all such further action as the other party may reasonably request in order to evidence or effectuate the consummation of the transactions contemplated hereby and to otherwise carry out the intent of the parties hereunder.

4.14    Dispute Resolution. The parties (a) hereby irrevocably and unconditionally submit to the jurisdiction of the state courts of New York or the United States District Court for the Southern District of New York for the purpose of any suit, action or other proceeding arising out of or based upon this Agreement, (b) agree not to commence any suit, action or other proceeding arising out of or based upon this Agreement except in the state courts of New York or the United States District Court for the Southern District of New York, and (c) hereby waive, and agree not to assert, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding, any claim that it is not subject personally to the jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by such court.

NO WAIVER OF JURY TRIAL: EACH PARTY HEREBY DOES NOT WAIVE ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, THE OTHER TRANSACTION DOCUMENTS, THE SECURITIES OR THE SUBJECT MATTER HEREOF OR THEREOF.

4.15    Costs of Enforcement. If any party to this Agreement seeks to enforce its rights under this Agreement by legal proceedings, the non-prevailing party shall pay all costs and expenses incurred by the prevailing party, including, without limitation, all reasonable attorneys' fees, costs, and necessary disbursements in addition to any other relief to which such party may be entitled.

4.16 Amendment and Restatement of Prior Agreement. The Prior Agreement is hereby amended in its entirety and restated herein.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**IN WITNESS WHEREOF**, this amendment and restatement was approved by the Company and by the holders of the majority of Shares on November 15, 2019 at the moment that the Certificate of Designation which was filed that day was filed, but was also amended retroactively, as well as of the date of amendment, to November 30, 2017.

**COMPANY**:

**CERTA DOSE, INC.**

By: _Daniel L. Hoffman_  11/15/19

Name: Daniel Hoffman
Title: CDO and Interim COO

Address: _15 Hudson Yards, 33B_
_New York, NY, 10001_

**KEY HOLDER:**

DR. CALEB HERNANDEZ                 11-15-19

SIGNATURE PAGE TO AMENDED AND RESTATED VOTING AGREEMENT

**INVESTOR AND KEY HOLDER:**

DR. CALEB HERNANDEZ          11-15-19

## SCHEDULE A

### INVESTORS

**Name and Address**

**DR. CALEB HERNANDEZ**
**6640 West 80th Circle**
**Arvada, CO  80003**

**COPIC INSURANCE COMPANY (IN BREACH OF CONTRACT)**
**7351 E. Lowry Blvd., Ste. 400**
**Denver, CO 80230**

**SARAH L. HANSSEN (SOLD INTEREST TO DR. CALEB HERNANDEZ)**
**12881 Shelborne Road**
**Carmel, IN 46032**

**DR. LARRY MILLER**
**28829 Riva Ridge**
**Boerne, TX 78015**

## SCHEDULE B

## KEY HOLDERS

### Name and Address

**JOHN BLOOD (IN BREACH OF CONTRACT)**
3449 Wyandot Street
Denver, CO  80211

**DR. CALEB HERNANDEZ**
1750 Wewatta Street, Unit 421
Denver, CO 80202

## EXHIBIT A

## ADOPTION AGREEMENT

This Adoption Agreement ("**Adoption Agreement**") is executed on _____, 20__, by the undersigned (the "**Holder**") pursuant to the terms of that certain Amended and Restated Voting Agreement dated as of _____, 2016 (the "**Agreement**"), by and among the Company and certain of its Stockholders, as such Agreement may be amended or amended and restated hereafter. Capitalized terms used but not defined in this Adoption Agreement shall have the respective meanings ascribed to such terms in the Agreement. By the execution of this Adoption Agreement, the Holder agrees as follows.

1.1    Acknowledgement. Holder acknowledges that Holder is acquiring certain shares of the capital stock of the Company (the "**Stock**") or options, warrants, or other rights to purchase such Stock (the "**Options**"), for one of the following reasons (Check the correct box):

☐    As a transferee of Shares from a party in such party's capacity as an "Investor" bound by the Agreement, and after such transfer, Holder shall be considered an "Investor" and a "Stockholder" for all purposes of the Agreement.

☐    As a transferee of Shares from a party in such party's capacity as a "Key Holder" bound by the Agreement, and after such transfer, Holder shall be considered a "Key Holder" and a "Stockholder" for all purposes of the Agreement.

☐    As a new Investor in accordance with Section 6.1(a) of the Agreement, in which case Holder will be an "Investor" and a "Stockholder" for all purposes of the Agreement.

☐    In accordance with Section 6.1(b) of the Agreement, as a new party who is not a new Investor, in which case Holder will be a "Stockholder" for all purposes of the Agreement.

1.2    Agreement. Holder hereby (a) agrees that the Stock and/or Options, and any other shares of capital stock or securities required by the Agreement to be bound thereby, shall be bound by and subject to the terms of the Agreement and (b) adopts the Agreement with the same force and effect as if Holder were originally a party thereto.

1.3    Notice. Any notice required or permitted by the Agreement shall be given to Holder at the address or facsimile number listed below Holder's signature hereto.

HOLDER: _____        ACCEPTED AND AGREED:

By: _____        CERTA DOSE, INC.
Name and Title of Signatory

Address: _____        By: _____

_____        Title: _____

Facsimile Number: _____

# EXHIBIT C

Caleb Hernandez
1750 Wewatta Street, #421
Denver, CO 80202

March-21-2020

<u>**Via overnight courier**</u>
<u>**and Via Electronic Transmission, as Listed,**</u> *infra.*

Certa Dose, Inc.
101 Avenue of the Americas
New York, NY 10013

*-and-*
*Shane.a.jones@outlook.com*
*Aahrogers@gmail.com*
*Dan@certadose.com*
*Patricia@certadose.com*

To Certa Dose, Inc.:

Pursuant to Article III, Section 13 and Article IV, Section 20 of the BYLAWS OF CERTA DOSE, INC. and the CERTA DOSE, INC. VOTING AGREEMENT, the below signed individuals, being holders of the outstanding stock of Certa Dose, Inc., and also having a majority of said outstanding stock that is not in breach, being in good standing with the company hereby take action without meeting and also consent to this same action hereby being taken without meeting, as recognized by the subsections of Article III, Section 13 of the Bylaws, said action being that:

**Audrey Rogers, Daniel Hoffman and Shane Jones, are hereby removed immediately from the Certa Dose, Inc. Board of Directors.**

This action is being taken because the shareholders seek representation that is in the best interest of *those who have invested in the company in good faith*—and because the signed holders believe the directors concerned do not represent the desires, vision and direction that is chosen by the majority of shareholders and investors who are in good standing with the company, who are not in breach and have the right to vote.

