ORTIZ & ORTIZ, L.L.P.
287 Park Avenue South, Suite 213
New York, New York 10010
Tel. (718) 522-1117
email@ortizandortiz.com
*Norma E. Ortiz, Esq.*
Attorneys for the Debtor

Hearing Date:  October 20, 2021
Time:  10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re

CERTA DOSE, INC.,

Case No.: 21-11045-LGB

Chapter 11

                    Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF HEARING ON DEBTORS' APPLICATION FOR AN ORDER
AUTHORIZING THE EMPLOYMENT AND RETENTION OF HUEBSCHER & CO.
EFFECTIVE NUNC PRO TUNC TO SEPTEMBER 12, 2021,
AS FINANCIAL ADVISOR**

    **PLEASE TAKE NOTICE**, that a **TELEPHONIC** hearing to consider the annexed
Application dated September 26, 2021 (the "Application") of Certa Dose, Inc. (the Debtor), the
undersigned will move before the Honorable Lisa G. Beckerman, U.S. Bankruptcy Judge,
**October 20, 2021, at 10:00 a.m.**, in the United States Bankruptcy Court, Southern District of
New York, One Bowling Green, New York, New York 10004, or as soon thereafter as counsel
may be heard, for the entry of an order permitting the Debtor to retain Huebscher & Co. as the
Debtor's Financial Advisor.  The Debtor may request such other and further relief as is just and
equitable.  If you intend to participate in the telephonic hearing, you must register online with
Court Solutions at www.court-solutions.com at least one business day before the scheduled
hearing.  Instructions for appearing at the hearing can be found at
https://www.nysb.uscourts.gov/content/judge-lisa-g-beckerman.

    **PLEASE TAKE FURTHER NOTICE**, that you need not appear at the aforesaid
hearing if you do not object to the Application.

    **PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief requested in
the Application must be made in writing and must be filed with the Clerk of the Bankruptcy
Court electronically at www.nysb.uscourts.gov. If you do not have the ability to file an objection
electronically, the objection may be filed with the Clerk of the Court by presenting the Clerk with
a copy of the objection saved in .pdf format. A copy of the objection must be provided to (a) the

Chambers of the Honorable Lisa G. Beckerman, (b) Ortiz & Ortiz, LLP, at the address listed below, and (c) to Paul Schwartzberg, Esq., Office of the U.S. Trustee, by email to all parties filing Notices of Appearance, so as to be received no later than seven (7) days prior to the hearing. The objection must comply with the Bankruptcy Rules and the Local Bankruptcy Rules of the court and must state with particularity the legal and factual bases for such objection.

Dated: September 26, 2021
New York, New York

/s/Norma E. Ortiz
Norma E. Ortiz, Esq.
Ortiz & Ortiz, .L.P.
287 Park Avenue South, Suite 213
New York, New York 10010
Tel. (718) 522-1117
Fax (718) 596-1302
Email@ortizandortiz.com
Attorneys for the Debtor

ORTIZ & ORTIZ, L.L.P.
287 Park Avenue South, Suite 213
New York, New York 10010
Tel. (718) 522-1117
Fax (718) 596-1302
email@ortizandortiz.com
*Norma E. Ortiz, Esq.*
Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re

CERTA DOSE, INC.,                                          Case No.: 21-11045-LGB

                                                           Chapter 11

        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF HUEBSCHER & CO.,  EFFECTIVE *NUNC PRO TUNC* TO SEPTEMBER 12, 2021, AS THE DEBTOR'S FINANCIAL ADVISOR**

TO THE HONORABLE LISA G. BECKERMAN,
UNITED STATES BANKRUPTCY JUDGE:

        Certa Dose, Inc. (the "Debtor"), by its attorneys Ortiz & Ortiz, L.L.P. ("O & O"), hereby

submits this application (the "Application") for the entry of an order authorizing the Debtor to

employ Huebscher & Co. ("H & C") as of September 12, 2021, to serve as the Debtor's

Financial Advisor.  In further support of this Application, the Debtor states as follows:

**BACKGROUND**

        1.        On May 30, 2021 (the "Petition Date"), the Debtor filed a petition for relief under

Chapter 11. The Debtor has operated as a debtor-in-possession pursuant to 11 U.S.C § 1107

since the Petition Date.  No unsecured creditors committee has been appointed in this case.

        2.        The principal business of the Debtor is developing, selling and licensing its

pharmaceutical products and technology.  The Debtor commenced this proceeding to affect a

balance sheet reorganization stemming from disputes with a number of shareholders and

creditors.  The Debtor has a small number of employees and has not sought the retention of an

accounting or financial firm since the Petition Date.  The Debtor is in need of financial

assistance and advisory services so that it may timely file Monthly Operating Reports, as

required by the Guidelines of the Office of the U.S. Trustee, restructure its business, and

prosecute a plan of reorganization.

3.      The Debtor entered into an Advisory Agreement (the "Agreement") with H & C,

a middle market business restructuring firm, which maintains its offices at 630 3rd Avenue, 21st

Floor, New York, NY 10017, on September 12, 2021.  A copy of the agreement is annexed as

Exhibit A.  The Debtor's controller resigned in August and the Debtor fell behind on its

obligation to file Monthly Operating Reports.  H & C agreed to immediately assist the Debtor

and commenced rendering services at the Debtor's request on September 12, 2021.  H & C

assisted the Debtor in completing and filing its July 2021 monthly operating report.

