UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────────────────────

In re:                                                                       Case No: 21-11045-lgb

CERTA DOSE, INC.,                                                  Chapter 11

                                Debtor.

───────────────────────────────────────────────

**INTERIM ORDER GRANTING DEBTOR'S EMERGENCY MOTION (1) AUTHORIZING POST-PETITION INTERIM FINANCING FROM DR. CALEB S. HERNANDEZ ("LENDER") AND AUTHORIZING USE OF CASH COLLATERAL; (2) SCHEDULING A HEARING ON THE FINAL REQUEST FOR THE USE OF CASH COLLATERAL; (3) SCHEDULING A HEARING ON THE REQUEST FOR A FINAL ORDER APPROVING POST-PETITION FINANCING; (4) AUTHORIZING PRIOR LOANS TO THE DEBTOR FROM LENDER; AND (5) GRANTING SUCH OTHER AND FUTHER RELIEF AND IS DEEMED APPROPRIATE**

      Upon the Motion (the "Motion") of the Debtor Certa Dose, Inc. (the "Debtor"), by its counsel, seeking entry of an order (1) authorizing post-petition financing and granting a security interest and super-priority administrative expense status pursuant to section 105 and 364(c) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on an interim basis for the funds proposed to be lent to the Debtor by the Lender; (ii) authorizing the Debtor's final use of cash collateral pursuant to 11 U.S.C. § 363 and authorizing the entry of a final order authorizing the use of cash collateral; (iii) authorizing the Debtor to obtain additional borrowing pursuant to the terms of the Economic Injury Disaster Assistance loan (the "Loan") which was originated with the U.S. Small Business Administration (the "SBA") and is now held by the Lender; (iv) authorizing the Debtor to borrow funds from the Lender retroactively to the date the loans were extended by the Lender to the Debtor; and (iv) scheduling a final hearing pursuant to Rules 4001(b) and 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") on the relief requested; a hearing on the Motion having been heard on

1

October 15, 2021; the Lender having consented to the relief sought by the Debtor; and the Court finding that the request is fair and reasonable and in the best interests of the Debtor, its estate, its creditors, and equity holders; and that granting the relief requested is essential to the continued operation of the Debtor's business; and after due deliberation having been had, and sufficient cause appearing therefore, and adequate notice having been given under the circumstances,

**THE COURT FINDS AS FOLLOWS**:

1. *Commencement of Case.* On May 30, 2021, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York thereby commencing this case (the "Case"). The Debtor is continuing to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and no statutory committee of unsecured creditors (a "Committee") has been appointed in this Case.

2. *Jurisdiction and Venue.* The Bankruptcy Court has jurisdiction of the Case and the parties and the properties affected hereby pursuant to 28 U.S.C. §§ 157(b)(2)(D) and 1334. The Motion is a "core" proceeding as defined in 28 U.S.C. §§157(b)(2)(A), (B), (K), and (M). Venue of the Case and the applications in this Bankruptcy Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363(c)(2), (3), and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 6004, and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York.

3  *Disposition.* Any objections to the relief sought in the application with respect to

the entry of this Order that have not been previously withdrawn, waived or settled, and all reservations of rights included therein, have been otherwise denied and overruled, or adjourned to the final hearing on the Motion.

4. *Debtor's Contentions Concerning Liens*. As of the Petition Date, the Debtor contends it is indebted to the Lender pursuant to that certain Settlement Agreement dated November 1, 2020 (the "Inventor Settlement Agreement") between the Inventor (as defined in the Inventor Settlement Agreement) and the Debtor regarding the Debtor's key intellectual property assets ("IP Assets"). The Debtor contends acknowledges and admits that as set forth in the Inventor Settlement Agreement the amount of the liens secured by the Inventor Settlement Agreement is $77,000,000 and that the extent of the liens under the Inventor Settlement Agreement encumbers all of the Debtor's now existing and hereafter acquired property and is made subject only to the prior-in-time lien of the SBA (discussed below) (the "Inventor's Lien"). The Debtor further acknowledges and admits that its use of the IP Assets in its day-to-day business is subject to the terms and conditions of the Inventor Settlement Agreement and the Debtor further admits that cash on hand and amounts generated by the IP Assets constitute proceeds of the collateral and, therefore, constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code.

