**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re:                                                           :

                                                                 :

      Certa Dose, Inc.,                                   :    Chapter 11

                                                                 :    Case No. 21-11045 (LGB)

                Debtor.                :

---------------------------------------------------------------x

### DECISION ON MOTION OF COPIC INSURANCE COMPANY, PURSUANT TO 28 U.S.C. § 1412 AND FED. R. BANKR. P. 1014(A)(2), TO TRANSFER VENUE TO THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO

## <u>A P P E A R A N C E S</u>

ORTIZ & ORTIZ LLP
*Attorneys for the Debtor*
35-10 Broadway, Suite 202
Astoria, NY 11060
By:    Norma E. Ortiz, Esq.

LEWIS ROCA ROTHGERBER CHRISTIE LLP
*Attorneys for COPIC Insurance Company*
1630 Welton Street, Suite 200A
Denver, CO 80202
By:    Fredrick J. Baumann, Esq.
          Chadwick S. Caby, Esq.
          Tyler Nemkov, Esq.

MEDINA LAW FIRM LLC
*Attorneys for Dr. Caleb Hernandez*
641 Lexington Avenue, 13th Floor
New York, NY 10022
By:    Eric S. Medina, Esq.

**LISA G. BECKERMAN**
**UNITED STATES BANKRUPTCY JUDGE**

The Court denies the *Motion of COPIC Insurance Company, Pursuant to 28 U.S.C.*
*§ 1412 and Fed. R. Bankr. P. 1014(a)(2), to Transfer Venue to the United States Bankruptcy*
*Court for the District of Colorado* [ECF No. 36] (the "Motion") because the preponderance of
the evidence does not support a transfer of venue of the Chapter 11 case from the United States
Bankruptcy Court for the Southern District of New York to United States Bankruptcy Court for
the District of Colorado either in the interest of justice or for the convenience of parties.

## I.    PROCEDURAL BACKROUND AND FINDINGS OF FACT

On May 30, 2021 (the "Petition Date"), Certa Dose, Inc. (the "Debtor") filed a voluntary
petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the
Southern District of New York commencing this Chapter 11 case (the "Case").

On June 22, 2021, COPIC Insurance Company ("COPIC" or  the "Movant") filed the
Motion.  The Motion requests that this Court to transfer venue of the Case from the United States
Bankruptcy Court for the Southern District of New York to the United States Bankruptcy Court
for the District of Colorado.  The Motion is joined by the following parties: Stephen R.
Hoffenberg ("Dr. Hoffenberg"); Alan Young Synn; Davis K. Hurley; Brian C. Harrington; Niles
Cole; Geraldine A. Lewis-Jenkins; Matthew Fleishman; Theodore J. Clarke; Katherine Driscoll,
as Trustee of the 2015 LFD III GRAT-TRUST U/A 8.26.15; Phoebe Fisher, M.D.; Thomas S.
Cowan; and Anthony R. Mayer (collectively, the "Noteholders").  Motion pp. 4-5.

On July 9, 2021, the Debtor filed an opposition to the Motion [ECF No. 56] (the
"Objection") and Dr. Caleb Hernandez ("Dr. Hernandez"), founder, chief executive officer, and
the majority shareholder of the Debtor, filed a joinder to the Debtor's Objection [ECF No. 55].
On July 12, 2021, COPIC filed a reply in support of the Motion [ECF No. 62] (the "Reply").

Counsel to COPIC filed the following declarations in support of the Motion: (i) on June
22, 2021, declarations of Steve Rubin and Chad S. Caby, Motion Exs. 1–2; (ii) on July 12, 2021,
declarations of each of the Noteholders and Daniel Hoffman, Reply Exs. 3–15; and (iii) on
August 10, 2021, a supplemental declaration of Dr. Hoffenberg [ECF No. 86]. Counsel to the
Debtor filed the following declarations in opposition to the Motion: (i) on July 9, 2021, a
declaration of Dr. Hernandez [ECF No. 54] (the "Hernandez Venue Decl.") and declarations of

1

Daniel Eason, Andrew Glaser, and Robert Willoughby, III, Hernandez Venue Decl. Ex. A; (ii) on July 23, 2021, a first supplemental declaration of Dr. Hernandez [ECF No. 71] (the "First Suppl. Hernandez Venue Decl."); and (iii) on September 28, 2021, a second supplemental declaration, which contained modifications to a declaration filed on September 17, 2021 [ECF No. 119] (the "Second Suppl. Hernandez Venue Decl.").

This Court held a four-day evidentiary hearing on the Motion on September 21, 22, 23, and 28, 2021 wherein 134 exhibits, including the various declarations, were moved by the parties and entered into evidence as part of the hearing record.

## A. The Debtor and Its Operations

The Debtor was founded by Dr. Hernandez in 2013 and originated in Colorado. Hernandez Venue Decl. ¶¶ 3–4. The Debtor was incorporated in the state of Delaware. *Id.* at ¶ 4.

The Debtor is primarily in the business of developing specifications and licensing patents for medical devices including syringes and kits used to deliver medicine to in a manner that reduces the risk of overdose or to deliver epinephrine. *Id.* at ¶ 3. The Debtor is a specifications developer and does not manufacture its own products. Rather, the Debtor's function is to engineer and design its products, and to administer and monetize the intellectual property that it develops. Transcript of Evidentiary Hearing on September 28, 2021 ("Sept. 28 Tr.") at 28:14–22.

Based on Dr. Hernandez's testimony, the Debtor presently contracts with two vendors for the manufacture of its products: SMC Ltd. and PlasTech Engineering. *Id.* at 29:2–6; First Suppl. Hernandez Venue Decl. ¶ 16. The Debtor contracts with these vendors in order to procure products ordered by the Debtor's distributors. Sept. 28 Tr. at 29:2–30:30. Cardinal Health, a third-party logistics company, receives and ships the Debtor's products intended for distributors and accepts payment from the distributors which it then remits to the Debtor. *Id.*; First Suppl. Hernandez Venue Decl. ¶ 16.

The Debtor generates most of its revenue from its licensing business, whereby it licenses patents to pharmaceutical manufacturers. Sept. 28 Tr. at 34:3–11. Sources of revenue from this area of the Debtor's business include the Debtor's collaboration agreement with Johnson &

Johnson Consumer, Inc. ("J&J"), COPIC Ex. 66, and its collaboration agreement with Janssen Pharmaceuticals, Inc. ("Janssen"), COPIC Ex. 13, among other agreements.

The Debtor is registered to do business in Colorado, Delaware, and New York.  Second Suppl. Hernandez Venue Decl. ¶ 6.

### B. Events Leading up to the Chapter 11 Filing

1. Investments by COPIC and the Noteholders into the Debtor

COPIC is a medical professional liability insurance provider founded in 1981 by Colorado physicians and is incorporated and headquartered in Colorado.  Motion Ex. 1 (the "Rubin Decl."), ¶¶ 2–3.  In 2012, the COPIC Medical Foundation provided a grant to Dr. Hernandez that funded field testing of certain medical products.  *Id.* at ¶ 5.  Subsequently, from December 2014 to March 2019, through a series of transactions, COPIC purchased 483,824 shares of Series Seed 2 Preferred Stock of the Debtor ("Preferred Stock") for a total of $850,000 and lent a total of $2,231,000 to the Debtor in exchange for convertible promissory notes ("Convertible Notes").  *Id.* at ¶¶ 6–13.  From January 2015 to late 2018, Dr. Hoffenberg served as COPIC's designee member of the Debtor's board of directors.  Transcript of Evidentiary Hearing on September 22, 2021 ("Sept. 22 Tr.") at 187:9–12.[1]  Thereafter, for approximately eleven months ending in October 2019, Mr. Rubin, the president of COPIC, served as COPIC's designee on the Debtor's board.  Transcript of Evidentiary Hearing on September 21, 2021 ("Sept. 21 Tr.") at 180:19–25.

