SILVERMANACAMPORA LLP
Counsel to Kenneth P. Silverman, Esq.,
  Chapter 11 Operating Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Anthony C. Acampora
Justin S. Krell
Brian Powers

Hearing Date: June 13, 2022
Time: 10:00 a.m.

Objection Date: June 6, 2022
Time: 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:                                                                       Chapter 11

CERTA DOSE, INC.,                                                    Case No. 21-11045 (LGB)

                                        Debtor.
-------------------------------------------------------------------x

## NOTICE OF HEARING ON TRUSTEE'S MOTION PURSUANT TO BANKRUPTCY RULE 9019 APPROVING SETTLEMENT BETWEEN TRUSTEE AND DR. CALEB HERNANDEZ

**PLEASE TAKE NOTICE**, that by motion dated May 23, 2022 (the "Motion"), Kenneth P. Silverman, Esq. (the "Trustee"), the chapter 11 trustee of Certa Dose, Inc., will move before the Honorable Lisa G. Beckerman, United States Bankruptcy Judge, at a telephonic hearing on **June 13, 2022 at 10:00 a.m.** (the "Hearing"), or as soon thereafter as counsel can be heard, seeking the entry of an order, annexed to the Motion as Exhibit 1, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105 of title 11, United States Code, approving the terms of a global settlement (the "Settlement"), embodied in the term sheet annexed the Motion as Exhibit 2, entered into by and between the Trustee and Dr. Caleb Hernandez.

**PLEASE TAKE FURTHER NOTICE**, that, prior to the Hearing, all parties interested in participating in the Hearing must sign up with Court Solutions at www.courtsolutions.com in order to participate in the Hearing and follow the Court's guidelines.

1

2802416v1 / 069340.1 / HTRUST

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief sought in the Motion must be in writing, must conform to the Bankruptcy Rules and the Local Rules, must set forth the name of the objecting party, the basis for the objection and the specific grounds therefore, and must be filed electronically with the Bankruptcy Court in accordance with General Order M-399 (General Order M-399 and the User's Manual for the Electronic Case Filing System may be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties in interest on a disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with courtesy copies delivered directly to Chambers), and must be served upon (i) counsel to the Trustee, SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York, 11753, Attn: Brian Powers, Esq. and (ii) The Office of the United States Trustee, 201 Varick Street Suite 1006, New York, New York, 10014, Attn: Paul Schwartzberg, Esq., no later than **June 6, 2022 at 4:00 p.m.**

**PLEASE TAKE FURTHER NOTICE**, that the Hearing may be adjourned without further notice other than the announcement of such adjournment in open court, or the filing of a notice of adjournment on the docket.

Dated: Jericho, New York
May 23, 2022

                                        SILVERMANACAMPORA LLP
                                        Counsel to Kenneth P. Silverman, Esq.,
                                        the Chapter 11 Trustee

                                        By: _s/ Brian Powers_
                                            Brian Powers
                                        Member of the Firm
                                        100 Jericho Quadrangle, Suite 300
                                        Jericho, New York 11753
                                        (516) 479-6300

SILVERMANACAMPORA LLP
Attorneys for Kenneth P. Silverman, Esq.
  Chapter 11 Operating Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Anthony C. Acampora
Justin S. Krell
Brian Powers

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

CERTA DOSE, INC.,

                               Debtor.
-------------------------------------------------------------x

Chapter 11

Case No. 21-11045 (LGB)

### TRUSTEE'S MOTION PURSUANT TO BANKRUPTCY RULE 9019 APPROVING SETTLEMENT BETWEEN TRUSTEE AND DR. CALEB HERNANDEZ

      Kenneth P. Silverman, Esq., the chapter 11 trustee (the "Trustee") of Certa Dose, Inc. (the "Debtor"), respectfully submits this motion (the "Motion") seeking the entry of an order (the "Proposed Order"), annexed hereto as **Exhibit 1**, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105 of title 11, United States Code (the "Bankruptcy Code"), approving the terms of a global settlement (the "Settlement"), embodied in the term sheet annexed hereto as **Exhibit 2** (the "Term Sheet"),[1] entered into by and between the Trustee and Dr. Caleb Hernandez ("Hernandez"), and together with the Trustee, the "Parties"), and states as follows:

### JURISDICTION AND VENUE

      1.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

---

[1] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Term Sheet.

1

*Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.

2.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The bases for the relief requested herein are Bankruptcy Code § 105 and Bankruptcy Rule 9019.

