**SILVERMANACAMPORA LLP**
Counsel to Kenneth P. Silverman, Esq.,
  Chapter 11 Operating Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Anthony C. Acampora
Justin S. Krell
Brian Powers

Hearing Date: June 13, 2022
Time: 10:00 a.m.

Objection Date: June 6, 2022
Time: 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                              Chapter 11

CERTA DOSE, INC.,                                                   Case No. 21-11045 (LGB)

                            Debtor.
-----------------------------------------------------------------x

## NOTICE OF HEARING ON TRUSTEE'S
## MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND
## APPROVING THE TRUSTEE'S PRIVATE SALE TO DR. CALEB HERNANDEZ

**PLEASE TAKE NOTICE**, that by motion dated May 23, 2022 (the "Motion"), the chapter 11 trustee (the "Trustee") of Certa Dose, Inc. (the "Debtor"), will move before the Honorable Lisa G. Beckerman, United States Bankruptcy Judge, at a telephonic hearing on **June 13, 2022 at 10:00 a.m.** (the "Hearing"), or as soon thereafter as counsel can be heard, seeking the entry of an order: (i) pursuant to sections 105, 363, and 365 of title 11, United States Code, Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 6006-1 of the Court's Local Bankruptcy Rules (the "Local Rules"), authorizing and approving the private sale, pursuant to the terms of the Asset Purchase Agreement annexed to the Motion as Exhibit B (the "APA"),[1] of substantially all of the assets of the Debtor's business, as more specifically defined in Section 2.1 of the APA (collectively, the "Purchased

---

[1] Capitalized terms used but not otherwise defined herein have the meanings given to them in the APA.

1

Assets"), free and clear of all liens, claims, encumbrances, security interests (collectively, the "Liens"), with such Liens, if any, to attach to the proceeds of the Sale in the amount and priority as they exist on the date of closing of the Sale of the Purchased Assets, to Dr. Caleb Hernandez through an acquisition entity, and (ii) granting such other and further relief as this Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE**, that, prior to the Hearing, all parties interested in participating in the Hearing must sign up with Court Solutions at www.courtsolutions.com in order to participate in the Hearing and follow the Court's guidelines.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief sought in the Application must be in writing, must conform to the Bankruptcy Rules and the Local Rules, must set forth the name of the objecting party, the basis for the objection and the specific grounds therefore, and must be filed electronically with the Bankruptcy Court in accordance with General Order M-399 (General Order M-399 and the User's Manual for the Electronic Case Filing System may be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties in interest on a disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with courtesy copies delivered directly to Chambers), and must be served upon (i) counsel to the Trustee, SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York, 11753, Attn: Brian Powers, Esq. and (ii) The Office of the United States Trustee, 201 Varick Street Suite 1006, New York, New York, 10014, Attn: Paul Schwartzberg, Esq., no later than **June 6, 2022 at 4:00 p.m.**

**PLEASE TAKE FURTHER NOTICE**, that the Hearing may be adjourned without further notice other than the announcement of such adjournment in open court, or the filing of a notice of adjournment on the docket.

Dated: Jericho, New York
      May 23, 2022

                                                SILVERMANACAMPORA LLP
                                                Counsel to Kenneth P. Silverman, Esq.,
                                                the Chapter 11 Trustee

                                                By: _s/ Brian Powers_
                                                      Brian Powers
                                                Member of the Firm
                                                100 Jericho Quadrangle, Suite 300
                                                Jericho, New York 11753
                                                (516) 479-6300

**SILVERMANACAMPORA LLP**
Attorneys for Kenneth P. Silverman, Esq.
  Chapter 11 Operating Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Anthony C. Acampora
Justin S. Krell
Brian Powers

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

CERTA DOSE, INC.,

                      Debtor.
-----------------------------------------------------------x

Chapter 11

Case No. 21-11045 (LGB)

## TRUSTEE'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE TRUSTEE'S PRIVATE SALE TO DR. CALEB HERNANDEZ

Kenneth P. Silverman, Esq., the chapter 11 trustee (the "Trustee" or "Seller") of Certa Dose, Inc. (the "Debtor"), respectfully submits this motion (the "Motion"), seeking the entry of an order, substantially in the form annexed hereto as **Exhibit A**: (i) pursuant to sections 105, 363, and 365 of title 11, United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 6006-1 of the Court's Local Bankruptcy Rules (the "Local Rules"), authorizing and approving the private sale (the "Sale"), pursuant to the terms of the Asset Purchase Agreement annexed hereto as **Exhibit B** (the "APA"),[1] of substantially all of the assets of the Debtor's business, as more specifically defined in Section 2.1 of the APA (collectively, the "Purchased Assets"), free and clear of all liens, claims, encumbrances, security interests (collectively, the "Liens"), with such Liens, if any, to attach to the proceeds of the Sale in the amount and priority as they exist on the date of closing of

---

[1] Capitalized terms used but not otherwise defined herein have the meanings given to them in the APA.