Regards,

Nils Albert

CALEB HERNANDEZ

Eric Olsen

Mike Fallon

Mark Notash

Andrew Glasser

Seth Peacock

Donald Miller

Anthony Ingram

1

# EXHIBIT D

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock St., Room 256<br>Denver, CO 80202 | DATE FILED: January 5, 2021 1:54 PM<br>FILING ID: 306596023E1E7<br>CASE NUMBER: 2019CV34850 |
| COPIC INSURANCE COMPANY, a Colorado corporation; STEPHEN R. HOFFENBERG, M.D.; ALAN YOUNG SYNN, M.D.; DAVIS K. HURLEY, M.D.; BRIAN C. HARRINGTON, M.D.; NILES COLE; GERALDINE A. LEWIS-JENKINS; MATTHEW FLEISHMAN, M.D.; and THEODORE J. CLARKE, M.D.,<br><br>Plaintiffs,<br><br>*v.*<br><br>CERTA DOSE, INC., a Delaware corporation,<br>Defendant,<br><br>*-and-*<br><br>KATHERINE DRISCOLL, Trustee of the 2015 LFD III GRAT-TRUST U/A 8.26.15; PHOEBE FISHER, M.D.; THOMAS S. COWAN; and ANTHONY R. MAYER,<br><br>Intervenors-Additional Plaintiffs. | |
| | ▲ COURT USE ONLY ▲ |
| ATTORNEY FOR THE DEFENDANT:<br><br>NAME:    JOSUE DAVID HERNANDEZ<br><br>ADDRESS:    P.O. Box 838<br>   Denver, CO 80201<br>*Telephone*:    720-312-9553<br>*Facsimile*:    303-200-7801<br>*E-Mail*: jhernandez@DenverContractLaw.com<br>ATTORNEY REGISTRATION NUMBER: 44509 | CASE NO.: 2019CV34850<br><br>Courtroom: 409 |

**VERIFIED AMENDED ANSWER TO THE COMPLAINT OF COPIC INSURANCE COMPANY ("COPIC"), STEPHEN R. HOFFENBERG, M.D., ALAN YOUNG SYNN, M.D., DAVIS K. HURLEY, M.D., BRIAN C. HARRINGTON, M.D., NILES COLE, GERALDINE A. LEWIS-JENKINS, MATTHEW FLEISHMAN, M.D., AND THEODORE J. CLARKE, M.D., INCLUDING JURY DEMAND**

Defendant, CERTA DOSE, INC., for its Verified Amended Answer to the Complaint of Plaintiffs COPIC Insurance Company ("COPIC"), Stephen R. Hoffenberg, M.D., Alan Young Synn, M.D., Davis K. Hurley, M.D., Brian C. Harrington, M.D., Niles Cole, Geraldine A. Lewis-Jenkins, Matthew Fleishman, M.D., and Theodore J. Clarke, M.D. (*hereinafter*, "Plaintiffs"), as verified by **EXHIBIT B**, *hereto*, states as follows:

1.      Defendant admits that the Plaintiffs have brought an action alleging that they are owed money on notes. Defendant denies the remaining allegations contained in paragraph 1 of the Complaint. In this, Defendant specifically denies the allegations contained in paragraph 1 of the Complaint in so far as the allegations: (**1**) call for a legal conclusion; (**2**) imply and/or allege that any notes concerned were in default and/or did not convert into equity; (**3**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any allegation and/or fact raised on the motion briefings by CERTA DOSE, INC.; (**4**) imply that the character of this action is properly described in the paragraph and/or implies that the extent of the disputes between the Parties is described by the paragraph; (**5**) imply that CERTA DOSE, INC. owes any money to the Plaintiffs; and/or (**6**) imply that litigation was properly brought in Colorado (*especially given that full and just treatment of the issues concerned was actually brought in an action in New York*).[1]

2.      Defendant admits the allegations contained in paragraph 2 of the Complaint.

3.      Defendant admits the allegations contained in paragraph 3 of the Complaint.

4.      Defendant admits the allegations contained in paragraph 4 of the Complaint to the extent that they do not rule out that CERTA DOSE, INC. is also registered to do business in New York, has offices in New York and does business in New York.

5.      Defendant admits the allegations of paragraph 5 of the Complaint to the extent that the allegations do not: (**1**) call for a legal conclusion; (**2**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any of the motion briefings that the Defendant has filed in this action (*which are incorporated herein by reference*); (**3**) conflict with the fact that the "contracts" concerned were amended to provide for exclusive jurisdiction in the Courts of New York; and/or (**4**) conflict with the fact that the "contracts" in question were the product of fraud on the part of the Plaintiffs and/or fraud which the Plaintiffs aided and abetted, as further set forth by CERTA DOSE, INC. in in **EXHIBIT A**, *see, e.g.,* AFFIRMATIVE DEFENSES, ¶¶ 4-6, *infra*. Otherwise, the allegations contained in paragraph 5 of the Complaint are denied.

6.      Defendant admits the allegations of paragraph 6 of the Complaint to the extent that the allegations do not: (**1**) call for a legal conclusion; (**2**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any of the motion briefings that the Defendant has filed in this action (*which are incorporated herein by reference*); and/or (**3**) conflict with the fact that EXHIBIT A to the Complaint is no longer a true and accurate copy of the most current Note Purchase Agreement (the 2018 Agreement), as the notes and their agreements were amended, as noted in the motion briefings that the Defendant has filed in this action (*which are incorporated herein by reference*). Otherwise, the allegations contained in paragraph 6 of the Complaint are denied.

---

[1] All references to the New York action incorporate the New York pleadings, filed herein as **EXHIBIT A (Answer)**, which is also incorporated by reference herein.

7.    Defendant admits the allegations of paragraph 7 of the Complaint to the extent that the allegations do not: (**1**) call for a legal conclusion; (**2**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any of the motion briefings that the Defendant has filed in this action (*which are incorporated herein by reference*); and/or (**3**) conflict with the fact that EXHIBIT B to the Complaint is no longer a true and accurate copy of the most current Note Purchase Agreement (the 2019 Agreement), as the notes and their agreements were amended, as noted in the motion briefings that the Defendant has filed in this action (*which are incorporated herein by reference*). Otherwise, the allegations contained in paragraph 7 of the Complaint are denied.

8.    Defendant admits the allegations of paragraph 8 of the Complaint to the extent that the allegations do not: (**1**) call for a legal conclusion; and (**2**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any of the motion briefings that the Defendant has filed in this action (*which are incorporated herein by reference*). Otherwise, the allegations contained in paragraph 8 of the Complaint are denied.

9.    Defendant admits the allegations of paragraph 9 of the Complaint to the extent that the allegations do not: (**1**) call for a legal conclusion; (**2**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any of the motion briefings that the Defendant has filed in this action (*which are incorporated herein by reference*); (**3**) conflict with the fact that the "contracts" concerned were amended to provide for exclusive jurisdiction in the Courts of New York; and/or (**4**) conflict with the fact that the "contracts" in question were the product of fraud on the part of the Plaintiffs and/or fraud which the Plaintiffs aided and abetted, as further set forth by CERTA DOSE, INC. in **EXHIBIT A**. *See* AFFIRMATIVE DEFENSES, especially ¶¶ 4-6, *infra*.   Otherwise, the allegations contained in paragraph 9 of the Complaint are denied.