4.      As set forth in the Agreement, H & C has agreed to provide the Debtor with the

following services:  Engage in credit facility negotiations, including waiver, amendments,

extensions and potential debtor-in- possession financing efforts; assist the company in evaluating

indications of interest and proposals regarding any transaction from potential acquirors and or

investors; manage the preparation of reporting related to the restructuring process; analyze the

business and financial impact of various restructuring initiatives; provide the company other

appropriate general restructuring advice; assist and provide guidance with the preparation of

monthly operating reports; and provide strategic financial advice regarding legal strategies.

5.      In exchange for those services, H & C has agreed to commence rendering services

to the Debtor, by billing on a fixed hourly rate, without an advance payment of fees.  Moreover,

2

the hourly rates agreed to by the Debtor and H & C are at or below the rates customarily billed in

this District and are indisputably reasonable for a case of this size and complexity. As set forth

in the Agreement, Mr. Huebscher's rates do not exceed $425 an hour; the rates billed for

Managing Directors of the firm do not exceed $375 an hour; the rates billed for Senior

Consultants and Directors do not exceed $325 an hour; and the rates for all other professional

staff is $150 an hour. H & C does not seek any other compensation, such as a success fee or a

restructuring fee. The Agreement contains standard indemnification and hold harmless

provisions that were fully negotiated by the Debtor and H & C at arm's-length and in good faith.

These provisions are reasonable and appropriate and are customarily employed in financial

advisory engagements in chapter 11 cases. The Debtor submits that the terms of the Agreement

are fair and reasonable under the circumstances of this case.

6.      H & C is eminently qualified to assist the Debtor with its financial and

restructuring needs. Eric M. Huebscher, the president of H & C, has over 30 years of accounting

and restructuring experience and has extensive experience in the health care industry. As set

forth in greater detail in the Declaration of Disinterestedness annexed as Exhibit B, Mr.

Huebscher has helped many companies in distress in both an advisory and a managerial capacity

and as a court-appointed restructuring professional. As a result, H & C has the expertise and

willingness to provide the Debtor with the services that are needed. Mr. Huebscher serves on the

panel of Sub-Chapter V Trustees for the Southern and Eastern Districts of New York and

regularly oversees the reorganization of a wide range of Chapter 11 debtors. Mr. Huebscher's

extensive health care industry experience and restructuring expertise will be very valuable to the

Debtor's reorganization.

7.      As set forth in Mr. Huebscher's Declaration, H & C does not hold or represent an

interest adverse to the Debtor's estate in the matters upon which H & C is to be employed and is "disinterested" as that term is defined in the Bankruptcy Code.  H & C had no prior contact with the Debtor or Dr. Caleb S. Hernandez until the firm discussed its engagement with the Debtor on or about September 10, 2021.  H & C reviewed the List of Parties-in-Interest prepared by the Debtor and the Amended List of Equity Security Holders filed with the court [Ecf. No. 74] before conducting an internal conflict of interests search and determined that it has no relationship or connection with the parties in this case.

## JURISDICTION

8.    The United States Bankruptcy Court for the Southern District of New York has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested are 11 U.S.C. §§ 327(a) and 328(a), Fed. R. Bankr. P. 2014(a), and Local Rules 2014-1 and 2016-1.

## RELIEF REQUESTED

9.    The Debtor requests that the Court approve its retention of H & C as its financial advisor pursuant to 11 U.S.C. §§327(a) and 328(a) to provide the much needed services set forth herein and in the Agreement.  Section 328(a) provides in relevant part that a debtor in possession, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Section 327(a) authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a).  H & C has the professional

4

qualifications to serve in this capacity and meets the disinterestedness requirements of Section 327. Moreover, the proposed terms of H & C's engagement are eminently reasonable and should be approved by the Court. The Debtor is in need of H & C's services and advice to promptly proceed with its reorganization. H & C has agreed to apply to the Court for the allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules and orders of the Court. For these reasons, the Debtor's request should be granted.

10.     No previous application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests the entry of an order substantially in the form of the prefixed order granting the relief requested herein and such other and further relief as is just.

Dated: September 26, 2021
      New York, New York

           */s/Norma E. Ortiz*
           Norma E. Ortiz, Esq.
           Ortiz & Ortiz, L.L.P.
           287 Park Avenue South, Ste. 213
           New York, New York 10010
           Tel. (718) 522-1117
           *Debtor's Counsel*

# Exhibit A

**Advisory Agreement**

## ADVISORY AGREEMENT

This Advisory Agreement (the "Agreement") made this 12th day of September, 2021, by and between Certa Dose Inc. (a Delaware corporation) (hereinafter referred to as the "Client"), with its principal place of business at 101 Avenue of the Americas, 3rd Floor, NY, NY 10013 ("Facility") and Huebscher & Co. with offices at 630 3rd Avenue – 21th Floor, New York, NY 10017 ("Advisor").

> **WHEREAS**, Client desires to retain the services of Advisor as set forth herein in accordance with the terms and conditions of this Agreement; and

> **WHEREAS**, Advisor desires to provide the services to Client as set forth herein, in accordance with the terms and conditions of this Agreement;

> **NOW THEREFORE**, in consideration of the mutual promises set forth herein, and intending to be legally bound, Client and Advisor hereby agree as follows:

## I.   ADVISORY SERVICES TO BE RENDERED ON A REASONABLE EFFORTS BASIS

Scope of work; working in conjunction with management team:

1. Engage in credit facility negotiations, including waiver, amendments, extensions and potential debtor-in-possession financing efforts
2. Assist the company in evaluating indications of interest and proposals regarding any transaction from potential acquirors and/or investors
3. Manage the preparation of reporting related to the restructuring process; analyze the business and financial impact of various restructuring initiatives
4. Provide the Company other appropriate general restructuring advice
5. Assist and provide guidance with the preparation of monthly operating reports
6. Provide strategic financial advice regarding legal strategies
7. Other as directed by client

B. Advisor and its personnel do not hold themselves out as having the licenses of, nor do Advisor and its personnel perform the services of, attorneys, accountants, brokers or other service providers requiring a license.