5. The Debtor admits and has adequately demonstrated to the Court that it is currently indebted on account of the Loan it initially obtained in June 2020 in the amount of $150,000.00 pursuant to the terms of the Loan Documents[1]. The Lender acquired the Loan on or about August 11, 2021. The amounts outstanding under the Loan are secured by, among other things, all of the Debtor's tangible and intangible property (the "Collateral"), including, but not

---

[1] As defined in and annexed to the Motion.

limited to, accounts and deposit accounts, and any replacements for the Collateral all as specifically set forth in the Loan Documents. The Debtor granted the SBA a first lien on the Collateral[2] (the "First Lien") and the Lender presently holds the First Lien on the Collateral. The funds held by the Debtor in its deposit accounts constitute the Lender's cash collateral as that term is defined in 11 U.S.C.§ 363(a).

6. The Debtor adequately demonstrated that the Debtor's assets exceed the value of the First Lien and the amount of the Loan. The Debtor has submitted sufficient evidence that, absent granting the relief sought by this Order, the Debtor's estate will suffer immediate and irreparable harm. The authority to use Cash Collateral in accordance with the terms of this Order and under the terms of the Loan are in the best interests of the Debtor's estate and are consistent with the Debtor's exercise of its fiduciary duties.

7. The Lender, as assignee of the SBA, appears to have a valid, perfected, and enforceable lien and security interest in the Debtor's assets, including all deposit accounts, accounts receivable, and proceeds and products therefrom (collectively, the "Prepetition Collateral"), that is senior to the Inventor's Lien. As the assignee of the SBA's lien and security interest, the Inventor holds the First Lien which is senior to the Inventor's Lien (collectively, the First Lien and the Inventor's Lien are referred to as, the "Liens").

8. Good, adequate and sufficient cause has been demonstrated to justify the granting of the relief requested herein. The use of Cash Collateral and authority to borrow under the Loan is necessary to avoid immediate and irreparable harm to the Debtor's business and operations and maintain the value of its bankruptcy estate. The use of the Cash Collateral is therefore vital to the preservation and maintenance of the going concern value of the Debtor and its estate and

---

[2] As defined in the Loan Documents.

4

will enhance the prospects for a successful reorganization of the Debtor under chapter 11 of the Bankruptcy Code.

9. Good, adequate and sufficient cause has been demonstrated to justify the Debtor's request to enter into the Amended Loan Agreement[3] with the Lender, copies of which are annexed to the Motion, and for the Debtor's need to draw $75,000.00 under the Amended Loan Agreement as authorized under this Interim Order. The Debtor is in need of immediate working capital to preserve its assets and continue to operate its business. The terms of the Amended Loan Agreement are favorable to the Debtor. The Debtor's request to enter into the Amended Loan Agreement limited to the amounts authorized hereunder is an appropriate exercise of its business judgment. Based upon the foregoing, it is hereby

**ORDERED**, to the extent provided herein on an interim basis, the Motion is granted. It is further

**ORDERED**, the Debtor is authorized to execute the Amended Loan Agreement and borrow up to the amounts set forth in this Order;

**ORDERED**, the Debtor is authorized to use Cash Collateral and all other accounts of the Debtor for working capital and general operations purposes costs and expenses related to this Chapter 11 Case which shall be limited to ordinary and necessary expenditures, in accordance with the budget attached hereto as Exhibit "A" (the "Budget") in the amount of $75,000.00. The Lender is entitled to adequate protection of the interests in the Cash Collateral. The Lender is hereby granted the following adequate protection (collectively, the "Adequate Protection"):

a. *Adequate Protection Lien*: To provide adequate protection for any diminution of value of the interests in the Collateral on account of the Debtor's use of the property subject to

---

[3] The terms of which are annexed to the Motion as Exhibit D to the Declaration of Caleb Hernandez [Doc. No. 122-3]

the Liens and the imposition of the automatic stay, the Lender is hereby granted, pursuant to and as limited by sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and automatically perfected liens and/or security interests (the "Adequate Protection Liens") in and upon all of the assets the Debtor presently owns or hereafter acquires, including but not limited to all of the Debtor's now owned and after-acquired cash, and cash collateral, any investment of such cash and cash collateral, accounts receivable, any right to payment whether arising before or after the Petition Date, and the proceeds, products, rents and profits of all of the foregoing prepetition and post-petition assets and properties (tangible, intangible, real, personal and mixed), whether now existing or newly acquired or arising, and wherever located, including, without limitation, all commercial tort claims, all receivables and all cash ("Cash Collateral")[4] (but excluding all avoidance actions ("Avoidance Actions")) for the purposes of this interim Order to the same validity, extent and priority as existed pre-petition; provided that the Lender's Adequate Protection Liens shall only be granted to the extent permitted under sections 361 and 363 of the Bankruptcy Code, to the extent that the Lender would have been entitled to a security interest in such Cash Collateral under applicable agreements,[5] state and federal laws, and only to the extent of the allowed amount of such lien calculated in accordance with section 506 of the Bankruptcy Code. The liens, pledges and security interests granted to the Lender are in addition to, and not in substitution for, his existing security interests and liens.