The Debtor and COPIC entered into a series of agreements in connection with COPIC's purchase of Preferred Stock that all contain the following forum selection language:

> The parties (a) hereby irrevocably and unconditionally submit to the jurisdiction
> of the state courts of Colorado and to the jurisdiction of the United States District
> Court for the District of Colorado for the purpose of any suit, action or other
> proceeding arising out of or based upon this Agreement, (b) agree not to
> commence any suit, action or other proceeding arising out of or based upon this
> Agreement except in the state courts of Colorado or the United States District
> Court for the District of Colorado, and (c) hereby waive, and agree not to assert,
> by way of motion, as a defense, or otherwise, in any such suit, action or
> proceeding, any claim that it is not subject personally to the jurisdiction of the
> above-named courts, that its property is exempt or immune from attachment or

---

[1] Dr. Hoffenberg continued to serve as a member of the Debtor's board of directors until October 2019.  *Id.* at 221:1–20.

execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by such court.

Rubin Decl. Exs. A–H.

Similarly, the note purchase agreements with respect to COPIC's Convertible Notes all contain provisions with the following language:

**6.2 Governing Law; Submission to Jurisdiction; Venue; Waiver of Jury Trial.** This Agreement shall be governed by and construed under the laws of the State of Colorado as applied to agreements among Colorado residents, made and to be performed entirely within the State of Colorado, without giving effect to conflicts of laws principles. Each party hereto hereby irrevocably and unconditionally (i) agrees that any legal action, suit or proceeding arising out of or relating to this Note shall be brought in the courts of the State of Colorado for the City and County of Denver, Colorado or the federal courts of the United States sitting in the District of Colorado, (ii) submits to the exclusive jurisdiction of any such court in any such action, suit or proceeding, and (iii) waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Note in any court referred to in this section and the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. Final judgment against the Company in any action, suit or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT, HE OR SHE MAY HAVE TO A TRIAL BY JURY IN CONNECTION WITH ANY ACTION OR PROCEEDING IN ANY WAY RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY

*Id.* at Exs. I–K; Motion Ex. 8.

Individuals both affiliated and not affiliated with COPIC, a subset of which are the Noteholders, also purchased Convertible Notes from the Debtor over the period of July 3, 2018 through April 19, 2019. Reply Exs. 3–14. In total, the Noteholders purchased an aggregate principal amount of $2,484,000 of the Convertible Notes. *Id.*

On November 15, 2019, the Debtor carried out actions that purported to convert all outstanding Convertible Notes to Preferred Stock. Sept. 21 Tr. at 64:9–19; 97:14–24; 98:9–17. COPIC and the Noteholders deny that the Convertible Notes were properly converted. *See, e.g.*,

4

Sept. 22 Tr. at 47:22–49:6; 50:5–16; 72:23–73:1; 116:10–21; 119:1–10; 208:17–24; 230:5–24;
Transcript of Evidentiary Hearing on September 23, 2021 ("Sept. 23 Tr.") at 9:2–17; 15:11–23.

Additionally, over the period of November 2019 through December 2020, the Debtor
adopted a series of amendments to its certificate of incorporation that increased the number of
authorized shares of Preferred Stock by over 1.3 million shares.  Motion Ex. 3 ("COPIC's
Delaware Verified Complaint"), ¶¶ 20–26.  COPIC alleged that the Debtor issued additional
shares of Preferred Stock pursuant to these amendments, which had the effect of diluting
COPIC's share of outstanding Preferred Stock from approximately 79.3% to approximately
25.2%.  COPIC's Delaware Verified Complaint ¶ 26.

2. Prepetition Litigation Between the Parties

On December 20, 2019, COPIC and the Noteholders filed complaints against the Debtor
in the District Court for the City and County of Denver, Colorado (the "Denver Court")
captioned *COPIC Insurance Company, et al. v. Certa Dose, Inc.*, 2019CV34850 (the "Denver
Note Action").  Through the Denver Note Action, COPIC and the Noteholders sought to recover
principal and interest, in an amount not less than $3,665,000, that they claimed the Debtor owed
pursuant to the Convertible Notes.  Motion ¶ 1.

On January 27, 2020, the Debtor initiated an action in the Supreme Court of the State of
New York, Queens County, Commercial Division (the "NY State Court") captioned *Certa Dose,
Inc. vs. COPIC et al.*, Index No. 720576/2019 (the "NY Action") against COPIC, the
Noteholders, John Blood, who is the Debtor's former chief financial officer and chief operating
officer, and other parties.  Motion Ex. 13.  The Debtor alleged, among other things, that certain
defendants made a hostile takeover attempt of the Debtor in the summer of 2019 and made steps
to attempt to force a sale of the Debtor in October 2019.  *Id*.  The Debtor alleged that defendants
Mr. Rubin, Dr. Hoffenberg, Mr. Blood, Cooley LLP, Michael L. Platt, and Kelly Bartling
breached fiduciary duties, and that COPIC, along with additional specified defendants, aided and
abetted the breach of fiduciary duties.  *Id*.  The Debtor also alleged that all defendants breached
the implied covenant and duty of good faith and fair dealing and breached all securities
instruments and other agreements in which the respective defendants are parties with the Debtor.
*Id*.  The Debtor further raised claims of fraud, conversion, and legal malpractice, and subjected
the defendants to claims for amotion and disgorgement of their stock and shares.  *Id.*  On

October 20, 2020, the NY State Court dismissed the NY Action as against COPIC, Mr. Rubin, and Dr. Hoffenberg on personal jurisdiction and forum non conveniens grounds.  Motion Ex. 29. On October 20, 2020 and October 21, 2020, the NY State Court dismissed the NY Action as against the remaining Noteholders on personal jurisdiction grounds.  Motion Exs. 30–31.

On November 4, 2020, Daniel Hoffman, a former employee and director of the Debtor, filed a lawsuit against Dr. Hernandez and the Debtor in the Denver Court, Case Number 2020CV33739 (the "Hoffman Action").  *See* Motion Ex. 32 (the "Hoffman Action Motion to Compel Arbitration").  The Hoffman Action involves, among other things, disputes over Mr. Hoffman's compensation and claims against the Debtor.  *Id.*  On January 7, 2021, the Debtor moved to compel arbitration and the District Court granted the Debtor's motion. Motion ¶ 14; *see also* Hoffman Action Motion to Compel Arbitration.  The arbitration is currently pending at the Denver, Colorado offices of JAMS, Case ID 27352 and stayed by this Chapter 11 case. Hoffman Action Motion to Compel Arbitration; Reply Ex. 15, ¶ 2.  The arbitrator, Hon. C. Scott Crabtree (Ret.), is located in Denver, Colorado.  Sept. 22 Tr. at 170:5–7.

On December 23, 2020, pursuant to a clause in the Debtor's December 2, 2020 amendment to its certificate of incorporation, the Debtor initiated internal amotion and disenfranchisement proceedings against COPIC for actions in bad faith toward the Debtor or other shareholders or actions aiding and abetting a breach of a director or officer's fiduciary duties toward the Debtor.  COPIC's Delaware Verified Complaint Exs. E–F.  In the amotion and disenfranchisement proceedings, the Debtor alleged similar charges and facts as those in the NY Action.  *Id.* at Ex. F.  As a result of the proceedings, on December 31, 2020, the Debtor adopted an action by written consent of its stockholders to disenfranchise COPIC of all of its shares in the Debtor, purporting to cause COPIC to forfeit the shares.  *Id.* at Ex. G.

On January 19, 2021, the Debtor initiated an action in the Denver Court against Mr. Blood captioned *Certa Dose, Inc. vs. John Blood,* Case No. 2021CV30193 (the "Blood Action"). Hernandez Venue Decl. ¶ 14, Ex. D.  The Debtor made similar factual allegations in the Blood Action as in the NY Action.  Hernandez Venue Decl. Ex. D; Motion ¶ 15.  The Debtor and Mr. Blood agreed to arbitrate the Debtor's claims in the Blood Action based upon an arbitration clause in Mr. Blood's employment agreement requiring arbitration in Denver, Colorado.  Motion

6

¶ 15.  In May 2021, the Debtor filed a demand for arbitration with an arbitration and alternative dispute resolution service located in Denver, Colorado.  *Id.*

On February 9, 2021, the Debtor initiated litigation captioned *Certa Dose, Inc. vs. COPIC Insurance Co. et al*., Case No. 2021CV30160, in the Colorado District Court of Jefferson County Colorado ("Jefferson County Action") against COPIC and the Noteholders.  Hernandez Venue Decl. Ex. C.  The claims asserted in the Jefferson County Action were similar to the claims asserted against COPIC and the Noteholders in the NY Action.  *Id.*; Motion ¶ 16.  On May 14, 2021, certain of the defendants filed motions to dismiss the Jefferson County Action or transfer venue to the Denver Court.  Motion ¶ 17, Ex. 35.  Prior to the Petition Date, the Debtor's responses to these motions were due on July 2, 2021.  *Id.* at ¶ 17.