## BACKGROUND

The Bankruptcy Case

4.  On May 30, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

5.  On November 24, 2021, the Court entered an Order Directing the Appointment of a Chapter 11 Trustee in accordance with 11 U.S.C. §1104(a)(1) and (2) (ECF Doc. No. 179).

6.  On December 2, 2021, the Office of the United States Trustee for Region 2, filed the Application for the Appointment of Kenneth P. Silverman, Esq., as Chapter 11 Operating Trustee and Affidavit of Disinterestedness of the Trustee (ECF Doc. No.187).

7.  By Notice of Appointment dated December 2, 2021, Kenneth P. Silverman, Esq., was appointed the chapter 11 operating Trustee for this estate and continues to act in that capacity (ECF Doc. No. 186).

8.  On December 3, 2021, the Court entered an Order [Doc. No. 189] appointing Kenneth P. Silverman, Esq., as the Chapter 11 Operating Trustee of the Debtor and its estate.

The Debtor's Business

9.  The Debtor's business is developing, manufacturing and selling, in certain instances, through third parties, pharmaceutical products, which utilize the Debtor's patented (or in some cases patent pending) technology. The Debtor also licenses its technology to third parties to allow those parties to use the Debtor's technology in their own products.

Litigation Between Hernandez and the Trustee

10. Subsequent to the Trustee's appointment, he and his professionals immediately began an investigation into the Debtor's financial affairs. As part of that investigation, the Trustee requested certain information from Hernandez, who is both the Debtor's principal and its secured lender. On March 2, 2022 the Trustee filed a motion (ECF Doc. No. 228) pursuant Bankruptcy Rule 2004 to compel Hernandez to produce documents to the Trustee, which was granted, over the opposition of Hernandez, by order dated March 15, 2022 (ECF Doc. No. 242) (the "2004 Order").

11. On March 28, 2022, the Trustee filed a motion to hold Hernandez in contempt arguing that Hernandez had not complied with the 2004 Order (ECF Doc. No. 247). On April 6, 2022, the Court granted the Trustee's contempt motion and entered an order against Hernandez (ECF Doc. No. 271) (the "Contempt Order"). On April 20, 2022, Hernandez filed a motion to reconsider the Contempt Order (ECF Doc. No. 288) (the "Reconsideration Motion"), arguing that the Contempt Order was improperly issued, which is currently pending before the Court and has been adjourned pending adjudication of this Motion.

12. Also on March 28, 2022, Hernandez, as secured creditor, filed a motion (ECF Doc. No. 252) (the "Stay Relief Motion") seeking (i) relief from the automatic stay pursuant to Bankruptcy Code § 362(d)(1), and (ii) to compel the Trustee's abandonment of certain property of the Debtor's estate. Hernandez also filed a motion requesting that the Court hear the Stay Relief Motion on shortened notice. The Trustee opposed the request to shorten notice on the Stay Relief Motion, and the Court scheduled a hearing on the Stay Relief Motion for April 26, 2022 (the "April 26 Hearing"). On April 19, 2022, the Trustee filed an opposition to the Lift Stay Motion (ECF Doc. Nos. 277, 280, 282, and 284) on both factual and legal grounds. On April 22, 2022, Hernandez filed a reply to the opposition to the Stay Relief Motion (ECF Doc No. 291).

3

13. On April 4, 2022, the Trustee filed a motion (ECF Doc. No. 263) (the "Conversion Motion" and, together with the Reconsideration Motion and the Lift Stay Motion, the "Case Determinative Litigation") to convert the Debtor's chapter 11 case to one under chapter 7 of the Bankruptcy Code, scheduled to be heard at the April 26 Hearing. The Conversion Motion was joined by two of the Debtor's creditors (ECF Doc. Nos. 281 and 283), and was opposed by Hernandez (ECF Doc. No. 279) and Ortiz and Ortiz, the Debtor's counsel in this case (ECF Doc. No. 285). On April 22, 2022, the Trustee filed a reply to the objections to the Conversion Motion (ECF Doc No. 290).

14. At the April 26 Hearing, the Court determined that it would require full evidentiary hearings on the Stay Relief Motion and the Conversion Motion (the "Evidentiary Hearings"), and established schedules for submission of fact and expert testimony by declaration.