1

the Sale of the Purchased Assets, to Dr. Caleb Hernandez ("Hernandez") through an acquisition entity (the "Buyer"), and (ii) granting such other and further relief as this Court deems just and proper, and respectfully represents as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York,* dated January 31, 2012.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are Bankruptcy Code §§ 105(a), 363, and 365, and Bankruptcy Rules 6004 and 6006.

## BACKGROUND

### The Bankruptcy Case

4. On May 30, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

5. On November 24, 2021, the Court entered an Order Directing the Appointment of a Chapter 11 Trustee in accordance with 11 U.S.C. §1104(a)(1) and (2) (ECF Doc. No. 179).

6. On December 2, 2021, the Office of the United States Trustee for Region 2, filed the Application for the Appointment of Kenneth P. Silverman, Esq., as Chapter 11 Operating Trustee and Affidavit of Disinterestedness of the Trustee (ECF Doc. No.187).

7. By Notice of Appointment dated December 2, 2021, Kenneth P. Silverman, Esq., was appointed the chapter 11 operating Trustee for this estate and continues to act in that capacity (ECF Doc. No. 186).

8.      On December 3, 2021, the Court entered an Order (ECF Doc. No. 189) appointing Kenneth P. Silverman, Esq., as the Chapter 11 Operating Trustee of the Debtor and its estate.

The Debtor's Business

9.      The Debtor's business is developing, manufacturing and selling, in certain instances, through third parties, pharmaceutical products, which utilize the Debtor's patented (or in some cases patent pending) technology. The Debtor also licenses its technology to third parties to allow those parties to use the Debtor's technology in their own products.

Litigation Between Hernandez and the Trustee

10.     Subsequent to the Trustee's appointment, he and his professionals immediately began an investigation into the Debtor's financial affairs. As part of that investigation, the Trustee requested certain information from Hernandez, who is both the Debtor's principal and its secured lender. On March 2, 2022, the Trustee filed a motion (ECF Doc. No. 228) pursuant Bankruptcy Rule 2004 to compel Hernandez to produce documents to the Trustee, which was granted, over the opposition of Hernandez, by order dated March 15, 2022 (ECF Doc. No. 242) (the "2004 Order").

11.     On March 28, 2022, the Trustee filed a motion to hold Hernandez in contempt arguing that Hernandez had not complied with the 2004 Order (ECF Doc. No. 247). On April 6, 2022, the Court granted the Trustee's contempt motion and entered an order against Hernandez (ECF Doc. No. 271) (the "Contempt Order"). On April 20, 2022, Hernandez filed a motion to reconsider the Contempt Order (ECF Doc. No. 288) (the "Reconsideration Motion"), arguing that the Contempt Order was improperly issued, which is currently pending before the Court and has been adjourned pending adjudication of this Motion.

12.  Also on March 28, 2022, Hernandez, as secured creditor, filed a motion (ECF Doc. No. 252) (the "Stay Relief Motion") seeking (i) relief from the automatic stay pursuant to Bankruptcy Code § 362(d)(1), and (ii) to compel the Trustee's abandonment of certain property of the Debtor's estate. Hernandez also filed a motion requesting that the Court hear the Stay Relief Motion on shortened notice. The Trustee opposed the request to shorten notice on the Stay Relief Motion, and the Court scheduled a hearing on the Stay Relief Motion for April 26, 2022 (the "April 26 Hearing"). On April 19, 2022, the Trustee filed an opposition to the Lift Stay Motion (ECF Doc. Nos. 277, 280, 282, and 284) on both factual and legal grounds. On April 22, 2022, Hernandez filed a reply to the opposition to the Stay Relief Motion (ECF Doc No. 291).