10.    Defendant admits the allegations contained in paragraph 10 of the Complaint in so far as the allegations do not: (**1**) call for a legal conclusion; (**2**) imply and/or allege that any notes concerned were in default and/or did not convert into equity; (**3**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any allegation and/or fact raised on the motion briefings by CERTA DOSE, INC.; (**4**) imply that CERTA DOSE, INC. owes any money to the Plaintiffs; and/or (**5**) conflict with the fact that EXHIBIT C to the Complaint is no longer a true and accurate copy of the most current Note(s), as the notes and their agreements were amended, as noted in the motion briefings that the Defendant has filed in this action (*which are incorporated herein by reference*). Otherwise, the allegations contained in paragraph 10 of the Complaint are denied.

11.    Defendant admits the allegations contained in paragraph 11 of the Complaint in so far as the allegations do not: (**1**) call for a legal conclusion; (**2**) imply and/or allege that any notes concerned were in default and/or did not convert into equity; (**3**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any allegation and/or fact raised on the motion briefings by CERTA DOSE, INC.; (**4**) imply that CERTA DOSE, INC. owes any money to the Plaintiffs; and/or (**5**)

conflict with the fact that EXHIBIT D to the Complaint is no longer a true and accurate copy of the most current Note(s), as the notes and their agreements were amended, as noted in the motion briefings that the Defendant has filed in this action (*which are incorporated herein by reference*). Otherwise, the allegations contained in paragraph 11 of the Complaint are denied.

12.      Defendant admits the allegations contained in paragraph 12 of the Complaint in so far as the allegations do not: (**1**) call for a legal conclusion; (**2**) imply and/or allege that any notes concerned were in default and/or did not convert into equity; (**3**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any allegation and/or fact raised on the motion briefings by CERTA DOSE, INC.; (**4**) imply that CERTA DOSE, INC. owes any money to the Plaintiffs; and/or (**5**) conflict with the fact that Section 2.1 of the notes was amended to provide for conversion, wherein the notes converted on November 15, 2020. Otherwise, the allegations contained in paragraph 12 of the Complaint are denied.

13.      Defendant admits the allegations contained in paragraph 13 of the Complaint in so far as the allegations do not: (**1**) call for a legal conclusion; (**2**) imply and/or allege that any notes concerned were in default and/or did not convert into equity; (**3**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any allegation and/or fact raised on the motion briefings by CERTA DOSE, INC.; (**4**) imply that CERTA DOSE, INC. owes any money to the Plaintiffs; and/or (**5**) conflict with the fact that Section 6.6 of the Agreements could be rightly amended given the fact that COPIC and the Plaintiffs breached their agreements to CERTA DOSE, INC. in the ways set forth in **EXHIBIT A**, *see, e.g.,* AFFIRMATIVE DEFENSES, ¶¶ 4-6, *infra*, and in the Motion briefings that the Defendant filed in this matter (*which are incorporated herein by reference*), particularly the AMENDED MOTION TO DISMISS, pp. 6-16 ¶¶ 1-12, thereof, and could no longer enforce the provisions of the agreements and/or contracts concerned. Otherwise, the allegations contained in paragraph 13 of the Complaint are denied.

14.      Defendant admits the allegations contained in paragraph 14 of the Complaint in so far as the allegations do not: (**1**) call for a legal conclusion; (**2**) imply and/or allege that any notes concerned were in default and/or did not convert into equity; (**3**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any allegation and/or fact raised on the motion briefings by CERTA DOSE, INC.; (**4**) imply that CERTA DOSE, INC. owes any money to the Plaintiffs. Otherwise, the allegations contained in paragraph 14 of the Complaint are denied.

15.      Defendant admits the allegations contained in paragraph 15 of the Complaint in so far as the allegations do not: (**1**) call for a legal conclusion; (**2**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any allegation and/or fact raised on the motion briefings by CERTA DOSE, INC.; and/or (**3**) conflict with the fact that the Agreements were rightly amended after the amendment referenced in paragraph 15 and that COPIC and the Plaintiffs could no longer be considered Required Holders given the fact that COPIC and the Plaintiffs breached their agreements to CERTA DOSE, INC. in the ways set forth in **EXHIBIT A**, *see, e.g.,* AFFIRMATIVE DEFENSES, ¶¶ 4-6,

*infra*, and in the Motion briefings that the Defendant filed in this matter (*which are incorporated herein by reference*), particularly the AMENDED MOTION TO DISMISS, pp. 6-16 ¶¶ 1-12, thereof, and could no longer enforce the provisions of the agreements and/or contracts concerned. Otherwise, the allegations contained in paragraph 15 of the Complaint are denied.

16.    Defendant denies the allegation of paragraph 16 of the Complaint, particularly as CERTA DOSE, INC. did indeed cause the notes to be converted, as noted in the preceding paragraph.

17.    Defendant admits that the Plaintiffs attempted to make a demand on the notes. Defendant specifically denies the allegations contained in paragraph 17 of the Complaint in so far as the allegations: (**1**) call for a legal conclusion; (**2**) imply and/or allege that any notes concerned were in default and/or did not convert into equity; (**3**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any allegation and/or fact raised on the motion briefings by CERTA DOSE, INC.; (**4**) imply that CERTA DOSE, INC. owes any money to the Plaintiffs; (**5**) conflict with the fact that the Plaintiffs were not Required Holders and could not make valid demands for the reasons referenced in this Answer; and/or (**6**) conflict with the fact that EXHIBITS E and F could not have legal effect given the circumstances concerned. Otherwise, the allegations contained in paragraph 17 of the Complaint are denied.

18.    Defendant admits that CERTA DOSE, INC. did not give Plaintiffs cash after they made what they refer to as demands. However, Defendant specifically denies the allegations contained in paragraph 18 of the Complaint in so far as the allegations: (**1**) call for a legal conclusion; (**2**) imply and/or allege that any notes concerned were in default and/or did not convert into equity; (**3**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any allegation and/or fact raised on the motion briefings by CERTA DOSE, INC.; (**4**) imply that CERTA DOSE, INC. owes any money to the Plaintiffs; (**5**) conflict with the fact that the Plaintiffs were not Required Holders and could not make valid demands for the reasons referenced in this Answer; and/or (**6**) conflict with the fact that EXHIBITS E and F could not have legal effect given the circumstances concerned. Otherwise, the allegations contained in paragraph 18 of the Complaint are denied.

19.    Defendant admits that Section 3.1 of the Notes contains language like that identified in EXHIBITS C and D of the Complaint. Defendant objects to the Plaintiffs' characterization of the language given that the best evidence of the language is an instrument itself. Furthermore, Defendant specifically denies the allegations contained in paragraph 19 of the Complaint in so far as the allegations: (**1**) call for a legal conclusion; (**2**) imply and/or allege that any notes concerned were in default and/or did not convert into equity; (**3**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any allegation and/or fact raised on the motion briefings by CERTA DOSE, INC.; and/or (**4**) imply that CERTA DOSE, INC. owes any money to the Plaintiffs. Otherwise, the allegations contained in paragraph 19 of the Complaint are denied.