C. Unless otherwise specified in writing by Advisor, Advisor does not promise any particular results or outcomes in connection with services provided hereunder.

## II.  REPORTING RESPONSIBILITY

A. Advisor will report to Caleb S. Hernandez or such other person or persons designated by Client.

## III.  REGULATORY COMPLIANCE

A. All regulatory compliance decisions concerning Client's business are the responsibility of Client; and, without limitation, Advisor shall have no duty, no responsibility, and no authority with respect to regulatory compliance duties, including, without limitation: (1) the management, handling, transport, disposal or remediation of hazardous wastes or hazardous substances; (2) compliance with applicable federal, state or local statutes, ordinances, regulations, orders and requirements of common law in any way affecting or pertaining to health, safety or the environment; and (3) filings with federal and state securities authorities and federal, state and local taxing authorities.

## IV.  TERM OF AGREEMENT

A. This Agreement will be for a term of 12 months, commencing at the beginning of business on September 12, 2021 and ending on August 31, 2022 ("Ending Date"). In the event written notice of termination of this Agreement is not provided by either party to the other within 15 days of any Ending Date, the Ending Date shall be deemed extended by one month.

B. Notwithstanding the foregoing Section IV(A), this Agreement shall terminate immediately upon written notice by either party to the other as provided herein.

C. Sections VI, X and XI shall survive termination hereof.

## V.  PLACE OF WORK

A. Advisor's services shall be performed at the offices of the Advisor or such other place of work designated by the Client. To the extent possible and reasonable under the circumstances, Advisor will limit the work at the Client's Office, so as to minimize travel related expenses.

## VI.  FEES TO ADVISOR

A. Fees and expenses
Client agrees to pay fees for services rendered by personnel of Advisor for work performed on an hourly basis in accordance with the fee schedule shown below. Any change in scope and fee will be mutually agreed to between Advisor and Client in a signed writing.  Client agrees to reimburse Advisor for reasonable expenses incurred by Advisor by reason of this Agreement, including, without limitation, for air travel, hotel, rental care, taxi and phone, fax and courier.  The hourly rates are as follows.

|  | Hourly |
|---|---|
| President | $425 |
| Managing Directors | $350 to $375 |
| Senior Consultants & Directors | $250to $325 |
| Other professional staff | $150 |

2

C. Billing and Payment
Client understands that Advisor will bill for services rendered under this agreement in accordance with relevant United States Bankruptcy law. The payment of any services under this agreement by Client to Advisor will be subject to the review of the Client, the Office of the United States Trustee and other relevant stakeholders. Payment by Client to Advisor must occur only by an order of the court.

## VII. STATUS OF ADVISOR

A. Advisor and all personnel of Advisor shall perform all services hereunder as independent contractors and not as employees of Client, and neither Advisor nor its personnel shall receive any remuneration from Client, including participation in disability, retirement, pension, profit sharing or other benefit or deferred compensation plans of Client, other than as set forth herein. The name of Advisor its personnel shall not be set forth in any document of Client, or otherwise used by Client, unless Advisor shall have previously consented thereto in writing.

## VIII. INFORMATION AND CONFIDENTIALITY

A. Information
Client agrees to provide Advisor access to all financial and other information and records and to Client's directors, officers, employees, representatives, creditors and other stakeholders as Advisor reasonably deems appropriate.

B. Confidentiality
All information concerning Client's business, whether or not in writing, of a private, secret or confidential nature concerning Client, is and shall remain the exclusive property of Client, and no such information shall be divulged by Advisor to third parties, other than in the reasonable course of the performance of services to be rendered hereunder, unless information becomes public knowledge or is required by law or order of a court.

C. Representations
Client is unaware of any material misrepresentation or misstatement with respect to information provided or to be provided to Advisor, and will immediately notify Advisor in writing if at any time Client discovers that there has been such material misrepresentation.

## IX. ENGAGEMENT OF OTHERS

A. If Client requests in writing that Advisor arrange for services of a third-party, Client will compensate such third-party service providers, including, without limitation, attorneys, accountants, financial advisors, brokers, and property managers, in accordance with the agreed compensation terms of such third-parties.