  b. *Super-priority Claim*: As further adequate protection for any diminution in value of its interests the property encumbered by the Liens on and the imposition of the automatic stay, the Lender is hereby granted, pursuant to and as limited by sections 361, 363 and 507(b) of the

---

[4] As specifically set forth in the security agreement comprising the Loan Documents [Doc. No. 122-3]
[5] Yet recognizing that the Lender is entitled to such security interests on account of all sums loaned pursuant to the Amended Loan Agreement

Bankruptcy Code, super-priority administrative expense claims to the extent that the Adequate Protections Liens prove inadequate and with priority over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 and any other provision of the Bankruptcy Code (the "Adequate Protection Super-priority Claims"), provided, however, that the Adequate Protection Super-priority Claims shall not attach to any Avoidance Actions in this interim order.

  c. *Carve Out for Fees and Expenses*:  Any replacement liens, adequate protection liens, and super-priority claims granted hereunder are subject to the following fees, expenses, and recoveries:  any and all quarterly fees due to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and interest due pursuant to 31 U.S.C. § 3717, any fees due to the Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 156(c), the fees and expenses of a hypothetical Chapter 7 trustee to the extent of $10,000, the fees and expenses of Debtor's counsel Ortiz & Ortiz LLP, if approved by the Court, to the extent of $50,000 ("Legal Fee Carve-Out"), and the recovery of funds or proceeds from the successful prosecution of avoidance actions pursuant to sections 502(d), 544, 545, 547, 548, 549, 550 or 553 on an interim basis. The Legal Fee Carve-Out may not diminish the Inventor's right to a super-priority claim in the event that there is a diminution of the Inventor's interest in the Debtor's Collateral.

  d. *Money Market Account Carve-Out*:  Notwithstanding anything set forth herein, the Adequate Protection Liens granted above shall not include any lien or other interest in and to Money Market Demand Account Number XXXXXXX5032 held at Pacific Western Bank ("Pac

7

West Bank"), which account and all funds therein are subject a first priority security interest in favor of Pac West Bank, pursuant to a certain Pledge and Security Agreement dated as of April 24, 2017 by and between the Debtor and Pac West Bank.  It is further

**ORDERED**, that the automatic stay provisions of section 362 are hereby modified to permit the Debtor to implement and perform the terms of this Order and permit the Lender to perfect the Adequate Protection Lien and the Liens.  The Lender shall not be required to file UCC financing statements or any other instruments with any filing authority to perfect the Adequate Protection Lien or the Liens granted by this Order or to take any other actions to perfect the Liens: the Adequate Protection Lien shall be deemed automatically perfected by the docketing of this Order by the Clerk of the Court.  If, however, the Lender shall elect for any reason to file, record, or serve any such financing statements or other documents with respect to such Liens, the Debtor shall execute the necessary documents upon request, and the filing, recording, or service of these documents shall be deemed to have been made at the time of the Petition Date. In particular, the Lender may, in its discretion, file a certified copy of this Order in any jurisdiction in which Debtor has or comes to have real or personal property, and in such event, the subject filing/recording officer is hereby authorized and directed to file/record such certified copy. It is further

**ORDERED**, that each of the following shall constitute an "Event of Default" for the purposes of this Order:

>The Debtor's Chapter 11 Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code; or

>A chapter 11 trustee or examiner with expanded powers is appointed in the Debtor's Chapter 11 Case.