In February 2021, COPIC filed COPIC's Delaware Verified Complaint in the Delaware Chancery Court ("Delaware Action") against Dr. Hernandez and the Debtor, alleging that Dr. Hernandez breached the Debtor's certificate of incorporation and his fiduciary duties to COPIC and to the Debtor and requesting that the court declare invalid certain actions taken by the Debtor's board, including the Debtor's 2019 and 2020 amendments to its certificate of incorporation.  Motion ¶¶ 18, 20.  On April 22, 2021, COPIC moved for partial summary judgment in the Delaware Action.  *Id.* at ¶ 20.  Prior to the Petition Date, oral arguments on the motion were scheduled for August 5, 2021.  *Id.*

On April 13, 2021, the Denver Court granted summary judgment in favor of COPIC and the Noteholders in the Denver Note Action and found the Debtor liable for the principal and interest owed under the Convertible Notes, plus other fees and costs.  *Id.* at ¶ 4.  Thereafter, on May 16, 2021, the Denver Court entered judgments for the Noteholders against the Debtor in the Denver Note Action (the "Denver Noteholder Judgments").  *Id.* at Exs. 9–11.  Specifically, the Denver Court entered judgments in favor of: Dr. Hoffenberg in the amount of $71,690.74; Dr. Synn in the amount of $93,035.68; Dr. Hurley in the amount of $602,336.77; Dr. Harrington in the amount of $31,004.98; Mr. Cole in the amount of $227,934.54; Ms. Lewis-Jenkins in the amount of $155,059.46; Dr. Fleishman in the amount of $264,497.58; and Dr. Clarke in the amount of $292,148.72.  *Id.* at Ex. 9–10.  The Denver Court also entered a judgment in the amount of $1,847,271 for Ms. Driscoll, as Trustee of the 2015 LFD III GRAT-TRUST U/A

7

8.26.15; Dr. Fisher; Mr. Cowan; and Mr. Mayer, but determined that additional attorneys' fees and costs for such Noteholders would be handled by separate order. *Id.* at Ex. 11.

The Debtor filed voluntary petitions for chapter 11 relief two weeks after the date of entry of the Denver Noteholder Judgments. As of the date hereof, the Denver Court has not issued a monetary judgment in favor of COPIC. Motion ¶ 8. The Denver Note Action also continues to be pending for the purpose of determining the further judgment on attorneys' fees and costs. Reply Ex. 3 (the "Cowan Decl."), ¶ 2. In COPIC's proposed final judgment order, COPIC requests that the Denver Court award it $1,782,842.21 in principal and interest on the Convertible Notes, plus accruing interest, and $130,687.30 in attorneys' fees, plus accruing interest. Motion Ex. 12. The Denver Note Action is not the subject of any pending appeal. *Id.* at p. 9.

In a declaration filed by the Debtor, Dr. Hernandez has admitted that "[t]here is no question that but for the Debtor's dispute with Copic, the Debtor would not have been forced to commence its bankruptcy case." Second Suppl. Hernandez Venue Decl. ¶ 20.

**C. The Debtor's Capital Structure**

Dr. Hernandez is the only secured creditor of the Debtor. In June 2020, SBA acquired a first lien security interest on all of the Debtor's assets as collateral for a loan in the principal amount of $150,000. *Amended Declaration Pursuant to Local Rule 1007-2 and in Support of First Day Motions* [ECF No. 12], ¶ 8. Post-petition, the SBA assigned its interests with respect to its secured claim to Dr. Hernandez. *See Sixth Interim Order Granting Motion Authorizing the Use of Cash Collateral* [ECF No. 113], ¶ 6; Second Suppl. Hernandez Venue Decl. ¶ 17.

Dr. Hernandez also holds a second lien security interest on all of the Debtor's assets on account of a $77,000,000 secured claim arising from a November 1, 2020 settlement agreement with the Debtor (the "Hernandez Secured Claim"). *See* ECF No. 1, Ex. A. COPIC disputes the validity of the Hernandez Secured Claim. *See* Reply ¶ 15 ("Dr. Hernandez's alleged lien against substantially all of the Debtor's assets is highly suspect and will almost certainly be avoided as a preference or fraudulent conveyance under 11 U.S.C. §§ 547 and 548.").

### D. Locations of the Debtor's Headquarters

#### 1. The Welton Address

For a period of time until February 2018, the Debtor operated out of a location in San Antonio, Texas.  Sept. 28 Tr. at 71:10–18; Sept. 21 Tr. at 27:24–25; Sept. 22 Tr. at 197:19–198:3.  Thereafter, until about December 2019, the Debtor operated from office space located within COPIC's headquarters in Colorado.  Transcript of Deposition of Patricia Golkowski on September 8, 2021 (the "Golkowski Dep."), 26:23–27:16, 27:21–24; Sept. 28 Tr., 71:10–18; First Suppl. Hernandez Venue Decl. ¶ 5.  That office was located at 7351 E. Lowry Blvd., Denver, Colorado.  First Suppl. Hernandez Venue Decl. ¶ 5.

In January 2020, after the Debtor left its space at COPIC's headquarters, the Debtor began renting a four (4) person physical office in a shared office suite located at 2590 Welton Street, Denver, Colorado (the "Welton Address").  *Id.*; Golkowski Dep. 28:7–14.  The monthly user fee for the Welton Address was $1,100.00 per month, and the term of the arrangement ran for 12 months, through January 1, 2021.  First Suppl. Hernandez Venue Decl. Ex. B.  The Debtor's employees used the physical office in January and February 2020.  Sept. 22 Tr. at 144:8–18.  However, from the commencement of the business shut-down resulting from the COVID-19 pandemic onwards, none of the employees of the Debtor worked from the Debtor's Welton Address.  Golkowski Dep. 29:9–11.  Consequently, the Debtor and the lessor for the Welton Address entered into an agreement that in May 2020 converted the Debtor's arrangement for the Welton Address into a virtual membership.  First Suppl. Hernandez Venue Decl. Ex. C.

The Debtor presently maintains the Welton Address as the Debtor's address of record. *Id.* at ¶ 6.  The monthly user fee pursuant to the Welton Address' virtual membership agreement is $75.00 per month, and the term of the agreement runs month-to-month.  *Id.* at Ex. C.  The agreement includes the following terms:

> This agreement includes a virtual membership to Craft Coworking.  This membership includes: Free use of mailing address, 2590 Welton Street, Suite 200, Denver, CO 80205, option of virtual mail service (with permission, Craft Coworking will scan any mail received to your email), member rates for any additional services purchase.  […] Members understand that access to Craft Coworking is not included in this virtual membership without purchase of a day pass, meeting room reservation, or coworking membership package.  Any guest

must purchase a coworking membership, day pass, or meeting room reservation to
have access to Craft Coworking.

*Id.*

The Welton Address serves the function of a P.O. box, where any mail received at that

address is scanned and emailed to the Debtor's employees.  Golkowski Dep. 28:7–29:2, 91:3–14.

None of the Debtor's employees commute to the Welton Address or conduct any business there.

*Id.* at 29:9–12.  The Debtor does not have a physical cubicle or workspace at the Welton

Address.  *Id.* at 91:15–23.

Between 2020 and 2021, the Debtor used the Welton Address as its address on forms that

the Debtor completed for, among other things: its April 13, 2021 request for an automatic

extension to file its 2020 New York City tax return (COPIC Ex. 7; Golkowski Dep. 107:17–

108:3); a Paycheck Protection Program loan filed with the SBA (COPIC Ex. 10; Sept. 21 Tr. at

32:9–13); its establishment registration and device listings with the FDA (COPIC Exs. 63–65;

Sept. 21 Tr. at 72:14); its license agreement with Janssen (COPIC Ex. 13; Sept. 21 Tr. at 48:13–

17); a June 30, 2021 periodic report filed with the Colorado Secretary of State (COPIC Ex. 8).