## THE SETTLEMENT

15. Subsequent to the April 26 Hearing, the parties engaged in substantial negotiations over several weeks regarding resolution of all of the Case Determinative Litigation. As a result of the negotiations, the Trustee, subject to Court approval, entered into the Settlement. The Trustee has concluded that the Term Sheet represents a fair and equitable resolution and will provide an immediate benefit to the Debtor's estate.

16. Simultaneously with the filing of this Motion, the Trustee filed a motion (the "Sale Motion") to approve an asset purchase agreement (the "APA") with Hernandez, through an acquisition vehicle (the "Buyer"), that provides for the private sale of assets set forth in the Term Sheet. In the event that the Court does not approve the Sale Motion, the Trustee respectfully

requests that the Court grant the Motion to memorialize the Settlement and the agreements contained therein.[2]

17. The salient terms of the Term Sheet are as follows:[3]

a. <u>Sale of the Purchased Assets</u>. The Trustee shall sell to the Buyer, through a private sale and pursuant to the APA (the "<u>Sale</u>"), the Debtor's estate's right title and interest to substantially all of the assets utilized in the Debtor's business (the "<u>Purchased Assets</u>").

b. <u>Purchase Price</u>. The aggregate consideration for the Purchased Assets (the "<u>Purchase Price</u>") shall consist of: (i) a credit bid, on a dollar-for-dollar basis, pursuant to section 363(k) of the Bankruptcy Code, in an aggregate amount not less than $1,200,000 comprised of (A) the full amount of the DIP Obligations outstanding as of the Sale closing, and (B) the full amount of the SBA Loan Obligations outstanding as of the Sale closing (the portion of the Purchase Price set forth in this clause (i), collectively, the "<u>Credit Bid Amount</u>"); (ii) either (a) $400,000 under the Private Sale (defined below) or (b) $200,000 under the Auction Toggle Sale (defined below) in cash (the "<u>Cash Component</u>"); (iii) assumption of the Assumed Liabilities, including (a) any valid cure costs with respect to any Assumed Contracts pursuant to section 365 of the Bankruptcy Code and (b) unpaid allowed Operations Administrative Expense Claims, *provided, that,* the Buyer's obligation to pay Operations Administrative Expense Claims shall not exceed $100,000 more than amounts paid to vendors on the Operations Administrative Expense Claims List (the "<u>OAE Cap Amount</u>"); *provided, further,* that to the extent that the OAE Cap Amount is not necessary to pay actual Operations Administrative Expenses, the unused portion of the OAE Cap Amount shall be paid to the Trustee as additional Cash Component; and (iv) the Buyer Other Claims Distribution Waiver.

c. <u>Funding of Operational Expenses Pending Sale</u>. Hernandez agrees to fund through additional DIP financing or consent to use of cash collateral, or to assume as a Cure Cost, if applicable, or otherwise pay upon closing of the Sale (i) the valid ordinary course operational expenses owed to the Debtor's vendors; and (ii) US Trustee fees related to the sale of the Purchased Assets, if any (collectively, the "<u>Operational Funding</u>").

d. <u>Auction Toggle</u>. The Trustee and the Buyer agree that the Sale shall be conducted pursuant to a private sale to the Buyer (the "<u>Private Sale</u>"). If the Private Sale is not approved by the Bankruptcy Court (including a denial by the Bankruptcy Court)

---

[2] To the extent the Court enters an order approving the Sale Motion, the Trustee submits that no further order is needed to approve the agreements contained in the Term Sheet.

[3] The following is a summary, rather than a direct recitation, of some of the important terms of the Term Sheet, and does not include all terms of the Term Sheet. All parties are encouraged to review the Term Sheet in its entirety for a full recitation of its terms.

within thirty-five (35) days of execution of the Term Sheet (and the Buyer does not agree in its sole discretion to extend such deadline) (the "Auction Toggle Condition"), upon written confirmation of the Buyer to the Trustee within three (3) business days of the Auction Toggle Condition that Buyer is willing to serve as a stalking horse in a public auction process, the Sale shall proceed under a public auction process and be subject to higher and better offers, with the Buyer serving as stalking horse purchaser (the "Auction Toggle" and a resulting sale, an "Auction Toggle Sale"). The Auction Toggle Sale shall be conducted on the terms and conditions set forth in the Term Sheet.