13.  On April 4, 2022, the Trustee filed a motion (ECF Doc. No. 263) (the "Conversion Motion" and, together with the Reconsideration Motion and the Lift Stay Motion, the "Case Determinative Litigation") to convert the Debtor's chapter 11 case to one under chapter 7 of the Bankruptcy Code, scheduled to be heard at the April 26 Hearing. The Conversion Motion was joined by two of the Debtor's creditors (ECF Doc. Nos. 281 and 283), and was opposed by Hernandez (ECF Doc. No. 279) and Ortiz and Ortiz, the Debtor's counsel in this case (ECF Doc. No. 285). On April 22, 2022, the Trustee filed a reply to the objections to the Conversion Motion (ECF Doc No. 290).

14.  At the April 26 Hearing, the Court determined that it would require full evidentiary hearings on the Stay Relief Motion and the Conversion Motion (the "Evidentiary Hearings"), and established schedules for submission of fact and expert testimony by declaration.

15.  Subsequent to the April 26 Hearing, the parties engaged in substantial negotiations over several weeks regarding resolution of all of the Case Determinative Litigation. Those

negotiations culminated in a global settlement (subject to Court approval), which, among other things, provided for the sale of the Purchased Assets.

## THE SETTLEMENT AND PROPOSED SALE

16.  By this Motion, the Trustee seeks this Court's approval of the Trustee's Sale, the terms of which are embodied in the APA and set forth in more detail below. A copy of the APA is annexed hereto as **Exhibit B**. All parties-in-interest are advised to read the APA in its entirety for a complete description of all of the terms of the Trustee's proposed Sale. However, some of the more salient terms are summarized below:

a. Purchase Price. The aggregate consideration for the Purchased Assets shall consist of (i) a credit bid, on a dollar-for-dollar basis, pursuant to section 363(k) of the Bankruptcy Code, of the Credit Bid Amount (in an amount not less than $1,200,000); (ii) the Cash Component (in the amount of $400,000); (iii) assumption of the Assumed Liabilities, including (a) any valid Cure Amounts; and (b) unpaid allowed Operations Administrative Expense Claims, *provided*, that the Buyer's obligation to pay Operations Administrative Expense Claims shall not exceed the OAE Cap Amount ($100,000); *provided, further,* that to the extent that the OAE Cap Amount is not necessary to pay actual Operations Administrative Expenses, the unused portion of the OAE Cap Amount shall be paid to the Seller as additional Cash Component; and (iv) the Buyer Other Claims Distribution Waiver (collectively, the "Purchase Price").

b. Credit Bid. A portion of the Purchase Price shall be a credit bid, pursuant to Bankruptcy Code § 363(k), in an amount not less than $1,200,000 comprised of (A) the full amount of the DIP Obligations outstanding as of Closing, and (B) the full amount of the SBA Loan Obligations outstanding as of Closing (the "Credit Bid").

c. Distribution Waiver. Hernandez agrees that (i) any administrative expense claims asserted or that may be asserted by Hernandez pursuant to section 503(b) of the Bankruptcy Code are waived; and (ii) Buyer Other Claims, are not secured by the Cash Component and shall not share in any distribution by the Trustee from the Cash Component, including any increase of the Cash Component from excess availability within the OAE Cap Amount.

d. Sale Free and Clear. Buyer shall acquire all of the Debtor's right, title, and interest in and to the Purchased Assets, free and clear of all Liens, pursuant to Bankruptcy Code § 363(f);

5

e. <u>Representations and Warranties</u>. Seller is selling, and Buyer is acquiring, the Purchased Assets "as is", "where is" and "with all faults, limitations and defects (hidden and apparent)" and subject only to the representations and warranties contained in Article 3 of the APA, without any other representation or warranty of any nature whatsoever and without any guarantee or warranty (whether express or implied), including as to title, quality, merchantability or fitness for buyer's intended use or a particular purpose or any use or purpose whatsoever;