5

20.     Defendant admits that Section 3 of the Notes contains language like that identified in EXHIBITS C and D of the Complaint. Defendant objects to the Plaintiffs' characterization of the language given that the best evidence of the language is an instrument itself. Furthermore, Defendant specifically denies the allegations contained in paragraph 20 of the Complaint in so far as the allegations: (**1**) call for a legal conclusion; (**2**) imply and/or allege that any notes concerned were in default and/or did not convert into equity; (**3**) conflict with any of the facts and/or allegations included and/or set forth in the affirmative defenses, *infra*, and/or the other denials of this Answer or any allegation and/or fact raised on the motion briefings by CERTA DOSE, INC.; and/or (**4**) imply that CERTA DOSE, INC. owes any money to the Plaintiffs. Otherwise, the allegations contained in paragraph 20 of the Complaint are denied.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract 2018 Notes)

21.     Defendant incorporates the foregoing responses by this reference.

22.     On the bases noted above, Defendant denies the allegations contained in paragraph 22 of the Complaint.

23.     On the bases noted above, Defendant denies the allegations contained in paragraph 23 of the Complaint.

24.     On the bases noted above, Defendant denies the allegations contained in paragraph 24 of the Complaint.

25.     On the bases noted above, Defendant denies the allegations contained in paragraph 25 of the Complaint.

26.     On the bases noted above, Defendant denies the allegations contained in paragraph 26 of the Complaint.

### SECOND CLAIM FOR RELIEF
### (Breach of Contract 2019 Notes)

27.     On the bases noted above, Defendant incorporates the foregoing responses by this reference.

28.     On the bases noted above, Defendant denies the allegations contained in paragraph 28 of the Complaint.

29.     On the bases noted above, Defendant denies the allegations contained in paragraph 29 of the Complaint.

30.     On the bases noted above, Defendant denies the allegations contained in paragraph 30 of the Complaint.

31.    On the bases noted above, Defendant denies the allegations contained in paragraph 31 of the Complaint.

32.    Defendant denies each allegation of the Complaint that is not expressly admitted.

## AFFIRMATIVE DEFENSES[2]

1.    **LACK OF PERSONAL JURISDICTION:** Plaintiffs' claims are barred because the Plaintiffs have failed to gain jurisdiction over the person of the Defendant, especially due to insufficiency of process and insufficiency of service of process, as the Plaintiffs did not effect proper delivery upon the Defendant by process server but, instead, had attorneys attempt service, who, as a matter of law, could not provide service. *See* EXHIBIT 1 of the MOTION TO DISMISS (*incorporated herein by reference*).  This is also noted in the Motion briefings that the Defendant filed in this matter (*which are incorporated herein by reference*), particularly the AMENDED MOTION TO DISMISS at 3 and the REPLY thereon at 4-6.

2.    Plaintiffs' claims are barred because the Plaintiffs have failed to state a claim for which relief may be granted, as detailed in the Motion briefings that the Defendant filed in this matter (*which are incorporated herein by reference*), particularly the AMENDED MOTION TO DISMISS at 4-16, especially page 6 thereof, and in the REPLY thereon at 6, as their allegations are conclusory, as the allegations that they would plead to not simply put forth conclusory allegations would reveal that they were not entitled to relief, and as they have also pled allegations that demonstrate that they have not met the preconditions for relief. *See also* ¶ 3, *infra*.

3.    Plaintiffs' claims are barred because the Plaintiffs have failed to join a party under C.R.C.P. 19, as detailed in the Motion briefings that the Defendant filed in this matter (*which are incorporated herein by reference*), particularly the AMENDED MOTION TO DISMISS at 4-6 and the REPLY thereon at 6. Those parties are identified in **EXHIBIT A**, *hereto*, in the caption, and also at ¶¶ 4, 6, 7, 14, 17,18, 19 thereof. *See also* ¶¶ 4-6, *infra* (identifying further why these parties are pertinent to the claims concerned).

4.    **FRAUD & AIDING AND ABETTING FRAUD, ESPECIALLY THROUGH A BREACH OF FIDUCIARY DUTIES:** Plaintiffs' claims are barred because the Plaintiffs used fraud to induce

---

[2] "Affirmative defenses are distinct from denials of the allegations of the complaint in that they constitute independent defenses to one or more claims of the complaint that would bar or limit liability even if the allegations of the complaint are taken as true." Robert Anderson, *Anderson on Colorado Civil Litigation Forms*, First Ed. § 2.8.4 (CLE in Colo., Inc., 2010) (citing C.R.C.P. 8(d)); *see also* C.R.C.P. 8(c). "Affirmative defenses may be stated in the alternative, may be stated hypothetically, and may be inconsistent with one another." *Id.* (citing C.R.C.P. 8(e)(2)). Affirmative defenses include "accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and **any other matter** constituting an **avoidance** or **affirmative defense**." C.R.C.P. 8(c) (emphasis added).

Defendant to enter the agreement(s) concerned and can therefore not enforce the agreements against the Defendant. This defense is raised through a presumption that the transaction was fraudulent,[3] particularly as Plaintiff STEPHEN R. HOFFENBERG, M.D.,[4] as well as JOHN BLOOD, STEVE RUBIN, COOLEY LLP,[5] MICHAEL L. PLATT, KELLY BARTLING and ADAM DINOW were fiduciaries of the Defendant who breached their fiduciary duties to the Defendant by failing to inform the Defendant of the plans that their associates, *i.e.*, the Plaintiffs in this action, had for the note agreements, as identified in ¶¶ 118-141 of **EXHIBIT A**.  Because the Plaintiffs all aided and abetted the STEPHEN R. HOFFENBERG, M.D, JOHN BLOOD, STEVE RUBIN, COOLEY LLP, MICHAEL L. PLATT, KELLY BARTLING and ADAM DINOW in their breach of fiduciary duties as set forth in ¶¶ 142-149 of **EXHIBIT A**,[6] as well as ¶¶ 162-164 and 174-183 of **EXHIBIT A**, especially as they knew of facts that consisted of a breach of fiduciary duties, and because they participated in that breach through knowledge, concealment and support, and as they further conspired in a plan that sought to take advantage of that breach.[7]

     a.     The allegations of this fraud are identified in **EXHIBIT A** at ¶¶ 159-161 and are also detailed in the Motion briefings that the Defendant filed in this matter (*which are incorporated herein by reference*), particularly the AMENDED MOTION TO DISMISS, pp. 6-16 ¶¶ 1-12, thereof. The background allegations of the fraud and breach of fiduciary duties, as well as the aiding and abetting thereof, are set forth in ¶¶ 25-117 of **EXHIBIT A**.