3

## X.    INDEMNIFICATION AND HOLD HARMLESS

### A. Indemnification and Hold Harmless

Client agrees to indemnify and hold harmless Advisor, to the full extent lawful, against any and all losses, actions, claims, damages, liabilities or costs including reasonable legal fees and expenses (collectively, "Loss"), whether or not in connection with a matter in which Advisor is a party, as and when incurred, directly or indirectly, caused by, relating to, based upon or arising out of advice or services rendered by Advisor for Client pursuant to the Agreement.  Advisor shall not be held liable for errors in judgment  except for Loss that is determined by a judgment of a court of competent jurisdiction to have resulted from Advisor's bad faith, self-dealing, breach of fiduciary duty, gross negligence, willful misconduct or unlawful activities in connection with any such advice, actions, inactions or services or a breach by Advisor of the confidentiality provisions hereof. Client will not be responsible for any Loss that is determined by a judgment of a court of competent jurisdiction to have resulted from Advisor's bad faith, self-dealing, breach of fiduciary duty, gross negligence, willful misconduct, unlawful activities or the breach by the Advisor of the confidentiality provisions hereof.  In the event of Advisor's bad faith, self-dealing, breach of fiduciary duty, gross negligence, willful misconduct, unlawful activities or the breach by Advisor of the confidentiality provisions hereof, Advisor shall indemnify the Client accordingly.  Advisor shall reasonably cooperate with pursuing or defending any claim, action, proceeding, or investigation in connection with a formally asserted litigation whether or not Advisor is a party.  If it is judicially determined by a court of competent jurisdiction that Advisor engaged in bad faith, self-dealing, breach of fiduciary duty, gross negligence, willful misconduct, unlawful activities or breached the confidentiality provisions hereof, then any amounts paid or reimbursed pursuant to this Agreement shall be repaid to the Client by Advisor promptly following such judicial determination.

### B. Limitation of Liability
Client agrees that Advisor's liability to Client, to the extent not otherwise limited, indemnified or held harmless hereunder, is further limited to the amount of fees paid to Advisor hereunder.

### C. Included Indemnities
These indemnifications and hold harmless provisions shall include in addition to Advisor, Advisor's affiliated entities, directors, officers, employees, agents and controlling persons of Advisor within the meaning of the federal securities laws. All references to Advisor in these indemnifications and hold harmless provisions shall be understood to include any of the foregoing.

### D. Counsel and Notification of Client

If any claim, action, proceeding, or investigation is commenced as to which Advisor proposes to demand such indemnification and to be held harmless, it will notify Client promptly upon becoming aware of any such action, proceeding or investigation.  The Client may elect to, upon receipt of notice, assume the defense of any such claim,

4

action, proceeding or investigation including the employment of counsel. Advisor will have the right to retain counsel of its own choice to represent it, but the fees and expenses of such counsel shall be at its own expense unless the Client and Advisor are named parties to any claim, action, proceeding or investigation and Advisor shall have been advised by counsel that there may be one or more legal defenses available to it which are difference from or in addition to those available to the Client and such counsel shall to its fullest extent consistent with its professional responsibilities cooperate with Client and any counsel designated by it.  Client will only be liable for any settlement of any claim against Advisor made with Client's written consent, which consent shall not be unreasonably withheld.

E.  In the event of litigation between Client and Advisor, the prevailing party shall be entitled to recover its reasonable fees and expenses, including attorney's fees.

## XI.  MISCELLANEOUS PROVISIONS

A.  Entire Agreement
This Agreement constitutes the entire understanding and Agreement between the parties hereto with respect to the subject matter hereof and may not be amended, changed, modified, or supplemented, except in writing signed by each party, for which purposes an exchange of electronic mail or faxes clearly indicating mutual agreement shall be acceptable.

B.  Assignment
Neither party shall sell, assign, convey or otherwise transfer this Agreement, or any of the rights, interests or obligations hereunder to any other party without the prior written consent of the other party, except that Advisor may assign this Agreement to a corporation in which Eric Huebscher is the sole shareholder.

C.  Notices
Any written notice required to be given hereunder shall be validly given if delivered personally or sent by registered or certified mail, postage prepaid, to the address of the party set forth in the opening paragraph of this Agreement, or to such other address as one party shall provide in writing to the other in accordance with this paragraph.

D.  Interpretation and Choice of Forum
The validity, interpretation, and enforcement of this Agreement shall be governed by the internal laws of the New York State applicable to Agreements made and to be fully performed therein.  The parties agree that any controversy arising hereunder shall be resolved by binding arbitration.

E.  Waiver
The waiver of any breach of any provision of this Agreement by a party to this Agreement shall not operate or be construed as a waiver of any subsequent breach by such party.

F.  Separability of Provisions
If any provision of this Agreement shall be or become illegal or unenforceable in whole or in part for any reason whatsoever, the remaining provisions shall nevertheless be

5

deemed, valid, binding and subsisting.

G. Headings and Paragraphs

The headings and paragraphs of this Agreement are for convenience only and shall not affect the interpretation of this Agreement.

## XII.    DISCLOSURE

A. Advisor hereby discloses that Advisor has many relationships in the business community involving lenders, law firms, accounting firms, consulting firms, independent consultant contractors, and others.  These relationships may include Advisor in the past or currently:  receiving client referrals, providing client referrals, providing or receiving professional services, employing employees or contractors or serving as a contractor, and other types of relationships.  These relationships may include lenders, professionals or others that have a connection with Client and/or Advisor's services provided under this Agreement.  Such relationships are expected to continue and new ones may begin during the provision of services hereunder.  Advisor represents that its independence in providing services hereunder is not compromised by such relationships, and is willing to confer with Client at Client's request concerning the specific nature of any such relationships Advisor may have .

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the day and year first above written.

Huebscher & Co.

By: _____

Certa Dose, Inc.