It is further

8

**ORDERED**, that any non-compliance or default with any term of this Order shall not be deemed an Event of Default unless the Lender delivers written notice of such non-compliance or default to the Debtor's proposed counsel by electronically filing such a notice through the court's CM/ECF filing system in the instant Chapter 11 case and serving a copy by electronic mail upon counsel to the proposed counsel for the Debtor, Norma E. Ortiz, Ortiz & Ortiz LLP, 237 Park Avenue South, Ste. 213, New York, New York  10010, at email@ortizandortiz.com, and (2) the Debtor fails to cure the default within five (5) business days after counsel's receipt of such written notice.  Upon the occurrence of any Event of Default, the Lender may move before this Court, on five (5) business days' notice to the Debtor, to terminate the Debtor's use of Cash Collateral.  It is further

**ORDERED**, that the funds disbursed pursuant to this Interim Order under the Loan shall not, directly or indirectly, be used to pay (i) administrative expenses of the Debtor and its estate except for those operating expenses that are set forth in the Budget or with the written consent of the Lender and/or (ii) any of the Advances by the Lender referred to in the Motion.  It is further

**ORDERED**, that the terms and conditions of this Order shall be (i) effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rules 6004(g), 7062, 9014 or otherwise; and (ii) not be stayed absent (a) an application by a party in interest for such stay in conformance with Bankruptcy Rule 8005 and applicable Local Rules, and (b) a hearing upon notice to the Notice Parties, the Inventor, the Office of the United States Trustee, and the Debtor's counsel.  It is further

**ORDERED**, that the provisions of this Order and any actions taken pursuant hereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting any of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or the appointment of a chapter 11 trustee, subject to the provisions of the Bankruptcy Code.   It is further

**ORDERED**, that the terms and provisions of this Order, as well as the Adequate Protection Liens and all other claims and Liens granted by this Order, shall: (a) continue in this Chapter 11 Case or any superseding case under the Bankruptcy Code; (b) be valid and binding upon, and inure to the benefit of, the Lender, the Debtor, and their respective successors and assigns, and all parties in interest, including, without any limitation, any official committee appointed in this Chapter 11 Case, a chapter 11 trustee, chapter 7 trustee, responsible officer, examiner, estate administrator, or representative, or similar person appointed for the Debtor under any chapter of the Bankruptcy Code; and (c) continue, notwithstanding any dismissal of the Debtor's Chapter 11 Case (and any such order of dismissal shall so provide), and such claims and liens shall maintain their priority as provided by this Order until the Debtor's obligations to the Lender are satisfied in full.  It is further

**ORDERED**, that the Court shall retain jurisdiction over all matters arising from or relating to the implementation of this Interim Order.  It is further

**ORDERED**, that the provisions of this Interim Order and the Debtor's right to use Cash Collateral shall expire on 11:59 p.m. (ET) on November 9, 2021, unless extended by further order of this Court or by written consent of the parties.  It is further

**ORDERED**, that the Debtor is authorized to enter into the Amended Loan Agreement, attached to the Motion as Exhibit D, and the terms of the Amended Loan Agreement shall govern, subject only to the limitations in this Interim Order on the additional borrowings made hereby.  The Debtor is authorized to borrow up to $75,000.00 until the entry of a final order of this Court, without prejudice to the Debtor's right to request authority to borrow additional amounts in a final order approved by the Court on such terms as are acceptable to the Lender.  The funds borrowed shall be utilized pursuant to the terms of the annexed Budget.  The Debtor may vary from the terms of the Budget by up to 15% in its sole discretion based upon the needs of the estate.  It is further

**ORDERED**, that the Debtor's request to provide the Lender with a claim pursuant to Bankruptcy Code Section § 364(d)(1) in exchange for the Loan is granted.  Subject to the carve-out set forth herein, the Lender shall be entitled to a super-priority claim and deemed to hold a fully perfected lien upon all of the Debtor's assets to secure the Debtor's obligation to repay the Loan.  It is further

**ORDERED**, the Debtor is authorized to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements as the Lender may reasonably require, as evidence of and for the protection of the Lender's claim to effectuate the terms and conditions of this order.  It is further

**ORDERED**, that the Debtor shall file its August Monthly Operating Report no later than October 18, 2021 and shall file all monthly operating reports no later than the 21st day of each subsequent month.  It is further

**ORDERED**, that the Debtor shall file with the Court an amended budget (the "Amended Budget") by October 21, 2021. Thereafter, all references to the Budget in this Order shall mean the Amended Budget. It is further

**ORDERED**, that the Court shall consider the Debtor's request for the entry of a final order granting the Motion on November 8, 2021, at 10:00 a.m. (ET). Any objections to the Motion must be filed by 5:00 p.m. (ET) on November 1, 2021. Any replies filed by the Debtor must be filed by 1:00 p.m. (ET) on November 5, 2021.

Dated: New York, New York
October 15, 2021

                                                              **/s/ Lisa G. Beckerman**
                                                              LISA G. BECKERMAN
                                                              U.S. BANKRUPTCY JUDGE