In each of the UCC financing statements that the Debtor filed with the Colorado Secretary of

State, Delaware Department of State, and New York State Division of Corporations with respect

to the Hernandez Secured Claim, the Debtor listed the Welton Address as its mailing address.

*Supplemental Declaration of Caleb S. Hernandez* [ECF No. 26], Exs. C–E.  Such was the case as

well for a UCC financing statement filed in Colorado for SBA's lien on the Debtor's assets.

Motion Ex. 37.

In an August 1, 2021 press release announcing its entry into a contract with Vizient Inc.,

the Debtor stated the location of the news to be in Denver and listed the Welton Address on the

webpage.  Sept. 21 Tr. at 28:13–29:12.  The Debtor continues to maintain the Welton Address as

its address on its website.  *Id.* at 29:13–18.

In the Hoffman Action Motion to Compel Arbitration, the Debtor asserted that it "is a

company headquartered in Denver, Colorado."  Hoffman Action Motion to Compel Arbitration

at 2.

With respect to why the Debtor maintains the Welton Address as its address of record in

light of its virtual function, Dr. Hernandez stated in a declaration that "[t]he process for changing

10

the Debtor's address to New York for all of these filings is a labor-intensive, time-consuming and costly." Second Suppl. Hernandez Venue Decl. ¶ 8. The Debtor does not plan to change its address of record in the near future. *Id.*

## 2. The JLABS Address

In June 2018, the Debtor was awarded space in the office of an affiliate of J&J known as JLABS (the "JLABS Address"). Sept. 22 Tr. at 199:8–20. The JLABS Address is located at 101 Avenue of the Americas, New York, NY 10013. *Id.* at 31:23–25. The license agreement for the JLABS Address was entered into on May 28, 2018 and has been amended to extend its term through December 31, 2021. Second Suppl. Hernandez Venue Decl. ¶ 16, Ex. D. The Debtor has maintained its space at the JLABS Address through the present. *Id.* at ¶ 13. The Debtor asserts that the JLABS Address is its only physical office. *Id.* at ¶ 14 ("[The JLABS Address] is the only location in the world where Certa Dose maintains a physical office[…]"). The Debtor further asserts that Dr. Hernandez makes all business and managerial decisions from the JLABS Address. Objection ¶ 16. Dr. Hernandez testified that he "travels to the Debtor's office in New York City on a daily basis." Hernandez Venue Decl. ¶ 4.

Mr. Hoffman testified that the Debtor's workspace at the JLABS Address consists of a single desk. Sept. 22 Tr. at 142:1–12. Dr. Hernandez described the license agreement to be for the use of a workstation. First Suppl. Hernandez Venue Decl. ¶ 6. Dr. Hernandez has also described the Debtor's space at the JLABS Address as an "office" and has stated that the location includes meeting spaces for business development and communications capability resources, as well as on-site business functions support personnel. Second Suppl. Hernandez Venue Decl. ¶¶ 13–14.

Since the Petition Date, the Debtor has used the JLABS Address to hold meetings with potential post-petition investors in the Debtor. Sept. 28 Tr. at 57:10–17. According to Dr. Hernandez's testimony, Dr. Hernandez has held at least three (3) meetings with potential investors at the JLABS Address. *Id.* Dr. Hernandez testified that beginning on October 3, 2021, J&J would require full in-person participation at the JLABS Address. Second Suppl. Hernandez Venue Decl. ¶ 14.

11

### E. Locations of the Debtor's Employees

The Debtor currently has three full-time employees: Dr. Hernandez, in-house counsel Josue Hernandez, and sales manager Chris Karageorge. Golkowski Dep. 85:13–20. As of the Petition Date, the Debtor also employed Patricia Golkowski as the Debtor's controller. *Id.* at 13:21–15:21, 21:19–23. On September 7, 2021, Ms. Golkowski's employment terminated by letter of resignation. *Id*. at 21:19–22:13.

Dr. Hernandez is the president, chief executive officer, chief science officer, and chief medical officer of the Debtor. Sept. 28 Tr. at 71:19–23; Hernandez Venue Decl. ¶ 1; First Suppl. Hernandez Venue Decl. 1. Dr. Hernandez manages the Debtor's product and licensing businesses, as well as the creation of new products and other business decisions. Sept. 28 Tr. at 36:21–37:1. Additionally, Dr. Hernandez maintains non-accounting-related books and records for the Debtor and handles matters that arise with respect to this Chapter 11 case. *Id.* at 32:3–23, 54:22–55:3. Dr. Hernandez has resided in New York City since June 2018. Second Suppl. Hernandez Venue Decl. ¶ 13; Sept. 22 Tr. at 200:4–13; Sept. 28 Tr. at 50:7–11; Debtor Ex. 202–03. Dr. Hernandez has testified that "[i]f the Court were to transfer the Chapter 11 case to Colorado, I would be traveling to the state for the sole purpose of prosecuting the Debtor's Chapter 11 case. There is no other business purpose of the Debtor for me to travel to Colorado." Second Suppl. Hernandez Venue Decl. ¶ 19.

Mr. Josue Hernandez, who is Dr. Hernandez's brother, resides in Denver, Colorado. As the Debtor's in-house counsel, he currently represents the Debtor in the various civil actions. Motion ¶ 40. Though he resides in Colorado, Mr. Hernandez works remotely and does not commute to the Welton Address. Second Suppl. Hernandez Venue Decl. ¶ 12.

Mr. Karageorge is presently in charge of sales of the Debtor and maintains the Debtor's sales records. Sept. 28 Tr. at 36:5–16. Mr. Karageorge resides in Ohio. Sept. 22 Tr. at 206:14–207:3.

As former controller for the Debtor, Ms. Golkowski handled the Debtor's accounting records, bills, taxes, registrations, and accounts reconciliations but was not involved in any strategic business decisions or sales efforts. Golkowski Dep. 24:15–25:16; Sept. 28 Tr. at 36:17–37:9. The Debtor's schedules and statements list Ms. Golkowski as the sole accountant and bookkeeper for the Debtor. ECF No. 73 (the "Amended Schedules"); Sept. 22 Tr. at 37:13–

12

38:12.  Ms. Golkowski resides in Denver, Colorado.  Golkowski Dep. 7:17–24, 20:22–21:2;
Sept. 22 Tr. at 134:9–11.

### F.  Locations of the Debtors' Operations

With respect to the Debtor's business, the Debtor made only one product sale to a
customer in Colorado in the six months ending September 28, 2021 for $10.  Second Suppl.
Hernandez Venue Decl. ¶ 11.  According to the Debtor's books and records, as of the Petition
Date, Cardinal Health owed between $90,000 to $140,000 in accounts receivable to the Debtor
on account of product sales.  First Suppl. Hernandez Venue Decl. ¶ 3.  The Debtor's
manufacturers, SMC Ltd. and Plastech Engineering, manufacture the Debtor's products in
Massachusetts and Wisconsin, respectively.  *Id.* at ¶ 16; Sept. 28 Tr. at 29:2–6.  Cardinal Health
is located in Tennessee.  First Suppl. Hernandez Venue Decl. ¶¶ 3, 16.  Dr. Hernandez testified
that none of the physical processes that occur between the Debtor's manufacturers, Cardinal
Health, and the distributors take place in Colorado.  *Id.* at ¶ 16.

The majority of the Debtor's revenue in 2019 and 2020 was generated from the Debtor's
agreements with J&J.  Second Suppl. Hernandez Venue Decl. ¶ 15.  Dr. Hernandez testified that
J&J is the Debtor's most significant business relationship and that the nexus of the relationship is
the JLABS Address.  *Id.* at ¶ 11; *see also* Sept. 28 Tr. at 34:16–35:9.  ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Dr. Hernandez meets with J&J's New York-based representatives weekly in Manhattan when the
individuals are not working remotely.  Second Suppl. Hernandez Venue Decl. ¶ 14.