e. Bid Protections. If the Auction Toggle is implemented, the Buyer shall be entitled to expense reimbursement of reasonable, out-of-pocket expenses (including advisor fees) to be paid in cash to the Buyer in the event that the Sale of any portion of the Purchased Assets is consummated to a third party other than the Buyer (the "Expense Reimbursement"); *provided, that*, the Expense Reimbursement obligation shall not exceed $50,000. For the avoidance of doubt, the Expense Reimbursement shall be paid to the Buyer in cash within two (2) days of closing of a Sale of any portion of the Purchased Assets to a third party and no proceeds of the Sale shall be distributed to any person until the Expense Reimbursement is paid.

f. Closing. If the Private Sale Motion is approved by the Bankruptcy Court and the Auction Toggle Condition is not triggered, closing of the sale shall occur within five (5) days of entry of the order approving the Private Sale. Upon closing of the Sale to the Buyer, the Buyer shall: (1) withdraw with prejudice its motion for relief from the stay and motion for reconsideration; and (2) not object to or otherwise oppose the Trustee's motion for conversion.

g. Representations and Warranties. The Sale to Buyer will be made by the Trustee without any representations or warranties relating to the Purchased Assets other than customary representations and warranties regarding (i) the Trustee's power and authority to dispose of the Purchased Assets, and (ii) the Parties' agreement to execute and deliver, at the reasonable request of the other party hereto, such additional documents, instruments, conveyances and assurances and take such further actions as such other party may reasonably request to carry out the provisions hereof and give effect to the transactions contemplated by the APA.

h. Releases. In consideration of the foregoing, the parties have agreed to provide one another with releases for certain potential claims.

## BASIS FOR THE RELIEF REQUESTED

18. Rule 9019(a) of the Bankruptcy Rules governs the approval of compromises and settlements, and provides as follows:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the

6

> United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a).

19. In approving the compromise and settlement, the Court is required to make an "informed and independent judgment" as to whether the compromise and settlement is fair and equitable based on an:

> [e]ducated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to ccompare the terms of the compromise with the likely rewards of litigation.[4]

20. In making its determination on the "propriety of the settlement", the Court should consider whether the proposed settlement is in the "best interest of the estate."[5] As stated in *Arrow Air*, the "approval of [a] proposed compromise and settlement is a matter of this Court's sound discretion."[6] In passing upon a proposed settlement, "the bankruptcy court does not substitute its judgment for that of the trustee".[7] The bankruptcy court is not required "to decide the numerous questions of law and fact raised by [objectors] . . . . [R]ather [the Court should] canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness."[8] In

---

[4] *In re Iridium Operating LLC*, 478 F.3d 452, 462 n.15 (2d Cir. 2007) (quoting *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425, reh'g denied, 391 U.S. 909 (1968)). See *In re Arrow Air, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988); *In re Bell & Beckwith*, 77 B.R. 606, 611 (Bankr. N.D.Ohio), aff'd, 87 B.R. 472 (N.D.Ohio 1987); *Cf. Magill v. Springfield Marine Bank (In re Heissinger Resources Ltd.)*, 67 B.R. 378, 383 (C.D. Ill. 1986) ("the law favors compromise").

[5] *Handler v. Roth (In re Handler)*, 386 B.R. 411, 420 (Bankr. E.D.N.Y. 2007)(quoting *In re Adelphia Communications Corp.*, 327 B.R. 143, 158 (Bankr. S.D.N.Y. 2005)); *Depo v. Chase Lincoln First Bank, N.A. (In re Depo)*, 77 B.R. 381, 383 (N.D.N.Y. 1987), aff'd, 863 F.2d 45 (2d Cir. 1988).

[6] *Arrow Air*, supra, 85.B.R. at 891.

[7] *In re Depo*, 77 B.R. at 384 (citations omitted).

[8] *Bell & Beckwith*, 77 B.R. at 612; see also *In re Handler*, 386 B.R. at 421.

7

passing upon the reasonableness of a proposed compromise, the Court "may give weight to the opinions of the Trustee, the parties and their counsel."