f. <u>Release</u>. Effective immediately upon entry of the Sale Order, the Trustee, on behalf of the Debtor's estate, shall forever release, waive and discharge the Buyer and Hernandez, their agents, attorneys, professionals, assigns and/or successors (collectively, the "<u>Buyer Released Parties</u>") from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any acts or omissions by any or all of the Buyer Released Parties in connection with any pre-petition or post-petition relationship or transaction with the Debtor, and the Buyer Released Parties shall release, waive and discharge the Trustee, together with his agents, attorneys, professionals, assigns and/or successors (collectively, the "<u>Trustee Released Parties</u>") from any and all claims arising out of the Trustee Released Parties' conduct in the bankruptcy cases; provided, that, any such releases (by either Party) shall not release claims (i) based solely on a failure to perform obligations under this Agreement or (ii) claims or defenses or offsets for purpose of defensive use only ("<u>Defensive Uses</u>") with respect to proofs of claim filed by Caleb Hernandez against the Debtor unrelated to the DIP Obligations or the SBA Loan Obligations; *provided, that*, no Defensive Use shall make assertions of bad faith, gross negligence, willful misconduct or fraud.

## THE BASIS FOR THE RELIEF GRANTED

A. **The Sale Should Be Approved as a Reasonable Exercise of the Trustee's Sound Business Judgment**

<u>Sales Outside of the Ordinary Course of Business</u>

17. Section 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004 govern the sale of assets outside the ordinary course of business.

18. Section 363(b)(1) provides, in relevant part, that the Trustee may, after notice and hearing, "use, sell or lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363 (b)(1) and (f). The terms of such sale are generally within the sound discretion of the Trustee's business judgment. *See In re Ionosphere Clubs, Inc.*, 100 B.R. 670 (Bankr.

2801331v7 / 069340.1 / BPOWERS

S.D.N.Y. 1989) (sale of debtors' airline shuttle assets approved where the debtor articulated a compelling business reason for the sale and represented fair value in the exercise of independent good faith and non-coerced business judgment). As recognized by the Second Circuit in *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d. Cir. 1983), a court may approve a section 363 application after expressly determining from the evidence presented at the hearing that a good business reason exists to grant such application.

19. Additionally, Bankruptcy Rule 6004(f)(1) provides that sales of property outside the ordinary course of business may be conducted by private sale or public auction. *See* F.R.B.P. 6004(f)(1); *see also In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D. N.Y. 1998) (noting that "the sale of estate property under the Bankruptcy Code is conducted by a trustee, who 'has ample discretion to administer the estate, including authority to conduct public or private sales of estate property.'") (citations omitted); *Penn Mut. Life Ins. Co. v. Woodscape Ltd., P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) ("There is no prohibition against a private sale . . . and this is no requirement that the sale be by public auction."). Each proposed sale must be examined from its own facts to determine whether the proposed sale is justified with detailed factual findings being made in support thereof. *See, e.g., In re 9 Hous. LLC*, 578 B.R. 600, 611 (Bankr. S.D. Tex. 2017) (approving private sale over objection where the court found that there was a sound business reason for selling the property under the circumstances and the sale was in the best interest of the estate).

20. Under applicable law, for a proposed sale to be approved under section 363(b) of the Bankruptcy Code, that sale must represent the reasonable exercise of the trustee's business judgment. *See, e.g., In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992); *In re Lionel Corp.*, 772 F.2d at 1071; *see also In re Integrated Res., Inc.*, 147 B.R. at 656 (Bankr. S.D.N.Y. 1992) (stating

that the business judgment rule is applicable in bankruptcy and presumes that, when making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company).

Assignment of Executory Contracts and Unexpired Leases

21.     Bankruptcy Code §365 states in relevant part that ". . . the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. §365(a). The ability to assume or reject an unexpired contract or lease allows a debtor to examine its unexpired contracts and leases and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject. *See, e.g., Orion Pictures Corporation v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d. Cir. 1993). This decision involves a debtor's "business judgment," which, in essence, determines whether "[assuming] the contract would be a good business decision or a bad one." *Id.* at 1099.

22.     The Trustee requests that, in conjunction with the Sale, he be permitted to assign to the Buyer the executory contracts and unexpired leases set forth on **Exhibit C** hereto (collectively, the "Assigned Contracts"). Without the assignment of the Assigned Contracts, the Trustee submits that the value of the Purchased Assets would be diminished because a portion of the value of the Purchased Assets stems from the ability to continue to operate under the Assigned Contracts. Accordingly, the Trustee, in his business judgment, seeks authority to assume and assign Assigned Contracts.