---

[3] As per the following authorities, fraud is a defense to contracts, transactions and notes. *Krueger v. Ary*, 205 P.3d 1150, 1154 (Colo. 2009) ("[I]f the party can show the grantee was a fiduciary to the grantor or had a confidential relationship with the grantor, either relationship raises the rebuttable presumptions that the grantee unduly influenced the grantor and that the transaction was unfair, unjust, and unreasonable."); *see also Zink v. Carlile*, 126 Colo. 208, 215–16, 248 P.2d 306, 310 (1952); *Lathrop v. Pollard*, 6 Colo. 424, 429–30 (1882); *Hilliard v. Shellabarger*, 120 Colo. 441, 447–48, 210 P.2d 441, 444 (1949), *overruled in part by Krueger v. Ary*, 205 P.3d 1150 (Colo. 2009); *Arnold v. Abernethy*, 134 Colo. 573, 577–78, 307 P.2d 1106, 1108 (1957), *overruled in part by Krueger v. Ary*, 205 P.3d 1150 (Colo. 2009); C.R.S. § 4-3-305(a)(1)-(2).

[4] *Kullgren v. Navy Gas & Supply Co.*, 110 Colo. 454, 461–62, 135 P.2d 1007, 1010–11 (1943) (directors are fiduciaries of a corporation and commit fraud in the circumstances alleged); *Whatley v. Wood*, 157 Colo. 552, 404 P.2d 537 (1965). "Where the board issues a Consent Solicitation Statement in contemplation of stockholder action, the board is obligated 'to disclose fully and fairly all material information within the board's control.'" *Malpiede v. Townson*, 780 A.2d 1075, 1086 (Del. 2001) (citations omitted); *cf.* **EXHIBIT A**, ¶ 144.

[5] *In re Shoe-Town, Inc. Stockholders Litig.*, No. C.A. 9483, 1990 WL 13475, at *7 (Del. Ch. Feb. 12, 1990) (attorneys are fiduciaries of a corporation).

[6] *Nelson v. Elway*, 971 P.2d 245, 250 (Colo. App. 1998); *Holmes v. Young*, 885 P.2d 305, 308–09 (Colo. App. 1994).

[7] *Laventhol, Krekstein, Horwath and Horwath v. Tuckman,* Del.Supr., 372 A.2d 168, 170–71 (Del. 1976) ("[P]ersons who knowingly join a fiduciary in an enterprise which constitutes a breach of his fiduciary duty of trust are jointly and severally liable for any injury which results.") (citing *Jackson v. Smith*, 254 U.S. 586, 41 S.Ct. 200, 65 L.Ed. 418 (1921)).

b.      Not only did the aforementioned fiduciaries fail to disclose that they and their associates, *i.e.*, the Plaintiffs in the present Action, intended and/or planned for JOHN BLOOD to waste the funds of the notes concerned in this action, under the supervision of STEVE RUBIN and STEPHEN R. HOFFENBERG, M.D, so as to establish the circumstances that would facilitate a hostile takeover in which all of the Plaintiffs planned to benefit themselves (as noted in the relevant paragraphs of **EXHIBIT A**, referenced, *supra*), but the Plaintiffs in this Action who were not fiduciaries of CERTA DOSE, INC. also withheld that material information in the transaction(s) concerned in the creation of the notes by withholding that information, thus breaching the duty of good faith and fair dealing.  As such, the Plaintiffs all took part in fraudulent concealment and, at the very least, the aiding and abetting of a breach of fiduciary duties, as the elements of fraudulent concealment,[8] are: (**1**) concealment of a material existing fact that in equity and good conscience should be disclosed;[9] (**2**) knowledge on the part of the party against whom the claim/defense is asserted that such a fact is being concealed; (**3**) ignorance of that fact on the part of the one from whom the fact is concealed; (**4**) the intention that the concealment be acted upon; and (**5**) action on the concealment that results in damages.  *See Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1361 (Colo.1993); *Morrison v. Goodspeed,* 100 Colo. 470, 477-97 (1937); *Ackmann,* 645 P.2d at 13-14.

c.      Because STEVE RUBIN and STEPHEN R. HOFFENBERG, M.D. were both agents of Plaintiff COPIC Insurance Company, and reported back to it on the status of the Defendants, while also overseeing JOHN BLOOD'S efforts within the Company, COPIC Insurance Company has yet another basis for liability, as the acts of an agent are attributable to the principal when the principal knows, should know, or has reason to know that the agent is doing the thing in question.[10]  (Its dealings and communications with the other Plaintiffs,

---

[8]  "We use the terms concealment and non-disclosure interchangeably." *Ackmann v. Merchants Mortgage & Trust Corp.*, 645 P.2d 7, 13 n. 2 (Colo.1982) (citing CJI 2d 19:5 and 19:6).

[9]  "The test, therefore, of **material inducement** is not whether the plaintiff's action would, but **whether it might**, have been different **if the misrepresentation had not been made**." *Ackmann,* 645 P.2d at 14 (citation omitted and emphasis added).

[10]  "In *Fitzgerald v. Edelen,* 623 P.2d 418 (Colo. App. 1980), Restatement (Second) of Agency § 217C (1958) was adopted in its entirety. That section provides, in part, that punitive damages can properly be awarded against a principal because of an agent's act if the principal authorized or approved the act. *See also Holland Furnace Co. v. Robson,* 157 Colo. 347, 402 P.2d 628 (1965). Here, because there was evidence to support the instruction based upon Restatement (Second) of Agency § 217C (1958), the exemplary damages issue was properly submitted to the jury." *Appel v. Sentry Life Ins. Co.*, 701 P.2d 634, 638 (Colo. App. 1985) *aff'd and remanded,* 739 P.2d 1380 (Colo. 1987); *Metro Commc'n Corp. BVI, v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 153–55 (Del.Ch.2004) (imputing fraud claims to corporation where it designated a manager of a limited liability company and where the manager made fraudulent statements); *In re Wayport, Inc. Litig.*, 76 A.3d 296, 324–25 (Del. Ch. 2013) (citing 3 William Meade Fletcher, *Fletcher Cyc. Corp.* § 790, at 16–20 (perm ed., rev. vol. 2011 & supp. 2013) ("[T]he general rule is well established that a corporation is charged with constructive knowledge ... of all material facts of which its officer or agent receives notice or acquires knowledge [of] while acting in the course of employment within the scope of his or her authority, even though the officer or agent does not in fact communicate the knowledge to the corporation.")).

therefore, serve as another significant nexus of the fraud and wrongdoing concerned.) It is also evident that STEVE RUBIN and STEPHEN R. HOFFENBERG, M.D. were acting as agents for the other Plaintiffs, particularly as they informed the CEO of CERTA DOSE, INC., numerous times, that reported back to the other COPIC-affiliated Defendants, and to the COPIC Board, and kept them informed of their efforts within Defendant. Similarly, it is evident that JOHN BLOOD was acting as an agent for the Intervenors-Additional Plaintiffs in this Action, keeping them appraised of the spend rate that he was managing within CERTA DOSE, INC. and positioning them for a hostile takeover, while also coordinating with STEVE RUBIN and STEPHEN R. HOFFENBERG, M.D. *See, e.g.,* **EXHIBIT A** at 15 n.3.