Caleb S. Hernandez

President

By: _____

Eric Huebscher

President

6

# Exhibit B

**Declaration of Disinterestedness**

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In re:                                          :
                                                :
        Certa Dose, Inc.                        :        CHAPTER 11
                                                :
                                                :        Case No.  21-11045 (LGB)
                                                :
                                                :
                        Debtor                  :

DECLARATION OF DISINTERESTEDNESS BY ERIC M. HUEBSCHER

        I, Eric M. Huebscher, pursuant to 28 U.S.C. § 146, hereby declare that the following is

true to the best of my knowledge, information and belief:

        1.        I am the President of Huebscher & Co., which maintains offices at 630 3rd

Avenue, 21st Floor, New York, NY 1001.  Huebscher & Co. is a middle market business

restructuring firm specializes in *inter alia*, providing consulting services in a wide range of

businesses including, healthcare provider networks, multi-specialty physician groups, long term

care and acute and sub-acute care enterprises.  These roles have included interim management

responsibilities, compliance reviews, billing and operational reviews, advisory roles and other

activities including but not limited to forensic investigatory services, including litigation support

and court appointed roles.  I have served as Patient Care Ombudsman in the Lower Bucks Hospital

matter in the Eastern District of Pennsylvania, Daytop Village cases in the Southern District of

New York, Westgate Nursing Home in the Western District of New York, Kidspeace Corporation

in the Western District of Pennsylvania, Corehealth Medical, PLLC in the Eastern District of New

York, Interfaith Medical Center in the Eastern District of New York, Nightingale Home Health

Corporation case in the Southern District of Indiana, Far Rockaway Nursing Home matter in the

Eastern District of New York, Ramakrishna Reddi Muttana, MD matter in the Eastern District of

New York, Real Care, Inc. in the Eastern District of New York., Center of Orlando for Women in

the Middle District of Florida, Women's Center of Ft. Lauderdale in the Middle District of Florida,

Women's Center of Hyde Park in the Middle District of Florida, A Merryland Operating, LLC in

the Eastern District of New York and TM Healthcare Holdings in the Southern District of Florida.

2.     I submit this Declaration in connection with the Motion to Retain

Huebscher & Co. as financial advisors to the Debtor.

3.     I am a Certified Public Accountant licensed in New York State. I hold a

Bachelors degree in Business (Accounting), and a Masters in Business Administration. I have also

taken additional post graduate studies in Healthcare Administration including Healthcare Law and

Long Term Care.  I hold a Certified Fraud Examiner certificate and a Certified Professional

Healthcare Compliance Officer designation. I have over 25 years of healthcare industry specific

experience. From 1989 to 1993 I was an Audit Manager for AXA (formally The Equitable), where

I was responsible for the audits of various life and health insurance operations.  From 1993 to

1996, I was the Assistant Controller for the HIP Health Plan of New York where I was responsible,

among other areas, for the budgeting of their medical delivery finances.  From 1996 to 2000, I was

the Chief Financial Officer of the New York Medical Group, a 500 physician multi-specialty

medical practice.  From 2000 to 2006 I co-founded one of New York's largest primary care

physician practice management companies dedicated to the care of seniors and others in the

nursing homes and assisted living communities.  From 2006 to 2008, I founded a unique medical

model of providing eye care to seniors in assisted living communities throughout New York City

and Long Island.  Since 2008, I have been involved with various healthcare restructuring activities,

including as the lead financial advisor in the North General Hospital bankruptcy matter, Patient

Care Ombudsman in seventeen matters in 7 Federal jurisdictions. I have also provided business

advisory services to secured lenders in the healthcare arena and consulted with several healthcare primary and specialty care practices. I have provided forensic investigation services to the Affirmative Civil Enforcement unit of the United States Attorney's Office; Eastern District of New York, in matters relating to mortgage fraud. In February 2020 I was appointed as a Subchapter V Trustee in the Eastern, Southern, Western and Northern Districts of New York and District of Vermont. Since that I appointment I have served as Trustee in fifteen cases. Additionally, I have served as a Receiver in both State and Federal case matters as well as Liquidating Trustee and Plan Administrator in the Eastern District of New York.

4. During the period while I was employed by AXA, I was responsible for the audit and investigation of various segments of their then business units. These businesses included among others, insurance operations and real estate holdings. I managed large groups of professionals during these engagements involving complex business transactions and matters. I also discovered, investigated and reported on a large scale real estate fraud that resulted in significant restitution to AXA.

5. As Assistant Controller of HIP Health Plan of New York, I was involved with the management of the budgeting function for their medical delivery system as well as all administrative functions. The medical delivery component accounted for $500 Million of a $1 Billion dollar budget for 1,000,000 covered lives, including HIP's Centralized Laboratory and Pharmacy functions. My responsibilities also included management of all payroll function for 1,000 employees which included both unionized and non-unionized employees.

6. As Chief Financial Officer of the New York Medical Group (an affiliated medical group of the HIP Health Plan of New York), I was responsible for all financial affairs of a 500+ multi-specialty medical group, including 1,000 non practitioner employees in 18 separate

delivery sites. Subsequent to the dissolution of the Medical Group in 2000 and for three years thereafter, I was Chief Wind Down Officer as well as sole trustee for their $100 Million Dollar orphaned pension plan.

7. The company that I co-founded in 2000 was a physician practice management company dedicated to providing primary care physician services to the residents of over 50 nursing homes throughout the five boroughs of New York City, Long Island and parts of New Jersey. This company was organized consistent with all applicable laws regarding the Prohibition of the Corporate Practice of Medicine Doctrine and involved a for profit management company as well as a physician practice(s) licensed in various States. I was part of the team that raised $8 Million in venture capital funding for this business initiative and served initially as the founding Chief Financial Officer and then as Senior Vice President of Business Development where I was instrumental in forging relationships between the physician group and nationally recognized health plans in furtherance of the business model principle of providing enhanced primary care services to the served population. During this time, I served as Co-Chair of the Government Affairs Committee for the Brooklyn Chamber of Commerce (as well as Board Member) where I routinely interacted with State and Federal elected officials on wide range of issues, including but not limited to health care matters.