In addition to the business with J&J, Dr. Hernandez testified that he engages with
existing and prospective business partners in New York and New Jersey and takes "frequent
weekly trips" to New Jersey.  Hernandez Venue Decl. ¶ 5–6.  As one offered exemplary result of
these efforts, post-petition, the Debtor entered into a healthcare partnership agreement which
makes the Debtor's products "preferred products" in over 5,000 healthcare systems nationwide.
*Id.* at ¶ 6.  Dr. Hernandez testified that all of the discussions involving this agreement and the
key persons involved were located in and around New York City.  *Id.*

13

21-11045-lgb    Doc 147    Filed 11/04/21    Entered 11/04/21 14:21:30    Main Document
Pg 15 of 28

The Debtor has retained the New York-based law firm of Ortiz & Ortiz, L.L.P. as its bankruptcy counsel. *Amended Application for Entry of an Order Pursuant to Bankruptcy Code Section 327(a) Authorizing the Employment of Ortiz & Ortiz L.L.P. as Debtor's Counsel* [ECF No. 16] (the "Ortiz Retention Application"); *Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Employment of Ortiz & Ortiz L.L.P. as Attorneys for the Debtor* [ECF No. 57]. The Debtor has also engaged, subject to the Court's approval, the New York-based firm of Huebscher & Co. as its financial advisor. Second Suppl. Hernandez Venue Decl. ¶ 16; *Application for Entry of an Order Authorizing the Employment and Retention of Huebscher & Co., Effective Nunc Pro Tunc to September 12, 2021, as the Debtor's Financial Advisor* [ECF No. 117] (the "Huebscher Retention Application"). As discussed in Section I.D *supra*, Dr. Hernandez testified that he has met in-person with potential post-petition investors in Manhattan, at the JLABS Address. Sept. 28 Tr. at 57:10–17.

### G. Locations of the Debtor's Assets

Due to the nature of its business, the Debtor does not own much physical inventory nor equipment. *See* Sept. 28 Tr. at 31:1–8. Much of the tangible assets that the Debtor does own, including its pre-finished and finished goods, is stored at the facilities of SMC Ltd., Plas-Tech Engineering, Cardinal Health, and Sterling Storage, each located in Massachusetts, Wisconsin, Tennessee, and Massachusetts, respectively. First Suppl. Hernandez Venue Decl. ¶ 8; Second Suppl. Hernandez Venue Decl. ¶ 12. Debtor owns, and does not lease, three label applicators. First Suppl. Hernandez Venue Decl. ¶ 10. Two of the machines are located in Massachusetts and one machine is located in Wisconsin. *Id.* The Debtor has completely depreciated the value of the machines on its books and no longer assigns a value to these equipment assets. *Id.* The Debtor maintains a storage unit in Colorado with some old laptops, old syringes, and marketing materials remaining from the Debtor's former office in COPIC's headquarters. *Id.* at ¶ 15.

The Debtor states the book value of its patents, licenses, trademarks, and intellectual property to be either approximately $902,000, *id.* at ¶ 11, or approximately $1,032,800, Amended Schedules. The patents and trademarks are either registered or pending with: U.S.A, Brazil, Canada, the European Patent Office, Hong Kong, Japan, Australia, China, India, Europe, Republic of Korea, Mexico, and the Patent Cooperation Treaty. First Suppl. Hernandez Venue Decl. ¶ 11. The Debtor's design history files and other records are kept in a quality management

system maintained by Greenlight Guru.  Sept. 28 Tr. at 32:3–33:10.  Greenlight Guru is headquartered in Indianapolis, Indiana.  First Suppl. Hernandez Venue Decl. at ¶ 4.

### H.  Locations of COPIC and the Noteholders

The majority of COPIC's business activities take place in Colorado, and the majority of COPIC's premium revenue is derived from Colorado sources.  Rubin Decl. ¶ 3.  COPIC does not maintain a physical presence in the State of New York and has not engaged, or attempted to engage, in the business of insurance in New York.  *Id.* at ¶ 4.  COPIC's corporate headquarters are located in Denver, Colorado.  Sept. 22 Tr. at 31:6–15.

Of the thirteen Noteholders, eleven reside in Colorado.  Amended Schedules.  The remaining two reside outside of both New York and Colorado.  *Id.*  Mr. Cowan resides in Illinois.  *Id.*; *see also* Sept. 22 Tr. at 105:17–18.  Ms. Fisher resides in Pennsylvania.  Sept. 22 Tr. at 57:16–18.  Both Mr. Cowan and Ms. Fisher have filed declarations expressing their requests that venue in this case be transferred to the District of Colorado.  Cowan Decl. ¶ 10; Reply Ex. 4, ¶ 10.

### I.  Locations of Other Parties in Interest

#### 1.  Daniel Hoffman

Mr. Hoffman lives in New York County in the State of New York.  Sept. 22 Tr. at 125:16–21.  He currently works in Westminster, Colorado and travels between New York and Colorado for business.  *Id.* at 139:2–4.  Mr. Hoffman testified that he plans on living in Colorado in the beginning of the upcoming year for personal and family reasons.  *Id.* at 139:4–8.

#### 2.  John Blood

As of January 19, 2021, it was the Debtor's understanding that Mr. Blood was a resident of the state of Colorado.  Hernandez Venue Decl. Ex. D.  Dr. Hoffenberg testified at the hearing that Mr. Blood has never moved to New York City in connection with the Debtor's relationship with J&J.  Sept. 23 Tr. at 51:9–12.

#### 3.  Additional Witnesses with Respect to Prepetition Conduct

At the time that the Debtor took actions to convert certain of the Convertible Notes into Preferred Stock, the Debtor retained lawyers from the firm of Husch Blackwell who were not based in Colorado.  Sept. 21 Tr. at 123:16–24.  Counsel from the law firm of Cooley LLP

provided outside corporate advice to the Debtor through October 2019 and was located in Colorado. *Id.* at 127:22–129:1. COPIC's counsel through October 2019 was located in Colorado. *Id.* at 131:12.

Mr. Hoffman testified that the majority of witnesses that will be needed for the Hoffman Action are in Colorado, but there are also a significant number of witnesses who are not located in Colorado, including Dr. Hernandez. Sept. 22 Tr. at 168:18–169:12.

### 4. Contract Counterparties

The Debtor's schedules list fifteen executory contract and unexpired leases. Amended Schedules. The counterparties to these contracts include many of the entities discussed *infra*, including J&J, Janssen, SMC Ltd., and Cardinal Health. *Id.* They also include the lessor of the Debtor's location at the Welton Address and the licensor of the Debtor's location at the JLABS Address. *Id.* Of the fifteen contract counterparties, two are located in the District of Colorado, two are located in the Southern District of New York, and eleven are located elsewhere. *Id.* None of the documents pertaining to the contracts that were admitted into evidence contain forum selection clauses for the District of Colorado or the Southern District of New York. COPIC Exs. 13, 66; Debtor Exs. 217, 265–67, 269–81.

### 5. Unsecured Creditors

The Debtor's schedules list thirteen unsecured creditors exclusive of COPIC, the Noteholders, and Mr. Hoffman. Amended Schedules. The Debtor estimates these unsecured creditors' claims to be approximately $471,608.68 in the aggregate. *Id.* Of such creditors, three are located in the District of Colorado, none are located in the Southern District of New York, and ten are located elsewhere. *Id.* The largest two unsecured creditors that are not Noteholders, Pacific Western Bank and Cooley LLP, are owed approximately $210,000.00 and $144,000.00 respectively and are both located in California. *Id.*

### 6. Equity Holders

According to the Debtor's records, Dr. Hernandez and Mr. Hoffman are the two largest shareholders of the Debtor, with each respectively owning approximately 63.4% and 3.8% of the Debtor. First Suppl. Hernandez Venue Decl. Ex. E. Of the remaining shareholders, fourteen

reside or are located in the District of Colorado, one resides in the Southern District of New York, and fifteen reside or are located elsewhere. *Id.*

The Debtor has submitted declarations of three shareholders of the Debtor who have expressed their support for venue to remain in the Southern District of New York. Hernandez Venue Decl. Ex. A. Such shareholders collectively hold approximately 3.6% of the outstanding shares of the Debtor. *Id.*; First Suppl. Hernandez Venue Decl. Ex. E. Two reside in Texas and one resides in New York. *Id.*

## II.    <u>CONCLUSIONS OF LAW</u>

The Court now turns to the questions of law addressed in the Motion. The Southern District of New York has always respected a debtor's choice of venue. A debtor's choice of forum is entitled to great weight if venue is proper pursuant to section 1408. *See, e.g.*, *In re Enron Corp.* (*Enron II*), 284 B.R. 376 (Bankr. S.D.N.Y. 2002). The Second Circuit has stated that the district in which the underlying bankruptcy case is pending "is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." *Gulf States Exploration Co. v. Manville Forest Prod. Corp.* (*In re Manville Forest Prod. Corp.*), 896 F.2d 1384, 1391 (2d Cir. 1990). A movant seeking transfer of a bankruptcy case to a different venue bears the burden of proof by a preponderance of the evidence. *See id.* at 1390.