21. The Second Circuit in *re Iridium Operating LLC*[9] outlined the following seven factors (the "Iridium Criteria") to be considered by a court in deciding whether to approve a compromise or settlement:

    i.    the balance between the litigation's possibility of success and the settlement's present and future benefits;

    ii.    the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment if the settlement is not approved;

    iii.    the paramount interest of the creditors, including the proportion of class members who do not object to or who affirmatively support the settlement;

    iv.    whether other parties in interest support the settlement;

    v.    the competency and experience of the counsel who support the proposed settlement;

    vi.    the relative benefits to be received by individuals or groups within the class; and

    vii.    the extent to which the settlement is the product of arm's length bargaining.[10]

22. The Trustee has determined in his business judgment that entering into the Settlement is in the best interests of the Debtor's estate and falls within the lowest point of the range of reasonableness. Specifically, even if the Sale Motion is not approved, the Settlement provides for substantial benefits to be realized by the Debtor's estate, including, the resolution of the amount of Hernandez's first lien secured claims. Additionally, upon the triggering of the Auction Toggle, the Settlements provides a process for a public sale of the Debtor's assets as going

---

[9] 478 F.3d 452, 462 (2d Cir. 2007).

[10] See *In re Iridium Operating LLC*, 478 F.3d at 462; See also *In re Handler*, 386 B.R. at 421.

concern with Hernandez serving as the stalking horse purchaser, funding for the Debtor's ongoing operations and preservation of asset value, and upon a sale to Hernandez (via his designee), the waiver of administrative claims that could be asserted by Hernandez, along with his agreement to waive any right to recovery from sale proceeds based on his other liens and claims asserted against the Debtor's estate. The mutual releases under the Settlement are necessary in order to induce Hernandez's participation in a sale process and his funding of ongoing operations.

23. The Trustee submits that it would have been difficult to achieve a resolution of the matters addressed by the Term Sheet through litigation on better terms than those provided therein. Indeed, the Operational Funding provides a means for a substantial portion of the administrative expenses incurred by the Debtor's business operations to be paid in full, substantially reducing the administrative debt due in the Debtor's case. Absent Hernandez's agreement to funding through cash collateral, these payments would not likely be possible.

24. In addition, in significant part due to the extensive amount of litigation in this case both before and after the Trustee's appointment, the Trustee has determined that the Debtor's estate is currently administratively insolvent in an amount likely in excess of $750,000. Because of this administrative insolvency, the uncertainty that new administrative claims will be paid in full (or at all), the Trustee is unable to: (i) provide the upfront retainer typically necessary to retain a professional to market and sell the Purchased Assets, (ii) retain any expert necessary to provide testimony relating to the Evidentiary Hearings; or (iii) maintain the Debtor's operations and the value of certain collateral. Accordingly, the Trustee has determined that, because the value of the Purchased Assets is so speculative, the outcome of the Case Determinative Litigation is uncertain and costly, and there does not seem to be a reasonable prospect of completing a sale of those assets in the near future, the continuation of the Case Determinative Litigation would likely only serve

to deepen the Debtor's administrative insolvency and not in the best interest of the estate and its creditors. Moreover, absent entry into the Settlement, not only would the Case Determinative Litigation continue, but additional litigation would also likely follow in order to resolve the amount and validity of the Hernandez's various claims, among other things, exposing the estate to significant risk and uncertainty.

25.     When the Trustee, in consultation with his retained professionals, weighed the benefits that the Debtor's estate would derive from the entering into the Settlement, including the resolution of the Case Determinative Litigation and payment of a substantial amount of the Debtor's administrative creditors, against any benefits that the estate may derive from not entering into the Settlement and continuing the Case Determinative Litigation, he determined, in his business judgment, that it was very unlikely that conversion or any other option would yield a greater benefit to the estate.

26.     Moreover, the Settlement is the product of extensive arm's length bargaining and the Parties to the Term Sheet are represented by competent and experienced counsel.

27.     Based on the foregoing, the settlement far exceeds the lowest point in a range of reasonableness consistent with applicable law and, the settlement, as embodied by the Term Sheet, satisfies the *Iridium* Criteria. Therefore, after considering the foregoing factors, the Trustee believes in his business judgment that the terms of the Settlement are fair and reasonable, and respectfully requests that the Court approves the Term Sheet.

28.     No previous motion for the relief requested herein has been made in this case or any other court.

2801935v7 / 069340.1 / BPOWERS

**WHEREFORE**, the Trustee respectfully requests that this Court grant this Motion, enter the Proposed Order approving the Term Sheet, and grant such other and further relief as this Court deems just and proper.

Dated: Jericho, New York
   May 23, 2022

                **SILVERMANACAMPORA LLP**
                Counsel to Kenneth P. Silverman, Esq.,
                 The Chapter 11 Trustee

         By: *s/ Brian Powers*
             Brian Powers
             Member of the Firm
             100 Jericho Quadrangle, Suite 300
             Jericho, New York 11753
             (516) 479-6300