23.     Contemporaneously with service of this Motion, the Trustee served each counter-party to the Assigned Contracts with a notice (the "Cure Notice") of the Trustee's proposed cure amount (each, a "Cure Amount"), if any, and informing such counter-party of its right to object to

8

the assumption and assignment of its Assigned Contract. A copy of the Cure Notice is annexed hereto as **Exhibit D**.

24. The Cure Notice provides that counterparties to the Assigned Contracts must file an objection to the proposed assumption and assignment of any Assigned Contract or any Cure Amount (an "Assumption Objection") no later than seven (7) days prior to the hearing on this Motion (the "Sale Hearing"). The Cure Notice further provides that any Assumption Objection must set forth, with specificity, the basis for the objection and, if applicable, any counter-proposed Cure Amount, with support thereof.

25. If an Assumption Objection is filed and cannot be consensually resolved at or prior to the Sale Procedures Hearing, the Trustee proposes that the Court hear such objection at the Sale Hearing or on a date to be specified by the Court and on proper notice. To the extent the Assumption Objection relates solely to a proposed Cure Amount, the Trustee proposes that he retain the right, with consent of the Buyer, to have such contract assumed and assigned to the Buyer, with an appropriate amount to be held in escrow for payment of the Cure Amount pending the resolution of the Assumption Objection by the parties or the Court. The Trustee further requests that the Court authorize the parties to settle, compromise, or otherwise resolve any disputed Cure Amounts without the need for further Court order or notice to other parties.

26. If no Assumption Objection is timely filed and served, the Trustee requests that the Cure Amounts set forth in the Assumption Schedule be controlling, subject to entry of an order by this Court approving the Sale and the assignment of the Assigned Contracts to Buyer.

27. The Trustee believes that the foregoing procedures, as set forth in the Cure Notice, are fair and reasonable under the circumstances, and should be approved by the Court.

The Settlement and Sale Represent a Reasonable
Exercise of the Trustee's Sound Business Judgment

28.  Here, the Trustee respectfully submits a compelling business justification exists for the granting of this Motion and the approval of the Sale. Specifically, the Purchase Price provides for substantial value to be realized for the Purchased Assets and other benefits to the Debtor's estate, including a substantial cash contribution, the resolution of Hernandez's first lien secured claims through the Credit Bid, the Buyer's assumption of certain liabilities and the waiver of administrative claims that could be asserted by Hernandez, along with his agreement to waive any right to recovery from the Cash Component based on his other liens and claims asserted against the Debtor's estate. The Trustee does not believe this value would be available in any alternative transaction, especially if the Debtor's case were converted, and there likely would be an even lesser recovery if stay relief were granted, removing all or substantially all of the Debtor's business assets from the estate.

29.  Additionally, Hernandez's agreement to continue funding the Debtor's business operations in connection with the Sale prior to closing provides for the payment of the administrative expenses, substantially reducing the administrative burden in the Debtor's case. The value of this funding is significant, in both dollar amount and value to many of the Debtor's stakeholders. Furthermore, the assumption of the Assumed Liabilities, including Cure Costs, minimizes actual and potential substantial claims against the estate. Moreover, by selling the Purchased Assets on a going concern basis, not only are the Debtor's assets preserved for their intended use, but the Debtor's significant business relationships are maintained, benefitting vendors and customers.

30.  Without the funding provided by Hernandez, the Trustee would, instead, continue to pursue the prompt conversion of the case to chapter 7, which would leave significant

administrative expenses unpaid and terminate business relationships that would also result in an increase in claims against the estate, for which any recovery would be speculative, at best.

31. Moreover, in significant part due to the extensive amount of litigation in this case both before and after the Trustee's appointment, the Trustee has determined that the Debtor's estate is currently administratively insolvent in an amount likely in excess of $750,000. Because of this administrative insolvency, the uncertainty that new administrative claims will be paid in full (or at all), and the fact that Hernandez is the Debtor's secured lender with rights regarding the Trustee's use of cash collateral, the Trustee moved for conversion as he could no longer effectively administer this case. Specifically, the Trustee is unable to: (i) provide the upfront retainer typically necessary to retain a professional to market and sell the Purchased Assets; (ii) retain any expert necessary to provide testimony relating to the Evidentiary Hearings; or (iii) maintain the Debtor's operations and the value of certain collateral. Accordingly, the Trustee has determined that, because the value of the Purchased Assets is so speculative, the outcome of the Case Determinative Litigation is uncertain and there does not seem to be a reasonable prospect of completing a sale of those assets in the near future, the continuation of the Case Determinative Litigation would likely only serve to deepen the Debtor's administrative insolvency and is not in the best interests of the Debtor or its estate.