d.     In cases involving a scheme to defraud, the "particularity" concerned is aimed at the "who," "what," "when," "where," and "why" of the affirmative misrepresentation that a victim receives, not the machinations of the particular plan, scheme, or business practice that is involved, to which a party alleging such fraud would, of course, not be privy.[11]   Additionally, and with regard to fraud based on failures to disclose, where the affirmative misrepresentation cannot, of course, be identified, particularity is also established through different means. "Although Rule 9(b)'s requirement of particularity in pleadings applies to claims of fraudulent omission, that standard is modified somewhat. *S.E.C. v. Nacchio*, 438 F.Supp.2d 1266, 1277 (D.Colo.2006). For claims premised on omissions, the Plaintiffs must sufficiently identify 'the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed.'" *Martinez et al. v. Nash Finch Company*, 886 F.Supp.2d 1212, 1216 (D.Colo. 2012) (quoting *S.E.C. v. Nacchio*, 438 F.Supp.2d 1266, 1277 (D.Colo. 2006)); *see also Gonzalez v. Pepsico, Inc.*, 489 F.Supp.2d 1233, 1247-48 (D.Kans. 2007) ("Specifically, the complaint clearly alleges the time frame in which defendants' conduct occurred (*i.e.* defendants learned of the potential presence of benzene in their beverage products in 1990 and continued to market those products); the place of the alleged fraudulent conduct (*i.e.* defendants introduced their products into the national stream of commerce, including Kansas); and the substance of the alleged fraudulent conduct (*i.e.* defendants willfully failed to disclose to consumers the potential presence of benzene in their products). Moreover, the complaint sets forth the identities of the defendants (*i.e.* Pepsi, Sunny Delight, Rockstar and Coke Enterprises), and plaintiffs' injuries (*i.e.* economic loss caused by defendants' failure to notify consumers of the potential presence of benzene in their products).").

5.     **FAILURE TO PERFORM, ANTICIPATORY REPUDIATION & ANTICIPATORY BREACH:** Plaintiffs' claims are barred because the Plaintiffs have failed to perform,[12] as they breached and anticipatorily breached the terms of the agreement(s) concerned in this Action,

---

[11] *See Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir. 1997).

[12] Failure to perform is an affirmative defense to contracts. *See Linden v. Black*, 6 Colo. App. 174, 177, 40 P. 241, 242 (1895); *see also Med. Arts Bldg. v. Ervin*, 127 Colo. 458, 257 P.2d 969 (1953); *see also* footnote 13, *infra* (anticipatory repudiation is breach of an agreement preventing enforcement of the agreement's provisions).

particularly the covenant of good faith and fair dealing, as referenced in **EXHIBIT A** at ¶¶ 150-161 and as also detailed in the Motion briefings that the Defendant filed in this matter (*which are incorporated herein by reference*), particularly the AMENDED MOTION TO DISMISS, pp. 6-16 ¶¶ 1-12, thereof, and the REPLY thereon.

      a.     In this, it had come to Defendant's attention that the Plaintiffs had almost certainly breached the covenant of good faith and fair dealing by evidently taking part in a hostile takeover attempt that involved aiding and abetting breaches of fiduciary duties by JOHN BLOOD, STEVE RUBIN and STEPHEN R. HOFFENBERG, M.D., while coordinating with those same fiduciaries to take part in a hostile takeover that sought to take advantage of the breaches of fiduciary duties concerned in the ways noted in ¶ 4, *supra*. As such, Defendant CERTA DOSE, INC. asked Plaintiffs for further assurances, in accord with: (**i**) the common law;[13] (**ii**) the UCC[14]; and (**iii**) specific provisions of the note agreements concerned (*see, e.g.,* § 5.5 of Plaintiffs' EXHIBIT A to their Complaint). *See, e.g.,* EXHIBIT 2 (Parts One – Seven) of CERTA DOSE, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF COPIC INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (examples of Defendant's requests for further assurances). The Plaintiffs failed to provide either further assurances or the requested documents,[15] thus: (**1**) repudiating the agreements concerned in this agreement, particularly as to the covenant of good faith and fair dealing; (**2**) breaching the express terms of the note agreement(s) that are the subject of this action (*see, e.g.,* § 5.5 of Plaintiffs' EXHIBIT A to their Complaint), which the Plaintiffs have judicially admitted to pertain to the covenant of good faith and fair dealing; and (**3**) providing admissions by silence that they had breached the covenant of good faith and fair dealing. *See* **EXHIBIT A** at ¶¶ 112, 144(a), and 156; *People v. Pappadiakis*, 705 P.2d 983 (Colo. App. 1985), *aff'd Peltz v. People*, 728 P.2d 1271 (Colo. 1986) (defendant's actions and silence in response to accusation by her boyfriend of complicity in a burglary and theft qualified as adoptive admission); C.R.E. 801(d)(2)(B).

      6.     **CONTRIBUTORY NEGLIGENCE,**[16] **ASSUMPTION OF RISK, AND LACHES:** Plaintiffs' claims are barred and/or limited by contributory negligence because the Plaintiffs have contributed,

---

[13] *Colorado Nat. Bank of Denver v. Bd. of Cty. Comm'rs of Routt Cty.*, 634 P.2d 32, 41 (Colo. 1981); *Highlands Ranch Univ. Park, LLC v. Uno of Highlands Ranch, Inc.*, 129 P.3d 1020, 1024 (Colo. App. 2005).

[14] C.R.S. §§ 4-2-609, 4-2-610, 4-2-703, 4-2-711; C.R.S. § 4-1-102; C.R.S. § 4-3-305(a)(1)-(2); Colo. Rev. Stat. Ann. § 4-8-103, UNIFORM COMMERCIAL CODE COMMENT 5 (West).

[15] *See* EXHIBIT 2 (Parts One – Seven) of CERTA DOSE, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF COPIC INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (setting forth the information that was requested of the Plaintiffs as part of the requests for further assurances).

[16] Contributory Negligence is an affirmative defense. C.R.C.P. 8(c). Negligence "consists of doing something, which, under the circumstances, should not have been done, or in omitting to do that which should have been done." *Maercklein v. Smith*, 129 Colo. 72, 81, 266 P.2d 1095, 1098 (1954). The initial question with regard to negligence is whether the party concerned owed a duty to protect another against injury. *HealthONE v. Rodriguez*, 50 P.3d 879 (Colo. 2002). "Where a person should reasonably foresee that

through a breach of a duty they owed, to their own harm, as well as by aiding and abetting the waste of the funds concerned, evidently waiting for the funds concerned to be wasted to the detriment and prejudice of the Defendant,[17] as referenced in **EXHIBIT A** at ¶¶ 162-164, and as also detailed in the Motion briefings that the Defendant filed in this matter (*which are incorporated herein by reference*), particularly the AMENDED MOTION TO DISMISS, pp. 6-16 ¶¶ 1-12, thereof.  As also noted in ¶ 9, *infra*, the Plaintiffs combined together in purposes that are against public policy, thus constituting civil conspiracy, another violation of their duty to not take actions that would foreseeably harm Defendant and cause it damage, assuming the risk for their actions. *See also, e.g.*, § 4.3 of Plaintiffs' EXHIBIT A to their Complaint.