8. In 2006, I developed and founded a unique medical delivery model of providing eye care to seniors in Assisted Living Communities in the five boroughs of New York City and Long Island. Additionally, I currently manage an Ophthalmology practice in Brooklyn, New York.

9.      Since 2008, I have been working in the healthcare turnaround and restructuring business areas. I have provided business advisory services to a 200 bed community based hospital involving a comprehensive review of all business planning activities. I was the lead financial advisor in the North General Bankruptcy proceeding in the Southern District of New York, where I lead the team that identified numerous bankruptcy matters, including but not limited to discovery of unauthorized pre petition obligation paid post petition. As previously mentioned, for the two year period ended January 18, 2012, I was the Patient Care Ombudsman in the Lower Bucks Hospital matter in Bristol, Pennsylvania. Lower Bucks Hospital is a 200-bed community hospital, which successfully emerged from bankruptcy in January of 2012. I served as the Patient Care Ombudsman for the Daytop Village cases in the Southern District of New York. Daytop was New York's largest drug and alcohol abuse system with six residential sites and eight outpatient settings spanning hundreds of miles across New York State. As stated previously I have served in seventeen case related matters that have included drug and alcohol treatment facilities, child and adolescent psychiatric services, primary and specialty care medical services and several women's health clinics. Additionally, I have and continue to provide business advisory services to several physician primary and specialty care practices in New York City as well as secured lenders in the healthcare space throughout the United States.

10.     In addition to the above experiences, I have performed forensic review assignments over a wide range of industries including but not limited to healthcare. Those assignments have included rigorous investigations of financial affairs, contracts, board fiduciary responsibilities and other related compliance matters.

11.     Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.[1]

12.     I make the following disclosures: (i) to establish that Huebscher & Co. are qualified to act as financial advisor in this chapter 11 case and (ii) to establish that I am a "disinterested person" as that term is defined in 11 U.S.C. § 101(14).

13.     With respect to my "disinterestedness" under section 101(14) of the Bankruptcy Code, I provide the following information:

> a.  I am not and have not been during the pendency of this Chapter 11 case, a creditor, equity security holder or insider of the Debtor.
>
> b.  I am not, and have not been, a director, officer, or employee of the Debtor.
>
> c.  I do not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with or interest in the Debtor, or for any other reason.
>
> d.  I am not a relative of any Bankruptcy Judge of the United States Bankruptcy Court of the Eastern District of New York, the United States Trustee (Region 2) or any person employed by the United States Trustee (Region 2).

---

[1] Certain of the disclosures stated in this Declaration relate to matters within the knowledge of other professionals of Huebscher & Co. and are based on information provided to me by them.

14.     In order to prepare this Declaration, I caused conflicts check to be conducted by searching, inter alia, the name of the Debtor his attorneys, his creditors, any other parities in interest in this case, set forth in ECF Doc. No. 1 and the United States.  I also reviewed the annexed list of parties provided to me by counsel to the Debtor.  I have no relationships with or connections to any of the persons or entities listed therein other than through my professional interactions as a professional in Bankruptcy cases with employees of the U.S. Trustee's Office (the "Searched Parties").

15.     To the best of my knowledge neither I nor any members of my firm have connections with the Searched Parties.

16.     I may utilize the services of other members of my firm in the conduct of this assignment.  The individuals assigned will have the requisite experience necessary to appropriately address the various issues faced in this matter.  All members of my firm will be compensated on a fixed hourly rate.  All members of my firm have conducted the conflicts check noted in paragraph 16 above and all are disinterested.  If additional members of my firm will be needed, a supplemental declaration will be submitted.

17.     Our billing rates in this matter will be as follows

a.  President - $425 per hour

b.  Managing Directors - $375 per hour

c.  Directors - $300 per hour

d.  Para-professionals - $150 per hour

18.     To ensure that as financial advisor I will remain disinterested throughout the term of this appointment, I represent that Huebscher & Co. also agrees that it will not accept any engagements in this chapter case other than this engagement as financial advisor.

19.    As required by Section 504 of the Bankruptcy Code, I have agreed not to share any compensation or reimbursement received in connection with this chapter 11 case except with other persons who are Huebscher & Co. professionals.

20.    I intend to apply for compensation for the performance of my services as financial advisor, which will be subject to approval of this Court and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, U.S. Trustee Guidelines, and Orders of this Court, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Eric M. Huebscher

September 10, 2021

**Certa Dose Inc., Case No. 21-11045-lgb**

**Parties-in-Interest Reviewed for Current and Recent Former Relationships**

Unless otherwise noted in the comments section below, a search of Ortiz & Ortiz LLP's ("O & O) books and records showed no connection or prior contact with the parties listed below until the firm was first engaged to serve as Debtor's proposed counsel on March 28, 2021.

O & O reserves its right to amend this list in the event that additional parties become known to the firm
.