Section 1408 of Title 28 of the United States Code is the general venue statute that controls where a bankruptcy case may be filed. Section 1408 provides that a bankruptcy case may be filed in the district in which the debtor retains a domicile, residence, principal place of business or assets, or in which there is a pending bankruptcy case filed by the debtor's affiliate, general partner, or partnership. The concept of venue is based in fairness and convenience. It is fairness, rather than geography, that has been and should continue to be the key factor in determining the appropriateness of venue. *See In re Patriot Coal Corp. (In re Patriot Coal)*, 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012). COPIC does not move for transfer of venue under Section 1408. *See* Motion ¶ 30 ("While COPIC believes that venue is not proper in New York under 28 U.S.C. § 1408 […] at this time COPIC only seeks relief under 28 U.S.C. § 1412.").

Instead, COPIC seeks relief in the Motion pursuant to Section 1412 of Title 28 of the United States Code and Rule 1014(a) of the Federal Rules of Bankruptcy Procedure.[2]  In contrast to Section 1408 which provides for where a case may be properly commenced, Section 1412 authorizes a bankruptcy court to transfer venue to "another district, in the interest of justice or for the convenience of the parties."  28 U.S.C. § 1412; *see also Enron II*, 284 B.R. at 386; *In re Greenhaven Assocs., Ltd.*, 93 B.R. 35, 40 (Bankr. S.D.N.Y. 1988).  Section 1412 is written in the disjunctive, meaning that each of the two prongs—"in the interest of justice" or "for the convenience of the parties"—constitutes an independent ground for transferring venue.  *See In re Asset Resol. LLC*, 2009 Bankr. LEXIS 3711 at *6 (Bankr. S.D.N.Y. Nov. 24, 2009).

The Second Circuit has found that "[t]he 'interest of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis. It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness . . . ."  *In re Manville Forest Prod. Corp.*, 896 F.2d at 1391.  Ultimately, "[t]he decision to transfer venue is within the discretion of the court, as evidenced by the use of the permissive 'may' in section 1412[.]"  *In re TS Emp., Inc.*, No. 15-10243 (MG), 2015 Bankr. LEXIS 2747, at *9 (Bankr. S.D.N.Y. Aug. 18, 2015) (unpublished decision) (citing *Enron Corp. v. Arora* (*Enron III*), 317 B.R. 629, 650 n. 8 (Bankr. S.D.N.Y. 2004)).

Courts in this district apply a preponderance of the evidence standard when determining whether the interest of justice and/or the convenience of the parties warrant transfer of venue.  *See, e.g.*, *In re Manville Forest Prods. Corp.*, 896 F.2d at 1390–91; *AZZ, Inc. v. S. Nuclear Operating Co. (In re Westinghouse Elec. Co. LLC)*, No. 17-10751 (MEW), 2019 U.S. Dist. LEXIS 50311, at *17–18 (S.D.N.Y. Mar. 25, 2019) (unpublished opinion).  Ensuring that parties do not abuse the bankruptcy court system, by filing in a district for the purpose of "forum

---

[2] Section 1014(a) of the Federal Rules of Bankruptcy Procedure provides that the court may, upon notice and hearing,  (1) "transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties" where the case is filed in the proper district and (2) "dismiss the case or transfer it to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties if the case is filed in improper district."  FED. R. BANKR. P. 1014(a).  A court only needs to find that one of the stated grounds for transfer of venue are present.  *See, e.g.*, *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 620 B.R. 456, 461 (S.D.N.Y. 2020) (citing *ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 257 (S.D.N.Y. 2017)).

shopping," is also grounds to transfer venue in the interest of justice. *In re Eclair Bakery, Ltd.*, 255 B.R. 121, 142 (Bankr. S.D.N.Y. 2000) (holding that the debtor's filing in one venue because of previous adverse rulings in a different venue warranted transfer); *see In re Patriot Coal*, 482 B.R. at 739 (citing *In re Eclair Bakery, Ltd.*, 255 B.R. at 142).

In this Case, there was no forum shopping as the Debtor has had some operations and an office in New York since 2018 and at the time of its Chapter 11 filing, its founder, chief executive officer, and majority shareholder was for several years (and still is) located in New York. As this Court has previously noted, either New York or Colorado would have been an appropriate venue for the Case. So, the Court finds that venue is proper under Section 1408 of Title 28 of the United States Code.

For COPIC to prevail on the Motion, the facts must show that the interest of justice and/or the convenience of the parties strongly favor transferring venue. *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010); *In re Westinghouse Elec. Co. LLC*, 2019 U.S. Dist. LEXIS 50311 at \*17–18 (applying *N.Y. Marine & Gen. Ins. Co.* to 28 U.S.C. § 1412).

## A. Interest of Justice

When considering the interest of justice, courts consider a multitude of factors when analyzing transfer of venue, specifically whether the transfer will "promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness." *See, e.g.*, *In re Manville*, 896 F.2d at 1391; *Deutsche Oel & Gas S.A. v. Energy Cap. Partners Mezzanine Opportunities Fund A, LP*, No. 19-CV-11058 (RA), 2020 U.S. Dist. LEXIS 181000, at \*39–40 (S.D.N.Y. Sep. 30, 2020) (unpublished opinion). Factors considered in this analysis are as follows:

> (i) transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) the interests of judicial economy would be served by the transfer; (iii) the parties would be able to receive a fair trial in each of the possible venues; (iv) either forum has an interest in having the controversy decided within its borders; (v) the enforceability of any judgment would be affected by the transfer; and (vi) the plaintiff's original choice of forum should be disturbed.

*In re TS Emp., Inc.*, 2015 Bankr. LEXIS 2747, at \*11 (quoting *In re Enron Corp.* ("*Enron I*"), 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002) (internal quotations omitted)); *In re Dunmore Homes,*

*Inc.*, 380 B.R 663, 672 (Bankr. S.D.N.Y. 2008).  "In addition, courts consider the ability of interested parties to participate in the proceedings and the additional costs that might be incurred to do so."  *In re TS Emp., Inc.*, 2015 Bankr. LEXIS 2747, at *11 (quoting *In re Dunmore Homes, Inc.*, 380 B.R. at 672) (internal quotations omitted).

Courts have held that the most important of the factors is the economic and efficient administration of the estate.  *See Enron I*, 274 B.R. at 343.  Courts have interpreted that factor as "the need to obtain post-petition financing, the need to obtain financing to fund reorganization and the location of the sources of such financing and the management personnel in charge of obtaining it."  *Huntington Nat'l Bank v. Indus. Pollution Control, Inc.* (*In re Indus. Pollution Control, Inc.*), 137 B.R. 176, 182 (Bankr. W.D. Pa. 1992); *In re Int'l Filter Corp.*, 33 B.R. 952, 956 (Bankr. S.D.N.Y. 1983).