32. When the Trustee, in consultation with his retained professionals, weighed the benefits that the Debtor's estate would derive from the entering into the APA, including the resolution of the Case Determinative Litigation, the receipt of additional cash into the estate and payment of a substantial amount of the Debtor's administrative creditors, against any benefits that the estate may derive from not entering into the APA and proceeding with an uncertain sales process and continuing the Case Determinative Litigation, he determined, in his business

11

judgment, that it was very unlikely that any alternative would yield a greater benefit to the estate—especially because, as noted, a formal marketing process would be practically difficult to conduct. In his determination, the Trustee also considered, as set forth herein, the current economic state of the Debtor's estate, which unfortunately, could not support a sale process without additional funding.

33. The Trustee also submits that the mutual releases contained in the APA, as part of the global settlement, are also in the best interests of the Debtor's estate and reflect a sound exercise of the Trustee's business judgment. The releases are the result of good-faith negotiation, concessions, and compromises made by released parties and were necessary and proper in order to induce the participation of and compromises that ultimately led to the proposed Sale and substantial consideration paid to the Debtor's estate, including the Purchase Price and agreement to continue funding of the Debtor's operations.

34. Based on the foregoing, the settlement with Hernandez, together with the Sale, represents a sound exercise of the Trustee's business judgment consistent with applicable law.

The Purchased Assets Should Be Sold Free and Clear of
Asserted Property Interests Under Bankruptcy Code § 363(f)

35. Bankruptcy Code § 363(f)(2) permits the Trustee to sell property free and clear of any interest "if such party consents." The Trustee submits that Hernandez, the Debtor's only legitimate secured creditor, has consented to the proposed sale free and clear of his interests.

36. In order for the Trustee to maximize value to the Debtor's estate from the sale of the Purchased Assets, the Trustee must be authorized to sell the Purchased Assets free and clear of all Liens. Accordingly, the Trustee requests that he be authorized to sell the Purchased Assets free and clear of Liens pursuant to Bankruptcy Code §363(f)(2).

Purchaser Should Be Afforded Protection
Under Bankruptcy Code Section 363(m)

37. Section 363(m) of the Bankruptcy Code affords protection to a good faith purchaser in any interest in property purchased from the Trustee, notwithstanding that the sale conducted was later reversed or modified on appeal. Section 363(m) provides, in pertinent part, as follows:

> The reversal or modification on appeal of an authorization under [section 363(b)] … does not affect the validity of a sale … to an entity that purchased … such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m). *See Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (Bankr. S.D.N.Y. 1994) ("Section 363(m) provides that a good faith transfer of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[P]ursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal). The Second Circuit has held that a party would have to show fraud or collusion between a purchaser and the debtor in possession (or trustee) to demonstrate a lack of good faith. *See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *see also In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

38. Here, the APA was negotiated in good faith and at arms-length between the Trustee and Hernandez, on behalf of the Buyer, both of whom were represented by competent counsel. Accordingly, the Buyer qualifies as a good faith purchaser as required by Bankruptcy Code

13

§ 363(m) and the Trustee requests that the Court determine that Hernandez is entitled to the protections of a good faith purchaser under Bankruptcy Code § 363(m).

Waiver of Stay of Order

39.  Pursuant to Bankruptcy Rule 6004(g), an order authorizing the sale of property is stayed for fourteen days after the entry of the order unless the Court orders otherwise. The Trustee request that the Court order that such stay not apply with respect to the Sale. Relief from such a stay is an implicit provision of the agreement between the Trustee and the Buyer and is necessary to allow the Trustee and the Buyer to close the sale immediately.

**WHEREFORE**, the Trustee respectfully requests that this Court enters an order, substantially in the form annexed hereto as **Exhibit A**, granting this Motion and approving the APA and Sale, and granting such other and further relief as the Court deems just and proper

Dated: Jericho, New York
May 23, 2022

SILVERMANACAMPORA LLP
Counsel to Kenneth P. Silverman, Esq.,
the Chapter 11 Trustee

By: _s/ Brian Powers_
Brian Powers
Member of the Firm
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300