7.    Plaintiffs' claims are barred because the Notes have been paid and/or satisfied by their conversion, following their amendment, as detailed in the Motion briefings that the Defendant filed in this matter (*which are incorporated herein by reference*), particularly the AMENDED MOTION TO DISMISS, pp. 6-16 ¶¶ 1-12, thereof; *see also, e.g.*, EXHIBITS 3-4 of CERTA DOSE, INC.'S RESPONSE IN OPPOSITION TO THE INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT.

8.    For the above stated reasons, Plaintiffs' claims are barred by estoppel, as the Plaintiffs claims conflict with the actions that they took and/or the positions they took as to the waste of the note-related funds by JOHN BLOOD, as overseen by STEVE RUBIN and STEPHEN R. HOFFENBERG, M.D. *See* ¶¶ 4-6, *supra*; *Blackwell v. Midland Fed. Sav. & Loan Assoc.*,

---

his act, or failure to act, will involve an unreasonable risk of harm to another, there is a duty to avoid such harm." *Davenport v. Community Corrections*, 962 P.2d 963, 967 (Colo. 1998); *Leake v. Cain*, 720 P.2d 152 (Colo. 1986), *superseded on other grounds, as stated in Harris v. Commerce City*, 2010 U.S. Dist LEXIS 85538 (D. Colo. Aug. 18, 2010); *see also In re Rural Metro Corp.*, 88 A.3d 54, 98 (Del. Ch.), *decision clarified on denial of reargument sub nom. In re Rural Metro Corp. Stockholders Litig.* (Del. Ch. 2014) ("If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act. This is true both when the act done is an intended trespass ... and when it is merely a negligent act.... The rule applies whether or not the other knows his act is tortious." (citing Restatement (Second) of Torts § 876 (1979)).  "What constitutes reasonable care is a question for the jury except where the facts are undisputed and reasonable minds could draw but one inference from them." *Connelly v. Redman Dev. Corp.*, 533 P.2d 53, 55 (Colo. App. 1975) (citations omitted).

[17] "Laches is an equitable doctrine that may be asserted to deny relief to a party whose unconscionable delay in enforcing his rights has prejudiced the party against whom relief is sought." *Johnson & Johnson*, 2016 CO 67, ¶ 16, 380 P.3d 150, 154 (citation omitted). "A laches defense comprises three elements: (1) full knowledge of the facts by the party against whom the defense is asserted, (2) unreasonable delay by the party against whom the defense is asserted in pursuing an available remedy, and (3) intervening reliance by and prejudice to the party asserting the defense." *Id.* (citation omitted). As such, by delaying, in concert with COPIC Insurance Company, in asserting any rights as to the note agreements, while they knew that the funds were being wasted by JOHN BLOOD under the watchful eye of STEVE RUBIN and STEPHEN R. HOFFENBERG, M.D., the Plaintiffs took advantage of CERTA DOSE, INC. reliance upon those fiduciaries in a way that was unreasonable for the Plaintiffs to behave, particularly when judged by fairness and equity.

132 Colo. 45, 284 P.2d 1060 (1955) (estoppel is a defense); *People ex rel. S.N-V.*, 300 P.3d 911, 913 (Colo. App. 2011) ("Estoppel doctrines generally bar a party from asserting a claim or right that contradicts what that party has said or done before or what has been legally established as true." (citing Brian A. Garner, *Black's Law Dictionary* 624 (9th ed. 2009)); *Chamberlain v. Poe*, 127 Colo. 215, 224, 256 P.2d 229, 233 (1953).

9.      Plaintiffs' claims are barred by public policy and/or illegality, particularly as the Plaintiffs actual intent and purpose in the agreements concerned was not only achieved through fraud, bad faith and the breach of fiduciary duties, as noted in ¶¶ 4-6 of these AFFIRMATIVE DEFENSES, *supra*, but was also motivated by a plan to take part in a hostile takeover of a Delaware corporation. *See* **EXHIBIT A (Answer)** at ¶¶ 174-183; *see also Sample v. Morgan*, 914 A.2d 647, 673 n. 81 (Del. Ch. 2007) ("As explained in the Restatement (Second) of Contracts, a 'promise by a fiduciary to violate his fiduciary duty or a promise that tends to induce such a violation is unenforceable on grounds of public policy.'" (quoting Restatement (Second) of Contracts § 193 (1981)); *Kahn v. Kolberg Kravis Roberts & Co., L.P.*, 23 A.3d 831, 837–38 (Del. 2011).

10.     Defendant asserts once again all of the defenses put forth in the motion briefings in this matter as if set forth again herein, which defenses serve to bar the Plaintiffs' claims.

WHEREFORE, Defendant CERTA DOSE, INC. requests that the Court enter judgment in favor of Defendant and against Plaintiffs on each of Plaintiffs' claims, that it award Defendant its costs and expenses, including reasonable attorney fees, and grant such other relief to Defendant as is just and proper under the circumstances or in equity.

### JURY DEMAND

DEFENDANT DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.[18]

DATED: January 5, 2021.

---

[18] Although Plaintiffs have aserted that there is a waiver of Defendant's right to a jury, a jury waiver is not enforceable if it "is unreasonable, fraudulently induced, or against public policy." *Nickerson v. Network Sols., LLC*, 2014 CO 79, ¶ 12, 339 P.3d 526, 530; *McMillion v. McMillion*, 522 P.2d 125, 129 (Colo. App. 1974); *Colorado Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 27 (Colo. App. 2010), *as modified on denial of reh'g* (Apr. 1, 2010) (citing *Adams Reload Co. v. Int'l Profit Associates, Inc.*, 143 P.3d 1056, 1060 (Colo. App. 2005)) (jury waivers are forum selection clauses, they are governed by forum selection clause law, and they are not enforceable when unfair or unreasonable); *cf.* PLAINTIFFS' MOTION TO STRIKE JURY DEMAND at 2. **As noted in ¶ 4 and footnote 3, *supra*, Defendant has raised an evidentiary presumption of unfairness and fraud that has not been met by the Plaintiffs.**

Respectfully submitted,

_/s/ Josue David Hernandez_
JOSUE D. HERNANDEZ
P.O. Box 838
Denver, CO  80201
_Telephone:_  (720) 312-9553
_Facsimile:_  (303) 200-7801
jhernandez@DenverContractLaw.com
CO BAR No. 44509

ATTORNEY FOR THE DEFENDANT

Defendant's Address:

Certa Dose, Inc.
101 Avenue of the Americas,
3rd Floor
NY, NY 10013


## CERTIFICATE OF SERVICE

On January 5, 2021, a true and accurate copy of the foregoing was served via the electronic filing system of the Colorado Judiciary, providing electronic service of process to all parties in this action.