**CREDITORS**

| PARTY | COMMENT |
|---|---|
| Alan Young Synn | None. |
| Anthony R. Mayer | None. |
| Brian Harrington | None. |
| Caleb Hernandez | None. |
| Chase Cardmember Service | None. |
| Clarus R+D | None. |
| Cooley LLP | Cooley LLP may have represented a party in a prior case in which O & O has served as counsel.  O & O has no other prior connection to the  firm. |
| COPIC Insurance Company | None. |
| Davis Hurley | None. |
| Fortis Law Partners | None. |
| Geraldine Lewis-Jenkins | None. |
| Internal Revenue Service | O & O has no connection to this creditor other than in connection with its participation as a creditor in bankruptcy cases in which the firm serves as counsel and in the ordinary course of O & O's business. |
| John Blood | None. |
| Kathleen Driscoll, Trustee of the LFD III GRAT | None. |
| Liu Shen & Associates | None. |

| | |
|---|---|
| Massachusetts Department of Revenue | None. |
| Matthew Fleishman | None. |
| McKesson | None. |
| Neugeboren O'Dowd PC | None. |
| New York Genome Center | None. |
| Niles Cole | None. |
| NYS Dept. of Tax and Finance | O & O has no connection to this creditor other than in connection with its participation as a creditor in bankruptcy cases and in the ordinary course of O & O's business. |
| Pacific Western Bank | None. |
| Phoebe Fisher | None. |
| Stephen R. Hoffenberg | None. |
| Stiplastics Healthcaring | None. |
| Theodore Clarke | None. |
| Thomas S. Cowan | None. |
| U.S. Small Business Administration | O & O has no connection to this creditor other than in connection with its participation as a creditor in bankruptcy cases and in the ordinary course of O & O's business. |

## SHAREHOLDERS OF CERTA DOSE

| PARTY | COMMENT |
|---|---|
| Caleb Hernandez | None. |
| Daniel L. Hoffman | None. |
| Eric Eisbrenner | None. |
| Gregory T. Walker | None. |
| Larry Miller | None. |
| Daniel Miller | None. |
| Daniel Lee Miller Jr. | None. |
| Eric B. Olsen | None. |
| Andrew Glaser | None. |
| Anthony G. Ingram Trust | None. |
| Audrey Rogers | None. |
| Rodney Rogers | None. |
| David Friedenson | None. |
| Donald A. Miller | None. |
| Erik Michael Allison | None. |
| Jeffrey Alvin Dorsey | None. |
| Mark A. Notash | None. |
| Michael Fallon | None. |
| Natasha L. Allison | None. |
| Nils Albert | None. |

| Pier DeSanctis | None. |
| Robert Willoughby | None. |
| Sandra Escobar | None. |
| Sandra L. Horowitz | None. |
| Seth Peacock | None. |
| Todd Schaefer | None. |
| Lavonne Clifford | None. |
| Shane Clifford | None. |
| Deborah Sizemore | None. |
| Donald Sizemore | None. |
| Chris Lowry | None. |
| Tom Henshaw | None. |
| Patricia Golkowski | None. |

**OFFICE OF THE U.S. TRUSTEE**

| PARTY | COMMENT |
|---|---|
| Office of the U.S. Trustee | Norma E. Ortiz was an employee of the Office of the U.S. Trustee in the Southern District of New York from approximately 1990 through 1996. |
| Paul K. Schwartzberg | O & O has worked in its capacity as Debtor's or creditor's counsel with Mr. Schwartzberg in numerous bankruptcy cases. O & O has no other connection to Mr. Schwartzberg. |
| Joseph Nadkarni | O & O has worked in its capacity as Debtor's or creditor's counsel with Mr. Nadkarni in numerous bankruptcy cases. O & O has no other connection to Mr. Nadkarni. |

## CHAMBERS OF U.S. BANKRUPTCY JUDGE

| PARTY | COMMENT |
| --- | --- |
| Judge Lisa G. Beckerman | Norma E. Ortiz may have worked on matters with Judge Beckerman while she was in private practice in a limited professional capacity while serving as an employee for the U.S. Trustee's Office in the 1990's.  O & O's records do not reflect any connection to Judge Beckerman other than the firm's appearance before Judge Beckerman in bankruptcy cases. |
| Chantel Barrett | O & O has worked solely in a professional capacity with Ms. Barrett in numerous bankruptcy cases. O & O has no other connection to Ms. Barrett. |
| Shirin Mahkamova | None. |
| Jennifer Schein | None. |

## OFFICERS OF CERTA DOSE

| PARTY | COMMENT |
| --- | --- |
| Caleb Hernandez | None. |
| Chris Karageorge | None. |
| Daniel L. Hoffman | None. |
| John Blood (former) | None. |
| Eric Eisbrenner (former) | None. |
| Larry Miller (former) | None. |
| Sarah Hanssen (former) | None. |

## BOARD OF DIRECTORS OF CERTA DOSE

| PARTY | COMMENT |
| --- | --- |
| Caleb Hernandez | None. |
| Daniel L. Hoffman | None. |
| Shane Jones | None. |
| Audrey Rogers | None. |
| Steve Rubin | None. |
| Steve Hoffenberg | None. |
| Larry Miller | None. |

## EMPLOYEES OF ORTIZ & ORTIZ, LLP

| PARTY | COMMENT |
| --- | --- |
| Norma E. Ortiz | None other than described above and below. |
| Cynthia Narea | None. |
| Nicolas Santacruz | None. |