The Debtor requires post-petition financing.  *See Debtor's Emergency Motion for (1) an Interim Order Authorizing the Debtor to Obtain Post-petition Interim Financing from Dr. Caleb S. Hernandez (the "Lender") and Granting the Continued Use of Cash Collateral; (2) Scheduling a Hearing on the Final Request for the Use of Cash Collateral; (3) Scheduling a Hearing on the Request for a Final Order Approving Post-petition Financing; (4) Authorizing the Prior Loans to the Debtor from the Lender; and (5) Granting Such Other and Further Relief as is Deemed Appropriate* [ECF No. 122]; *Interim Order Granting Debtor's Emergency Motion for (1) an Interim Order Authorizing the Debtor to Obtain Post-petition Interim Financing from Dr. Caleb S. Hernandez (the "Lender") and Granting the Continued Use of Cash Collateral; (2) Scheduling a Hearing on the Final Request for the Use of Cash Collateral; (3) Scheduling a Hearing on the Request for a Final Order Approving Post-petition Financing; (4) Authorizing the Prior Loans to the Debtor from the Lender; and (5) Granting Such Other and Further Relief as is Deemed Appropriate* [ECF No. 126].

Since the Petition Date, the Debtor has used the JLABS Address to hold meetings with potential post-petition investors in the Debtor.  Sept. 28 Tr. at 57:10–17.  According to Dr. Hernandez's testimony, Dr. Hernandez has held at least three meetings with potential investors at the JLABS Address.  *Id*.  Additionally, Dr. Hernandez handles matters that arise with respect to the Case on behalf of the Debtor.  *Id.* at 52:6–55:16.  Thus, Dr. Hernandez, along with the Debtor's professionals, will be in charge of obtaining such financing.  Dr. Hernandez has

testified that "[i]f the Court were to transfer the Chapter 11 case to Colorado, I would be traveling to the state for the sole purpose of prosecuting the Debtor's Chapter 11 case. There is no other business purpose of the Debtor for me to travel to Colorado."  Second Suppl. Hernandez Venue Decl. ¶ 19.  Accordingly, the standard of economic and efficient administration of the estate weighs in favor of venue remaining in New York.

The next factor that must be considered is whether the interests of judicial economy would be served by the transfer.  There are currently two stayed arbitration proceedings pending in Colorado with former employees of the Debtor, one being the Hoffman Action and the other being the Blood Action.  There are two stayed litigations pending in Colorado, one being the Denver Note Action commenced by COPIC and the Noteholders where the Denver Court has entered judgment for many, though not all, of the plaintiffs and has not yet ruled with respect to legal fees and other costs, and the other being the Jefferson County Action commenced by the Debtor against COPIC and the Noteholders alleging a hostile takeover attempt of the Debtor in the summer of 2019 and steps to attempt to force a sale of the Debtor in October 2019 which litigation had not progressed very far as of the Petition Date.  There is also the stayed Delaware Action litigation pending in the Delaware Chancery Court commenced by COPIC against the Debtor and Dr. Hernandez alleging that Dr. Hernandez breached the Debtor's certificate of incorporation and his fiduciary duties to COPIC and to the Debtor and requesting that the court declare invalid certain actions taken by the Debtor's board, including the Debtor's 2019 and 2020 amendments to its certificate of incorporation.  The Colorado arbitrations and two Colorado litigations involve issues under Colorado law.

Mr. Hoffman is currently located in New York.  Sept. 22 Tr. at 125:16–21.  Mr. Hoffman testified that the majority of witnesses that will be needed for the Hoffman Action are in Colorado, but there are also a significant number of witnesses who are not located in Colorado, including Dr. Hernandez.  *Id.* at 168:18–169:12.

It is not clear from the testimony how much remains to occur in the Denver Note Action beyond entering judgment for COPIC and deciding the amount of legal fees and other costs to be awarded to the plaintiffs, but any remaining proceedings will involve attorneys located in Colorado.  The Jefferson County Court will involve a significant number of witnesses located in Colorado, *see* Sept. 21 Tr. at 169:25–171:2, as will the Blood Action and the Delaware Action.

However, if modification of the automatic stay were sought and granted, these arbitrations and litigations would proceed in the existing forum.  The Debtor has not sought to remove these actions to this Court and the time period for doing so has passed.  It is possible that some of the issues in the pending arbitrations and litigations will be resolved by this Court as part of the claims process.  Notwithstanding, this factor weighs in favor of the Movant.

The third factor is whether the parties would be able to receive a fair trial in each of the possible venues.  The answer is yes.  The United States Bankruptcy Court in the District of Colorado is equally as capable as this Court in terms of handling the Case and any ancillary litigation commenced by the parties.

The fourth factor is whether either forum has an interest in having the controversy decided within its borders.  Here, the facts support each forum's interests in having the Case decided within its borders.  The trial testimony is that the Debtor generates most of its revenue from its licensing business, whereby it licenses patents to pharmaceutical manufacturers.  Sept. 28 Tr. at 34:3–11.  Specifically, the majority of the Debtor's 2019 and 2020 revenue was generated from the Debtor's agreements with J&J, which the Debtor attends to in New York.  Second Suppl. Hernandez Venue Decl. ¶¶ 11, 15; *see also* Sept. 28 Tr. at 34:16–35:9.  The Debtor's only physical location is in New York.[3]  So, New York has a strong interest in the ongoing business of the Debtor, including any disposition of assets and taxes.  Colorado also has a strong interest in having the Case transferred to Colorado since the vast majority of unsecured creditors by amount owed reside in Colorado as do some of the equityholders and there are several litigations and arbitrations pending in Colorado which involve Colorado state law.

The fifth factor is whether enforceability of any judgment would be affected by the transfer of venue.  The answer is that it likely would not be.  The vast majority of the Debtor's assets are located outside of Colorado and possibly also outside New York.[4]  First Suppl. Hernandez Venue Decl. ¶¶ 8, 10; Second Suppl. Hernandez Venue Decl. ¶ 12.

The sixth factor of the analysis is whether the plaintiff's original choice of forum should be disturbed.  Courts look at whether the Debtor's interests will be harmed or whether the estate

---

[3] This Court finds that the virtual office in Colorado maintained by the Debtor is just that, virtual and not a physical location.

[4] It is possible that some or all of the intellectual property owned by the Debtor could be deemed to be within the jurisdiction of New York.

will suffer a diminution in value if venue is transferred. *See Dunmore*, 380 B.R. at 675. Dr. Hernandez provided the only testimony on this point. Dr. Hernandez testified that "[i]f the Court were to transfer the Chapter 11 case to Colorado, I would be traveling to the state for the sole purpose of prosecuting the Debtor's Chapter 11 case. There is no other business purpose of the Debtor for me to travel to Colorado." Second Suppl. Hernandez Venue Decl. ¶ 19.

Notwithstanding Dr. Hernandez's testimony, some of the Debtor's operations occur in Colorado since it has one employee that resides there, in-house counsel Josue Hernandez, and prior to Ms. Golkowski's resignation on September 7, more of the Debtor's operations occurred there. However, most of the Debtor's revenue is derived from patent licensing arrangements which have been taking place in New York and the Debtor's efforts to locate investors and financing have also been taking place in New York, in each case spearheaded by Dr. Hernandez. Second Suppl. Hernandez Decl. ¶¶ 11, 15; Sept. 28 Tr. at 34:16–35:9; 57:10–17. The evidence in the record demonstrates that the Debtor's interests may be harmed if venue is transferred to Colorado since Dr. Hernandez will have to spend less time in New York and at the JLABS office and more time traveling to and from Colorado.

Lastly, the Court has considered the forum selection clause argument made by COPIC. There is a question as to whether a forum selection clause applies in the context of filing a Chapter 11 case.[5] The existence of a valid forum selection clause is analyzed as part of the interest of justice inquiry. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 62 (2013); *ResCap Liquidating Tr. v. PHH Mortg. Corp.*, 518 B.R. 259, 267 (S.D.N.Y. 2014) (applying the forum selection analysis in *Atl. Marine Constr. Co.* to 28 U.S.C. § 1412).

With regards to core bankruptcy proceedings, some courts in the Southern District of New York have held that "the public interest in centralizing bankruptcy proceedings always outweighs the public and private interests in enforcing a forum-selection clause, unless the core proceeding is inextricably intertwined with non-core matters" while others have "balanced the public interest in centralizing a particular core proceeding in a bankruptcy court against the parties' legitimate expectations and the interest of justice in enforcing a forum-selection clause." *ResCap Liquidating Tr.*, 518 B.R. at 268 (collecting cases). This Court believes that the public

---

[5] This Court believes that a forum selection clause argument may be more persuasive in connection with venue for an adversary proceeding.

interest in centralizing bankruptcy proceedings generally outweighs the public and private interests in enforcing a forum selection clause. There are other unsecured creditors located outside of New York and Colorado and this Court does not know what each of their agreements with the Debtor provide in terms of forum selection clauses. The Court does know that of the contracts listed on Schedule G that contain forum selection clauses, none select New York nor Colorado. *See* Amended Schedules; COPIC Exs. 13, 66; Debtor Exs. 217, 265–67, 269–81. Accordingly, this Court will not enforce COPIC and the Noteholders' forum selection clauses in connection with the Debtor's choice of venue for the Case.