_/s/ Josue D. Hernandez_
JOSUE DAVID HERNANDEZ

_Attorney for the Defendant_

# EXHIBIT E

**CONFIDENTIAL SETTLEMENT COMMUNICATION**
**PROTECTED BY CRE 408**

# SETTLEMENT TERM SHEET

COPIC Insurance Company ("COPIC") proposes the following terms to be included in a mutually-agreeable written Confidential Settlement Agreement and General Release ("Settlement Agreement") between COPIC, Certa Dose, Inc. ("Certa Dose") and Dr. Caleb Hernandez (collectively, "Parties" and each a "Party").

1. COPIC will pay Certa Dose $500,000 in full and final settlement of all disputes between and among the Parties.

2. COPIC's existing convertible promissory notes issued by Certa Dose in 2017, 2018 and 2019 in the total principal amount of $ 2,231,000 (the "Notes") will be converted, with accrued interest, to fully-paid and non-assessable preferred stock interests in Certa Dose issued in accordance with Delaware law and the following terms and conditions:
   a. $25 million Certa Dose valuation.
   b. Identical terms as preferred stock issued by Certa Dose to those holders of 2017 promissory notes that Certa Dose has asserted have had their promissory note interests converted to preferred stock ("2017 Preferred Group" or "2017 Preferred Stock").
      i. Subject to review of terms of 2017 Preferred Stock, preferred stock to be issued to COPIC will include customary protective provisions (e.g., drag-along rights); to the extent these provisions are not currently included in the 2017 Preferred Stock, same provisions will be offered to 2017 Preferred Group.
   c. Existing agreements between COPIC, Certa Dose and others (including Voting Rights Agreement, Investor Rights Agreement, Note Purchase Agreements, Notes, Indemnification Agreements with Dr. Hoffenberg and Mr. Rubin, Stock Purchase Agreements and Co-Sale Agreement) will be terminated.

3. COPIC's existing stock interests in Certa Dose (common and preferred) will continue in full force and effect.

4. Certa Dose will offer to convert all convertible promissory notes issued by Certa Dose in 2018 and 2019 to the following individuals: Stephen R. Hoffenberg, M.D., Alan Young Synn, M.D., Davis K. Hurley, M.D., Brian C. Harrington, M.D., Niles Cole, Geraldine A. Lewis-Jenkins, Matthew Fleishman, M.D., and Theodore J. Clarke, M.D. (collectively, "COPIC Affiliated Investors").
   a. The conversion offer to the COPIC Affiliated Investors shall be on the same terms as outlined for the conversion of COPIC's note interests outlined in Item No. 2, above.

CONFIDENTIAL SETTLEMENT COMMUNICATION
PROTECTED BY CRE 408

September 14, 2020
Page 2

     b.   No additional payment shall be made to Certa Dose to effect the exchange of the note interests of the COPIC Affiliated Investors.

5.   The Settlement Agreement will contain the following provisions:

     a.   Dismissal of all claims relating to COPIC, the COPIC Affiliated Investors, Steven Rubin, and Mark A. Fogg in both pending suits, with prejudice, each party to be responsible for their own fees and costs.

     b.   Full and complete mutual releases of the Parties, as well as their related parties (including, without limitation, the Board members, officers, and employees, whether former or current, of Certa Dose and COPIC (Steven Rubin and Mark A. Fogg), and COPIC Affiliated Investors,), of all claims, known or unknown, arising before the effective date of the Settlement Agreement.

     c.   Customary warranties and representations by the Parties relating to issuance of preferred shares.

     d.   Agreement on a process for preparation of necessary corporate documents to effect the terms of the conversion in compliance with Delaware law utilizing an independent attorney for Certa Dose mutually satisfactory to the Parties.

     e.   Agreement on a process to provide 2017 Preferred Group with full transparency into the settlement outlined in this Term Sheet, and to secure consents by the 2017 Preferred Group to the transactions set forth in this Term Sheet.

     f.   Customary provisions providing for confidentiality and non-disparagement.

     g.   Customary provisions re: no admission of liability

     h.   Alternative dispute resolution provisions to provide for arbitration in Denver, Colorado of any disputes arising in any way from the Settlement Agreement.

     i.   Customary provisions providing for corporate authority, merger, no tax advice, and the like.

6.   Upon agreement in principle to the settlement outlined in this term sheet, Certa Dose and COPIC will enter into a mutually-acceptable form of non-disclosure agreement ("NDI") pursuant to which Certa Dose will provide the following to COPIC: corporate minute book, stock ledger, all corporate resolutions and related documents executed since June 30, 2019.

     a.   Parties to cooperate as outlined in Item No. 5(d), above, to confirm and/or revise corporate documents to be fully compliant with Delaware law.

7.   Parties to negotiate and execute Settlement Agreement within 5 days after acceptance of the terms of this Term Sheet, with corporate transactions contemplated to be completed as soon as practicable following execution of Settlement Agreement, not to exceed 30 days.

EFiled: May 06 2021 04:30PM EDT
Transaction ID 66579115
Case No. 2021-0148-JRS

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| COPIC INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CALEB HERNANDEZ, | ) |
| | ) C.A. No. 2021-0148-JRS |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| CERTA DOSE, INC., | ) |
| | ) |
| Nominal Defendant. | ) |

## <u>CERTIFICATE OF SERVICE</u>

I, Gary W. Lipkin, hereby certify that on May 6, 2021, the foregoing *Answering Brief of Defendant Caleb Hernandez in Opposition to Plaintiff's Motion for Partial Summary Judgement* was caused to be electronically served via File & ServeXpress upon the following counsel of record:

<table>
<tr>
<td>

Philip A. Rovner, Esq.
Jonathan A. Choa, Esq.
POTTER ANDERSON & CORROON LLP
P.O. Box 951
Hercules Plaza
Wilmington, DE 19899
*Counsel for Plaintiff*

</td>
<td>

Aaron E. Moore, Esq.
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
1007 N. Orange Street, Suite 600
P.O. Box 8888
Wilmington, DE 19899-8888

</td>
</tr>
</table>

*/s/ Gary W. Lipkin*
Gary W. Lipkin, Esq. (Bar No. 4044)

EFiled:  May 06 2021 04:30PM EDT
Transaction ID 66579115
Case No. 2021-0148-JRS

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| COPIC INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CALEB HERNANDEZ, | ) |
| | )    C.A. No. 2021-0148-JRS |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| CERTA DOSE, INC., | ) |
| | ) |
| Nominal Defendant. | ) |

## [PROPOSED] ORDER DENYING PLAINTIFF'S
## <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

AND NOW, this _____ day of _____, 2021, upon consideration of Plaintiff's Motion for Partial Summary Judgement (the "Motion"), and any response thereto, IT IS HEREBY ORDERED that the Motion is DENIED.


_____
The Honorable Joseph R. Slights, III