## EMPLOYEES OF CERTA DOSE

| PARTY | COMMENT |
| --- | --- |
| Patricia Golkowskki | None. |

| | |
|---|---|
| Megan Sinclair | None. |
| Chris Lowry | None. |
| Tom Henshaw | None. |
| Caleb Hernandez | None. |
| Daniel L. Hoffman | None. |
| Chris Karageorge | None. |
| Katie McIntyre (former) | None. |
| Ezra Kelderman (former) | None. |
| Marjorie Sutherland (former) | None. |
| Bill Titcomb (former) | None. |
| Dewey Simms (former) | None. |
| Nick Kosik (former) | None. |
| Stella Farquharson (former) | None. |
| John Blood (former) | None. |
| Tom Nonnemaker (former) | None. |
| Colin Reutter (former) | None. |
| Greg Walker (former) | None. |

| Josue Hernandez | Josue Hernandez presently serves as the Debtor's in-house counsel. Norma E. Ortiz met with Mr. Hernandez in a professional capacity for approximately 30 minutes in 2007 to discuss potential employment with the firm. Norma E. Ortiz and O & O had no further communication or connection with Mr. Hernandez after that meeting until O & O was contacted to discuss a possible bankruptcy filing for the Debtor on or about May 26, 2021. |

## PROFFESSIONALS OF CERTA DOSE

| PARTY | COMMENT |
|-------|---------|
| Denver Contract Law | Josue Hernandez, the principal of this law firm, previously served as outside counsel to the Debtor. Norma E. Ortiz met with Mr. Hernandez in a professional capacity for approximately 30 minutes in 2007 to discuss potential employment with the firm. Norma E. Ortiz and O & O had no further communication or connection with Mr. Hernandez after that meeting until O & O was contacted to discuss a possible bankruptcy filing for the Debtor on or about May 26, 2021. |
| Chris Lamb, Fortis Law Partners | None. |
| Charles Carlin, Fortis Law Partners | None. |
| James A. Boiani (Epstein Becker & Green) | None. |
| Christopher Smith (Epstein Becker & Green) | None. |
| Jessika Tuazon (Epstein Becker & Green) | None. |
| Bonnie Scott (Epstein Becker & Green) | None. |
| Anne Holland (QA Consulting Inc.) | None. |

| Mallori Groh (QA Consulting Inc.) | None. |
|---|---|
| Amber Hilfiger (QA Consulting Inc.) | None. |
| Megan Smolik (Emergo) | None. |
| Lauren Luke (Emergo) | None. |
| Robert Seiple (Emergo) | None. |
| Gretchen Upton (QA/RA Consultant) | None. |
| Jon Speer (Greenlight Guru) | None. |
| Zach Peach (Greenlight Guru) | None. |
| Tom Rish (Greenlight Guru) | None. |
| Christopher Rush (FDA Quality and Regulatory Consultants) | None. |
| Ashley French (Agilis Consulting Group) | None. |
| Melissa Lemke (Agilis Consulting Group) | None. |
| Bryan Jobe (Avomeen Analytical Services) | None. |
| Claire Howlett (Sirum) | None. |

## VENDORS OF CERTA DOSE

| PARTY | COMMENT |
|---|---|
| 3C Packaging | None. |

| | |
|---|---|
| Calument Carton Company | None. |
| Cardinal Health | None. |
| Computype | None. |
| HSC.TV | None. |
| Lighting Labels | None. |
| Nautilus | None. |
| Packaging Corporation of America DBA Field Packaging Group | None. |
| Par Pharmaceuticals | None. |
| PlasTech Engineering | None. |
| Practical Packaging Solutions, Inc. | None. |
| SMC LTD, Manufacturing Facility | None. |
| Steven Label/Robinson Printing | None. |
| StiPlastics | None. |
| The Perfect Measuring Tape Company | None. |
| Unified Global | None. |
| Fresenius Kabi USA | None. |

**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re

CERTA DOSE, INC.,                                           Case No.: 21-11045-LGB

                                                            Chapter 11

                                        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Upon the application (the "Application") of Certa Dose, Inc., as Debtor and Debtor in

possession (the "Debtor"), dated September 26, 2021, for the entry of an order pursuant to 11

U.S.C. § 327(a) authorizing and approving the employment of Huebscher & Co. (" H & C") as

its financial advisor; upon the Declaration of Eric M. Huebscher; and it appearing that H & C

represents no interest adverse to the Debtor and its estate as to the matters upon which it is to be

engaged and is disinterested under 11 U.S.C. § 101(14), and that the employment of H & C is

necessary and in the best interest of the Debtor and its estate; due notice of the Application

having been given, and it appearing that no other or further notice need be given; sufficient

cause appearing therefore, it is

      ORDERED, that the Application is granted in all respects; and it is further

      ORDERED, that pursuant to 11 U.S.C. § 327(a) of the Bankruptcy Code, the Debtor is

authorized to employ H & C under the terms and conditions set forth in the Application and the

Advisory Agreement annexed to the Application; and it is further

      ORDERED, that prior to any increases in H & C's rates, the firm shall file a

supplemental declaration with the Court and provide ten business days' notice to the Debtor,

the United States Trustee of the proposed changes. The supplemental declaration shall explain

the bases for the requested rate increases in accordance with Section 330(a)(3)(F) of the

Bankruptcy Code and state whether the Debtor has consented to the rate increase. The United

States Trustee retains all rights to object to any rate increase on all grounds including, but not

limited to, the reasonableness standard provided for in Section 330 of the Bankruptcy Code, and

the Court retains the right to review any rate increase pursuant to Section 330 of the Bankruptcy

Code; and it is further

ORDERED, that no compensation or reimbursement of expenses shall be paid to H & C

for professional services rendered to the Debtor except upon proper application and by further

order of this Court, and will be subject to notice and hearing pursuant to Sections 330 and 331 of

the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure, and will comply

with the U.S. Trustee's Guidelines for Fees and Disbursements for Professionals.

October ___, 2021
New York, New York

_____
Lisa G. Beckerman
U.S. Bankruptcy Judge