After applying the preponderance of the evidence standard and considering the factors set forth in the applicable case law, including the forum selection clauses in COPIC and the Noteholders' agreements with the Debtor, this Court finds that the Movant has not proven that the venue of the Case should be transferred in the interest of justice.

## B. Convenience of the Parties

When considering the convenience of the parties, courts in this district consider:

> (i) proximity of creditors of every kind to the court; (ii) proximity of the debtor; (iii) proximity of witnesses necessary to the administration of the estate; (iv) location of the assets; (v) economic administration of the estate; and (vi) necessity for ancillary administration if liquidation should result. Among these, the economic and efficient administration of the estate is the factor given the greatest weight.

*See, e.g.*, *In re TS Emp., Inc.*, 2015 Bankr. LEXIS 2747, at *11 (internal citation and quotation omitted); *Dunmore*, 380 B.R. at 672.

Economic administration of the estate "encompasses all of the factors considered under the convenience of the parties." *Enron II*, 284 B.R. at 395. "The central consideration to the 'economic and efficient administration of the estate' inquiry" is "whether the debtor-in-possession will be able to formulate a plan that is acceptable to all relevant parties[,]" which requires "an analysis of the facts surrounding the post-petition efforts of the debtor-in-possession." *Id.* (internal citation omitted); *see also Enron I*, 274 B.R. at 349 (holding that the forum "which would best serve the debtor's reorganization efforts" was the more economic and convenient forum).

Whether a confirmable plan of reorganization will be able to be formulated by the Debtor is uncertain. The vitriol which was evident in the testimony from Dr. Hernandez, COPIC's witnesses, Mr. Hoffman and the Noteholders is a result of two years of fighting among the parties. This could not be ignored by the Court and is quite concerning. Unless there is an investor who can pay all of the creditors in full in cash, settlements will need to be negotiated among these same parties concerning who will own and operate the company going forward in order for it to reorganize. Additionally, Dr. Hernandez's security interest that was acquired pursuant to the Settlement Agreement will likely be subject to challenge. The Court has expressed its concerns as to whether reorganization will be possible for the Debtor but, for purposes of the Motion, it will assume that formulation of a plan of reorganization is possible.

Assuming that it is possible for the Debtor to formulate a plan acceptable to all relevant parties, it will need financing to do so. This financing may come from Dr. Hernandez and/or new third party lenders/investors. To date, none of the other creditors of the Debtor have offered to provide financing for the Debtor. Such discussions and negotiations are more likely to occur in New York based on the facts that (a) numerous pharma/medical companies are located in the New York/New Jersey area, (b) New York is a financial center, and (c) Dr. Hernandez is located in New York. In addition, both the financial advisor for the Debtor, Mr. Huebscher, and the Debtor's bankruptcy attorney, Ms. Ortiz, are located in New York. *See* Huebscher Retention Application; Ortiz Retention Application. Moreover, Dr. Hernandez is the only current employee who has been appearing in this Court as a witness for the Debtor with respect to the Case and he is located in New York. Second Suppl. Hernandez Venue Decl. ¶ 13; Sept. 28 Tr. at 50:7–9. Accordingly, the economic administration of the estate would be better served by the Case remaining in New York.[6]

The Debtor has an office in New York and does not currently have a non-virtual office located in Colorado. Second Suppl. Hernandez Venue Decl. ¶¶ 13–14; Golkowski Dep. 91:3–23. The Debtor's chief executive officer is located in New York. Thus, New York is more convenient for the Debtor.

---

[6] The Court does not know if the costs to the estate would be less if a financial advisor and bankruptcy counsel in Colorado were to be retained by the Debtor and if so, whether those cost savings would offset the additional travel costs incurred by Dr. Hernandez if the Case were to be transferred. This argument was made but no evidence was submitted in support of it.

In contrast, Colorado is more convenient for the Noteholders and COPIC. *See, e.g.*, Reply Ex. 5, ¶¶ 9–10; Rubin Decl. ¶¶ 3–4, 19–20. With respect to other creditors, the only secured creditor is Dr. Hernandez who is located in New York. The majority of the Debtor's other unsecured creditors are located outside of New York and Colorado so it is unclear as to which would be a more convenient forum for them. Amended Schedules. Colorado is more convenient for the vast majority by dollar amount owed of the Debtor's unsecured creditors but not the Debtor's secured creditor and other unsecured creditors. Stockholders should also be included within the inquiry of proximity of creditors. *Enron II*, 284 B.R at 401. The equity holder list indicates that, based upon holdings, the majority stockholders currently reside in New York and based upon the number of equity holders, about half of the stockholders reside in Colorado and half reside elsewhere.[7] First Suppl. Hernandez Venue Decl. Ex. E. However, the proximity of creditors to the court alone is not a determinative factor. *Enron II*, 284 B.R. at 400.

Most of the Debtor's assets are not located in Colorado. Most of the tangible assets are located in Massachusetts and states other than Colorado or New York. First Suppl. Hernandez Venue Decl. ¶¶ 8, 10; Second Suppl. Hernandez Venue Decl. ¶ 12. With respect to the intangible assets, under applicable law, they could be deemed to be located where the Debtor is domiciled which is in Delaware or where the Debtor utilizes the intellectual property under licenses with other parties (New York, New Jersey, or elsewhere). Because of the nature and location of the Debtor's assets, this Court finds that, if an ancillary administration were required, Colorado would not have a strong interest in ancillary administration. It is unclear if New York would either except for the location of the company's chief executive officer. Thus, neither the location of the assets or the necessity for ancillary administration if liquidation would result supports transferring venue to Colorado.

With respect to the factor of the proximity of witnesses necessary for the administration of the estate, it appears that Dr. Hernandez will continue to be required to be a witness in the Case as may Mr. Huebscher with respect to financial issues of the Debtor. However, it is unclear what other litigation will occur before this Court. The Debtor did not seek to remove any of the pending actions in Delaware and Colorado to this Court before the deadline for removal passed.

---

[7] The Court notes that there are disputes as to the accuracy of the equity holder list.

Thus, none of that pending litigation will take place before this Court or the United States Bankruptcy Court in the District of Colorado if the Motion were to be granted.

There could be litigation brought before this Court with respect to the validity of Dr. Hernandez's secured claim which will involve Dr. Hernandez and possibly other parties. There could be objections brought to proofs of claim filed by creditors heard by this Court which would involve witnesses who reside in Colorado having to appear in New York. However, that litigation is not a certainty and, even if it were, hearings are currently not being held in person in this Court unless it is an evidentiary hearing or a trial in an adversary proceeding. Currently, most hearings are being held telephonically or on Zoom and no one has to travel to New York to appear in Court. Witnesses located outside of New York will not be inconvenienced or incur additional costs relating to traveling to New York for hearings. While the proximity of witnesses in the pending litigations and arbitrations might support transfer of venue in Colorado, the issue is the proximity of the witnesses necessary for the administration of the estate before the Court. It is unclear how many witnesses located in Colorado will be involved in such proceedings and even if they are involved, it is not clear that, under the current circumstances, they will have to travel to New York in order to participate. Accordingly, this Court finds that this factor does not weigh in favor of a transfer of venue of the Case.

After applying the preponderance of the evidence standard and considering the factors set forth in the applicable case law, this Court finds that the Movant has not proven that the venue of the Case should be transferred for the convenience of the parties.

## III.    CONCLUSION

For all of the reasons set forth herein, the Motion is **DENIED**.


Dated: November 4, 2021                      /s/ *Lisa G. Beckerman*
       New York, New York                   HON. LISA G. BECKERMAN
                                            U.S. BANKRUPTCY JUDGE